RICHARD R. PATCH (State Bar No. 88049)
CLIFFORD E. YIN (State Bar No. 173159)
CHRISTOPHER J. WIENER (State Bar No. 280476)
LAURA R. SEEGAL (State Bar No. 307344)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile:  415.989.1663
Email:   ef-rrp@cpdb.com
         ef-cey@cpdb.com
         ef-cjw@cpdb.com
         ef-lrs@cpdb.com

Attorneys for Defendant
DRAFTKINGS INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHICHENG ZHEN and JONATHAN SMITH, individually and on behalf of others similarly situated,<br><br>       Plaintiffs,<br><br>    v.<br><br>DRAFTKINGS INC., AND DOES 1-20,<br><br>       Defendants. | Case No. 3:25-cv-04618-CRB<br><br>**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:   November 14, 2025<br>Time:  10:00 a.m. |

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ........................................1

ARGUMENT ..............................................................................................................................2

    I.    Plaintiffs Lack Standing to Assert All of Their Claims. ..................................2

        A.    Plaintiffs Have No Standing to Assert UCL or CLRA Claims Because They Received the Benefit of Their Bargain. ..................................2

        B.    Plaintiffs Lack Standing to Seek Injunctive Relief. ..........................5

        C.    Each Plaintiff Concedes That He Only Has Standing with Respect to One Type of DFS Contest. ..................................6

    II.    The Public Policy Doctrine Bars Plaintiffs' Claims ..................................6

        A.    *Kyablue* Does Not Narrow California Public Policy. ..........................7

        B.    No California Statute Authorizes Recovery of Gambling Losses ..................8

        C.    The Court Is Not Required to Weigh Fault, and It Is Not Premature to Apply the Public Policy Doctrine at the Pleadings Stage. ..................9

    III.    This Court Lacks Equitable Jurisdiction to Hear Plaintiffs' Requests for Equitable Monetary Relief. ..................................10

    IV.    Plaintiffs' Opposition Does Not Save Their CLRA or UCL Claims. ..................10

        A.    Plaintiffs Fail to State a Claim Under the CLRA Because DFS Contests Are Not a Covered Good or Service ..................10

        B.    Plaintiffs' UCL and CLRA Claims Fall Short of the Rule 9(b) Heightened Pleading Standard. ..................11

    V.    Smith's Claims Are Time-Barred. ..................................13

    VI.    Plaintiffs' Allegations That DraftKings Acted with Malice Should Be Stricken ..................................15

CONCLUSION ..............................................................................................................................15

REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1

## TABLE OF AUTHORITIES

2 **Cases**                                                                      **Page(s)**

3  *Alves v. Players Edge, Inc.*,
4     No. 05-cv-1654-WQH (CAB), 2007 WL 6004919 (S.D. Cal. Aug. 8, 2007) ........................ 8

5  *Anderson v. Apple Inc.*,
      500 F. Supp. 3d 993 (N.D. Cal. 2020) ...................................................... 10
6
7  *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
      No. 5:21-md-02985-EJD, 2025 WL 2782591 (N.D. Cal. Sept. 30, 2025)...................... 7, 8, 9

8  *Betz v. Trainer Wortham & Company, Inc.*,
9     829 F. Supp. 2d 860 (N.D. Cal. 2011) .................................................. 15

10 *Brill v. Postle*,
      No. 2:19-cv-02027 WBS AC, 2020 WL 2936688 (E.D. Cal. June 3, 2020) ........................ 8
11
12 *Bronson v. Johnson & Johnson, Inc.*,
      No. C 12-04184 CRB, 2013 WL 5731817 (N.D. Cal. Oct. 22, 2013) ................................ 12

13 *Brown v. City Nat'l Bank*,
14     No. 23-cv-03195-AMO, 2025 WL 860502 (N.D. Cal. Mar. 19, 2025) .................................. 6

15 *Caldwell v. Nordic Naturals, Inc.*,
      709 F. Supp. 3d 889 (N.D. Cal. 2024) ...................................................... 6
16
17 *Cimoli v. Alacer Corp.*,
      546 F. Supp. 3d 897 (N.D. Cal. 2021) ...................................................... 5

18 *Colvin v. Roblox Corp.*,
19     725 F. Supp. 3d 1018 (N.D. Cal. 2024) .................................................. 4

20 *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
      858 F.2d 499 (9th Cir. 1988) ............................................................ 13
21
22 *In re Conseco Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*,
      No. C-05-04726 RMW, 2008 WL 4544441 (N.D. Cal. Sept. 30, 2008) .............................. 13

23 *DeBiasio v. Polaris Indus., Inc.*,
24     No. 2:22-cv-03715-JLS-PVC, 2023 WL 3150098 (C.D. Cal. Mar. 29, 2023) ...................... 13

25 *Doe v. Epic Games, Inc.*,
      435 F. Supp. 3d 1024 (N.D. Cal. 2020) .................................................. 11

26 *Doe v. Roblox Corp.*,
27     602 F. Supp. 3d 1243 (N.D. Cal. 2022) .............................................. 4, 10, 11

28 *Fairbanks v. Super. Ct.*,
      46 Cal. 4th 56 (2009)....................................................................... 10, 11

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S  MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*I.B. ex rel. Fife v. Facebook, Inc.*,
  905 F. Supp. 2d 989 (N.D. Cal. 2012) ................................................................ 11

*Franks et al. v. SidePrize LLC d/b/a PrizePicks*,
  No. 3:25-cv-04916-CRB (N.D. Cal. Sept. 18, 2025) ............................................ 2

*GardenSensor, Inc. v. Stanley Black & Decker, Inc.*,
  No. 12-CV-03922 NC, 2013 WL 12177929 (N.D. Cal. Feb. 25, 2013) ................ 15

*Grisham v. Philip Morris, Inc.*,
  670 F. Supp. 2d 1014 (C.D. Cal. 2009) .............................................................. 13

*Gutierrez v. Mofid*,
  39 Cal. 3d 892 (1985) ........................................................................................ 14

*Guzman v. Polaris Indus., Inc.*,
  49 F.4th 1308 (9th Cir. 2022) ............................................................................ 10

*Hang Ngoc Lam v. Hawaiian Gardens Casino*,
  No. 19-cv-03989-DMG, 2020 WL 806655 (C.D. Cal. Jan. 8, 2020) ................ 8, 10

*Hawkins v. Kroger Co.*,
  906 F.3d 763 (9th Cir. 2018) ............................................................................... 4

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) .............................................................................. 4

*Int'l Ass'n of Machinists and Aerospace Workers AFL-CIO v. Aloha Airlines, Inc.*,
  790 F.2d 727 (9th Cir. 1986) .............................................................................. 15

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2020) ............................................................................ 12

*Kelly v. First Astri Corp.*,
  72 Cal. App. 4th 462 (1999) ........................................................................ passim

*Kyablue v. Watkins*,
  210 Cal. App. 4th 1288 (2012) ..................................................................... 6, 7, 9

*Mai v. Supercell Oy*,
  No. 23-15144, 2024 WL 2077500 (9th Cir. May 9, 2024) ........................... 3, 4, 11

*Murphy v. Olly Pub. Benefit Corp.*,
  651 F. Supp. 3d 1111 (N.D. Cal. 2023) .............................................................. 10

*Ochoa v. Zeroo Gravity Games LLC*,
  No. CV 22-5896-GW-ASx, 2023 WL 4291650 (C.D. Cal. May 24, 2023) ..... passim

*In re Oreck Corp. Halo Vacuum and Air Purifiers Mktg. and Sales Pracs. Litig.*,
  No. ML 12-2317 CAS, 2012 WL 6062047 (N.D. Cal. Dec. 3, 2012) .................... 12

iii

REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S  MOTION TO DISMISS PLAINTIFFS'
COMPLAINT

*Panoyan v. Regalo Int'l LLC*,
No. CV 19-07469 PA, 2019 WL 8758897 (C.D. Cal. Oct. 25, 2019) ................................ 15

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) .................................................................................. 3

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ..................................................................................... 4

*Rushing v. Williams-Sonoma, Inc.*,
No. 16-cv-01421, 2022 WL 2833980 (N.D. Cal. July 20, 2022) ............................ 14

*Ryan v. Microsoft Corp.*,
147 F. Supp. 3d 868 (N.D. Cal. 2015) ..................................................................... 14

*Schwartz v. Finn*,
No. 21-15841, 2022 WL 636641 (9th Cir. Mar. 4, 2022) ...................................... 13

*Spears v. First Am. eAppraiseIt*,
No. 5-08-CV-00868-RMW, 2013 WL 1748284 (N.D. Cal. Apr. 23, 2013) ............ 14

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ..................................................................... 6

*Sturm v. Rasmussen*,
No. 18-CV-01689-W-BLM, 2019 WL 626167 (S.D. Cal. Feb. 14, 2019) ............. 15

*Tak Chun Gaming Promotion Co. v. Long*,
96 Cal. App. 5th 1027 (2023) .......................................................................... 7, 8, 9

*Taylor v. Apple*,
No. 20-cv-03906, 2021 WL 11559513 (N.D. Cal. Mar. 19, 2021) .......................... 3

*Ward v. Crow Vote LLC*,
634 F. Supp. 3d 800 (C.D. Cal. 2022), *aff'd* No. 22-56108, 2024 WL 2239010 (9th Cir. May 17, 2024).................................................................................................................. 4

**Statutes & Rules**                                                                    **Page(s)**

Federal Rule of Civil Procedure Rule 9(b)....................................................2, 11, 12, 13

Federal Rule of Civil Procedure Rule 12(b)(6)....................................................... 15

Federal Rule of Civil Procedure Rule 12(f) ............................................................ 15

Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* ......................... *passim*

Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...................... *passim*

Cal. Bus. & Prof. Code § 17208 .............................................................................. 13

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S  MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Cal. Civ. Code § 1783 ........................................................................................................... 13

Cal. Penal Code Section § 496(c)........................................................................................ 10

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S  MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

## INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

Plaintiffs ZhiCheng Zhen and Jonathan Smith (collectively "Plaintiffs") attempt to downplay the fatal defects in their claims as "a series of technicalities," but their opposition confirms that they have no response to any of those defects. Their complaint must be dismissed on several independent bases.

First, Plaintiffs lack standing in several critical ways. They concede that the only basis on which they claim they did not receive the benefit of their bargain – a necessary element for standing under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* – is the alleged "technical illegality" of Daily Fantasy Sports ("DFS") contests. Yet they ignore the controlling authority establishing that even if DFS contests were technically illegal – and they are not – that alone does *not* confer standing. Plaintiffs' UCL and CLRA claims fail because they have not alleged any economic injury, and they in fact received precisely what they bargained for: participation in DFS contests.

Plaintiffs also lack standing to seek injunctive relief, because they fail to meet their burden of alleging how they could conceivably be deceived in the future when they can assess the veracity of any future representations made by DraftKings about the legality of DFS contests in California without entering into another DFS contest. Finally, they concede that each Plaintiff participated in only one type of challenged contest – Smith in original-DFS and Zhen in Pick6 – and neither has standing to assert claims related to the other contest they did not play.

Second, the "strong, broad, and long-standing" public policy doctrine independently bars Plaintiffs' UCL and CLRA claims. Plaintiffs' only response to that doctrine is to rehash arguments made and repeatedly rejected in prior cases. Lest there be any doubt about the continuing viability of the doctrine, just last month a court in this district applied it to dismiss a gambling-related UCL claim in its entirety. Indeed, courts have repeatedly applied the public policy doctrine to bar UCL and CLRA claims, including at the pleadings stage. This Court should do the same.

Third, Plaintiffs' claims for equitable monetary relief fail because they have not alleged that their legal remedies are inadequate. Plaintiffs attempt to dismiss this as a mere failure to use "magic

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1  words," but courts in this district repeatedly have held such an allegation to be essential.

2  Fourth, all of Smith's claims are time-barred. He concedes that he first entered into DFS

3  contests more than four years ago and admits that, at the time he did so, there was substantial public

4  information putting him on notice of the claims he now asserts. To the extent Smith seeks to invoke

5  equitable tolling, his failure to plead when he discovered his claims or why he could not have done

6  so earlier is fatal.

7  Finally, Plaintiffs also ignore the specific and narrow definitions of the terms "goods" and

8  "services" under the CLRA, which unambiguously exclude DFS contests. Nor do Plaintiffs address

9  the fact that they alleged nothing about the purported television advertisements that supposedly led

10  them to create their DraftKings accounts, as is required to meet the heightened pleading

11  requirements of Federal Rule of Civil Procedure Rule 9(b) ("Rule 9(b)"), which they concede

12  applies.

13  While DraftKings' DFS contests *are* legal, and there is no authority to the contrary,[1] the

14  Court need not reach that issue because of the many threshold issues – standing, the public policy

15  doctrine, lack of jurisdiction, and statute of limitations – that make clear Plaintiffs' claims all fail out

16  of the gate. The Court should dismiss all claims with prejudice.

17  ## ARGUMENT

18  **I.    Plaintiffs Lack Standing to Assert All of Their Claims.**

19  **A.    Plaintiffs Have No Standing to Assert UCL or CLRA Claims Because They
        Received the Benefit of Their Bargain.**

20

21  Plaintiffs offer a single theory for why they supposedly failed to receive the benefit of their

22  bargain when entering DFS contests. They claim they bargained for a "*legal* bet on a gambling

23  contest," rather than entry into an allegedly *illegal* contest. Plaintiffs' Opposition to Motion to

24  Dismiss ("Opp.") at 11 (emphasis in original). On this theory, Plaintiffs assert that the DFS contests

25

---

26  [1] Plaintiffs' counsel have themselves conceded that "no California court has yet weighed in on
    whether such . . . games are illegal under California law," and an Attorney General opinion that they
27  repeatedly invoke is "non-binding." *See* Plaintiffs' Response to Motion of SidePrize, LLC D/B/A
    PrizePicks to Transfer Venue, *Franks et al. v. SidePrize LLC d/b/a PrizePicks*, No. 3:25-cv-04916-
28  CRB (N.D. Cal. Sept. 18, 2025), ECF No. 46, at 12.

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1    they entered were "*per se* defective," and therefore had "no value." *Id*. Even if this allegation were

2    factually accurate (it is not), it is not sufficient to confer standing.

3        Injury in fact under the UCL and CLRA requires more than merely alleging that a business

4    practice was unlawful, unfair, or fraudulent. Plaintiffs must show economic injury as a result of that

5    practice. *Mai v. Supercell Oy*, No. 23-15144, 2024 WL 2077500, at *1 (9th Cir. May 9, 2024)

6    (citing *Medina v. Safe-Guard Prods., Int'l, Inc.*, 164 Cal. App. 4th 105, 115–16 (2008)). Here,

7    Plaintiffs allege no injury arising from the alleged illegality of DFS contests in California. Nor do

8    they allege any difference in value between an allegedly illegal "wager" and a lawful contest entry.

9    Indeed, Plaintiffs ignore DraftKings' argument on this point and fail to meaningfully distinguish its

10   authorities, all of which confirm that a plaintiff must allege an economic injury to support a UCL or

11   CLRA claim. *See* DraftKings' Motion to Dismiss ("Mot.") at 6. For example, in *Mason v. Mach.*

12   *Zone, Inc.*, the plaintiff argued she was deprived of the benefit of her bargain because she "entered

13   into a bargain for the opportunity to play what she believed was a *legal* video game, but what she

14   received instead was the opportunity to unknowingly utilize an illegal game of chance." 140 F.

15   Supp. 3d 457, 465 (D. Md. 2015), *aff'd on other grounds*, 851 F.3d 315 (4th Cir. 2017) (emphasis in

16   original, internal quotation marks omitted). The court dismissed her UCL claim for "[h]aving failed

17   to allege a concrete economic injury" because "the technical illegality of a transaction—where the

18   consumer has received the full economic benefit of her bargain—will not trigger a private cause of

19   action under the UCL."[2] *Id*. at 466; *see also Taylor v. Apple*, No. 20-cv-03906, 2021 WL 11559513,

20   at *4–5 (N.D. Cal. Mar. 19, 2021) (dismissing UCL claim involving allegedly unlawful loot boxes

21   in a video game because the named plaintiff purchased only virtual currency and "obtained exactly

22   what he paid for—virtual currency that he was free to use as he wished in the game"); *Peterson v.*

23   *Cellco P'ship*, 164 Cal. App. 4th 1583, 1591 (2008) (affirming dismissal of UCL claim in

24   connection with purchase of insurance from unlicensed seller because despite seller's unlicensed

25   status, plaintiffs "obtained the bargained for insurance at the bargained for price" and therefore did

26

27   [2] In a footnote, Plaintiffs cite to *Mason* as "recognizing that overpayment for an illegal good could
     serve as the basis for a UCL claim," (Opp. at 12 n.4), when the court held the exact opposite. 140 F.

28   Supp. 3d at 466 (plaintiff could not state UCL claim based on "technical illegality of a transaction").

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1   not suffer any actual economic loss); *Ward v. Crow Vote LLC*, 634 F. Supp. 3d 800, 825–26, 828–

2   29 (C.D. Cal. 2022), *aff'd* No. 22-56108, 2024 WL 2239010 (9th Cir. May 17, 2024) (holding that

3   plaintiffs had not suffered economic injury where they argued they would not have paid money to

4   vote in contest had they known it was an illegal gambling contest). Plaintiffs' lack of response to

5   DraftKings' argument on this point confirms the fatal pleading deficiencies in their claims, and the

6   futility of amendment.

7        The authorities cited by Plaintiffs (Opp. at 12-13) do not counsel otherwise. In *Colvin*, the

8   court concluded that a benefit of the bargain analysis "misse[d] the point" because: (i) the plaintiffs

9   were *minors* who could not meaningfully consent to any bargain; and (ii) their parents had

10  purchased the virtual currency solely for use in Roblox games, not off-platform online casinos.

11  *Colvin v. Roblox Corp.*, 725 F. Supp. 3d 1018, 1024 (N.D. Cal. 2024) (noting that "the online

12  casinos were *outside* of the realm of the games that the Robux were purchased for") (emphasis

13  added). That reasoning does not help Plaintiffs, consenting adults who received the contest entries

14  that they clearly bargained for. In *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243 (N.D. Cal. 2022), the

15  court distinguished between a situation where the plaintiff had not been adequately warned that her

16  purchases would be deleted, and the circumstances in *Mai, Mason*—and here—where consumers get

17  "*exactly* what they expected" but do not like the results. *Id.* at 1260 (holding that plaintiff had

18  adequately alleged economic injury where she alleged that "she purchased Robux . . . without

19  adequate warning that she would fruitlessly spend them on items that would be unjustly deleted.")

20  (emphasis in original).[3]

21

22  _____

23  [3] Plaintiffs purport to rely on three Ninth Circuit decisions—*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015), *Hawkins v. Kroger Co.*, 906 F.3d 763 (9th Cir. 2018), and

24  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013)—to argue that it is enough to allege they would not have entered DFS contests but for DraftKings' alleged misrepresentation. Opp. at 11–12.

25  Those cases do not help Plaintiffs. *Pulaski* did not address statutory standing. 802 F.3d at 985, n.6. *Hawkins* and *Hinojos* both concerned plaintiffs who alleged that they overpaid for products based on

26  affirmative misrepresentations about price or product quality. Plaintiffs do not contend that DraftKings charged an inflated price for entry into DFS contests, or that the contests failed to deliver

27  what was promised. Instead, they argue that each transaction was worthless solely because they now allege the contests were unlawful. Opp. at 11. That is not analogous to the type of injury recognized

28  in the cases cited by Plaintiffs.

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1     Here, Plaintiffs received exactly what they bargained for: entry into and participation in

2   DraftKings' DFS contests with the opportunity to compete for prizes. They do not allege that the

3   contests did not happen, that any winnings were withheld, or that the contests operated in any way

4   other than as represented. Because they received what was promised, Plaintiffs suffered no

5   economic injury and do not have standing under the UCL or CLRA.

6         **B.      Plaintiffs Lack Standing to Seek Injunctive Relief.**

7     Plaintiffs concede that they lack standing to seek injunctive relief unless they can show,

8   under *Davidson v. Kimberly-Clark Corp.*, an "'actual and imminent, not conjectural or

9   hypothetical' threat of future harm," and specifically, "'a sufficient likelihood that [they] will again

10  be wronged in a similar way.'" 889 F.3d 956, 969 (9th Cir. 2018) (citations omitted); Opp. at 3.

11  Plaintiffs' opposition confirms that they *cannot* make this showing.

12    Plaintiffs argue that there is a risk of future injury because they "allege that they will

13  'continue to gamble online in California' if it becomes legal (Compl. ¶¶ 108, 121) and DraftKings

14  continues to affirmatively represent on the Gambling Websites that 'DraftKings Daily Fantasy

15  Sports is legal in . . . California.'"[4] Opp. at 13. Plaintiffs' position – that they currently believe DFS

16  contests are illegal in California despite DraftKings' representations to the contrary, but could later

17  rely on those same representations they now disclaim – is absurd on its face.[5] Even if it were

18  remotely plausible, Plaintiffs' argument fails under *Davidson.* Unlike in *Davidson*, where the court

19  ruled that a consumer could not verify the truth of a product label without repurchasing the product,

20  Plaintiffs can make their own assessment, or do so in consultation with their lawyers, as to whether

21  DFS contests are legal in California. More fundamentally, they can do so without ever entering

22  another DFS contest – a point that Plaintiffs do not dispute.[6] *See* Mot. at 8.

23

24  [4] DraftKings' position is, of course, that its DFS contests have always been, and remain, legal.

25  [5] Citing *Ochoa v. Zeroo Gravity Games LLC*, No. CV 22-5896-GW-ASx, 2023 WL 4291650, at *5
26  (C.D. Cal. May 24, 2023), Plaintiffs suggest that claims for injunctive relief are always proper in
    cases predicated on alleged illegal gambling. Opp. at 13. *Ochoa* says no such thing. In *Ochoa*, the
27  defendant did not argue, and the court did not address, whether the plaintiffs faced an imminent
    threat of harm to confer Article III standing.

28  [6] Plaintiffs hardly address, let alone effectively distinguish, the line of published cases holding that a

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

**C.    Each Plaintiff Concedes That He Only Has Standing with Respect to One Type of DFS Contest.**

Plaintiffs fail to respond to DraftKings' argument that Zhen lacks standing to assert original DFS-based claims and Smith lacks standing to assert Pick6-based claims, nor do they dispute that original-DFS and Pick6 contests are distinct for standing purposes. Mot. at 6 n.5. By failing to respond, they have conceded this issue. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("'failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue'") (citation omitted); *see also Brown v. City Nat'l Bank,* No. 23-cv-03195-AMO, 2025 WL 860502, at *2 (N.D. Cal. Mar. 19, 2025). For this independent reason, the Court should dismiss Zhen's claims related to original-DFS and Smith's (time-barred) claims related to Pick6.

**II.    The Public Policy Doctrine Bars Plaintiffs' Claims.**

Plaintiffs do not dispute that all of their claims are predicated on alleged illegal gambling, and that they seek to recover purported gambling losses. Recognizing that the public policy doctrine forecloses the claims, Plaintiffs attempt to narrow its reach to a single case, *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462 (1999), which they argue was effectively overruled by a later Court of Appeal decision, *Kyablue v. Watkins*, 210 Cal. App. 4th 1288, 1292–94 (2012). Opp. at 8. This argument fails, not least because subsequent decisions of the Court of Appeal and courts in this district confirm that *Kelly* continues to be good law. Plaintiffs' attempts to narrow the doctrine on alternative grounds are likewise unsuccessful. They argue that the doctrine (i) does not apply to UCL or CLRA claims; (ii) should not apply here because DraftKings is allegedly more at fault; and (iii) may only be invoked at the summary judgment stage. Opp. at 9–10. Courts have repeatedly

---

plaintiff lacks standing to seek injunctive relief when he or she can independently verify the veracity of an alleged misrepresentation without buying the product at issue. *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021); *see also Caldwell v. Nordic Naturals, Inc.*, 709 F. Supp. 3d 889, 908 (N.D. Cal. 2024) (no threat of future harm where plaintiff need not purchase the product to confirm the meaning and veracity of the label). Plaintiffs attempt to dismiss these cases as mere product-labeling disputes, but their fundamental premise – that "standing is present only when the true nature of the product can be learned *only* through purchase of the product" (*id*. at 909 (emphasis in original)) – applies with equal force here. Opp. at 13 n.5.

Case No. 3:25-cv-04618-CRB

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1    rejected each of these arguments.

2        A.    *Kyablue* **Does Not Narrow California Public Policy.**

3        Plaintiffs do not dispute that the public policy doctrine is a "strong, broad and long-standing"

4    policy and that it generally bars "civil claims arising out of lawful or unlawful gambling contracts or

5    transactions[.]" *Kelly*, 72 Cal. App. 4th at 471, 478. The doctrine can be traced back virtually "to the

6    inception of statehood[,]" is based on a host of cases predating *Kelly*, and has been repeatedly

7    affirmed since, including as recently as last month in a decision by Judge Davila in this district. *In re*

8    *Apple Inc. App Store Simulated Casino-Style Games Litig.*, No. 5:21-md-02985-EJD, 2025 WL

9    2782591, at \*9 (N.D. Cal. Sept. 30, 2025) ("*Simulated Casino-Style Games Litig.*") (noting the

10   "long pedigree" of the doctrine and that "California courts have consistently and repeatedly affirmed

11   this policy"). Nevertheless, Plaintiffs attempt to argue that the public policy doctrine is outdated and

12   no longer good law following *Kyablue*. *See* Opp. at 8–9. That argument fails.

13       *Kyablue* did not alter the doctrine articulated in *Kelly*. Indeed, *Kyablue* did not involve an

14   action "'for recovery of gambling losses'" or "'to enforce gambling debts[,]'" and the court

15   distinguished *Kelly* on that basis. 210 Cal. App. 4th at 1294–95 (noting that *Kelly's* "clear policy

16   against enforcement of gambling losses and debts does not control the decision here.") (citation

17   omitted). In any event, more than a decade after *Kyablue*, the Court of Appeal reaffirmed the scope

18   of the doctrine as articulated in *Kelly* and expressly rejected arguments to relax or change it. *Tak*

19   *Chun Gaming Promotion Co. v. Long*, 96 Cal. App. 5th 1027, 1033, 1036, 1038 (2023) (noting that

20   "our Legislature has at no point expressed an intent to deviate from the common law rule barring

21   resort to the California courts to enforce gambling debts[,]" and concluding that the rule "rests on a

22   rationale with continued vitality"). Indeed, just last month, a court in this district again reaffirmed

23   that the public policy doctrine bars gambling-related civil claims, including UCL claims, relying on

24   *Kelly* and *Tak Chun*. *See Simulated Casino-Style Games Litig.*, 2025 WL 2782591, at \*9–10

25   (rejecting argument that the public policy doctrine is "obsolete").

26       Plaintiffs concede that if the public policy doctrine applies (as it does), all their claims for

27   monetary relief, whether legal or equitable, are barred. Opp. at 11. They nonetheless contend that

28   their requests for injunctive relief survive under *Ochoa*. *Id.* However, this district's more recent

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

decision in *Simulated Casino-Style Litig.* confirms that the doctrine applies based on the nature of the claim, without regard to the specific relief sought. 2025 WL 2782591, at \*10 (dismissing UCL claim seeking restitution and injunctive relief "[s]ince gambling is at the heart of Plaintiffs' claims, the Court sees no path for Plaintiffs to plead around this policy."). Because alleged illegal gambling is at the heart of each of Plaintiffs' claims, the Court should follow *Simulated Casino-Style Litig.* and hold that public policy bars the claims in their entirety.

### B.    No California Statute Authorizes Recovery of Gambling Losses.

Plaintiffs' argument that the public policy doctrine is limited to common law claims is similarly without merit. Plaintiffs rely on an incomplete quote from *Kelly* to suggest that the doctrine does not apply to statutory claims under the UCL and CLRA. *See* Opp. at 9 (arguing that, under *Kelly*, "the doctrine only applies 'in the absence of a statute authorizing a recovery[.]'") (emphasis removed and alteration in original) (quoting *Kelly*, 72 Cal. App. 4th at 489–90). Plaintiffs ignore what *Kelly* actually says: the doctrine applies only "in the absence of a statute authorizing a recovery *of gambling losses*[.]" 72 Cal. App. 4th at 489–90 (emphasis added). No such statute exists in California. *Tak Chun*, 96 Cal. App. 5th at 1036 ("[O]ur Legislature has at no point expressed an intent to deviate from the common law rule barring resort to the California courts to enforce gambling debts"); *Brill v. Postle*, No. 2:19-cv-02027 WBS AC, 2020 WL 2936688, at \*3 (E.D. Cal. June 3, 2020) ("Today, the California state legislature still has not created a statutory right to permit individuals to recover their gambling losses . . .").

Courts have routinely held that the CLRA and the UCL do not authorize recovery of gambling losses. *Ochoa*, 2023 WL 4291650, at \*4.[7] Plaintiffs' argument that these statutes should nevertheless override the public policy doctrine simply because they are intended to protect consumers was squarely rejected a few weeks ago by a court in this district:

---

[7] In *Ochoa*, the court dismissed UCL and CLRA claims for monetary relief based on the public policy doctrine, expressly rejecting plaintiffs' argument that they could seek relief under the UCL even in the absence of a civil statute specifically authorizing recovery. 2023 WL 4291650, at \*4*; see also Alves v. Players Edge, Inc.*, No. 05-cv-1654-WQH (CAB), 2007 WL 6004919, at \*14 (S.D. Cal. Aug. 8, 2007) (dismissing UCL claim as barred under California's public policy); *Hang Ngoc Lam v. Hawaiian Gardens Casino*, No. 19-cv-03989-DMG (MRWx), 2020 WL 806655, at \*2 (C.D. Cal. Jan. 8, 2020); *Mason*, 140 F. Supp. 3d at 466 & n.14.

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

> The UCL does not expressly mention gambling at all. *See* Cal. Bus. & Prof. Code § 17200, et seq. Nor is there any clear statement of intent to modify the public policy on gambling-related claims. *Plaintiffs suggest that the California legislature intended to protect consumers through the UCL, but that kind of intent is too generic to demonstrate that the legislature 'necessarily' meant to abrogate the specific policy against gambling-related claims.*

*Simulated Casino-Style Litig.,* 2025 WL 2782591, at \*10 (emphasis added). Because no California statute authorizes recovery of gambling losses, Plaintiffs' claims are squarely barred by the public policy doctrine articulated in *Kelly.* 72 Cal. App. 4th at 471, 478.

### C. The Court Is Not Required to Weigh Fault, and It Is Not Premature to Apply the Public Policy Doctrine at the Pleadings Stage.

Plaintiffs make two other arguments to sidestep the public policy doctrine, both of which are misguided. First, they incorrectly contend that *Kyablue* requires a court to weigh the parties' relative moral fault on the facts of each case before applying the public policy doctrine. Opp. at 8. That argument was squarely rejected in *Tak Chun:*

> There is no support in the case law to let California courts decide—on a case-by-case basis—whether to lift the denial of access after weighing various factors. Indeed, such a case-by-case weighing process would significantly undercut the efficacy of the across-the-board ban California has adopted by leaving it to individual judges to decide whether to apply the ban; the exception would swallow the rule, and quite likely force our courts into the role of " 'handmaid[s] to iniquity.' "

*Tak Chun*, 96 Cal. App. 5th at 1038 (citation omitted). Plaintiffs' arguments regarding the parties' relative moral fault are entirely irrelevant. Opp. at 10; *Ochoa*, 2023 WL 4291650, at \*4 (rejecting argument that "a party that has unwittingly fallen victim to an illegal gambling enterprise masquerading as an innocent and legal game" may assert UCL claim) (citation omitted).

Second, Plaintiffs argue that, because *Kelly* was decided on summary judgment, it is premature to apply the doctrine now. Opp. at 10. That argument incorrectly presumes that the Court needs to weigh the parties' respective degrees of fault. Numerous decisions have dismissed gambling-related claims on the pleadings on public policy grounds.[8] This Court should do the same.

---

[8] *See, e.g.*, *Simulated Casino-Style Litig.*, 2025 WL 2782591, at \*10; *Tak Chun*, 96 Cal. App. 5th at

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

### III.  This Court Lacks Equitable Jurisdiction to Hear Plaintiffs' Requests for Equitable Monetary Relief.

Plaintiffs' opposition confirms that, as pled, the Court lacks equitable jurisdiction over their requests for equitable monetary relief. They concede they have failed to allege that they lack an adequate remedy at law, even though courts have held such an allegation to be a pleading requirement. *See* Opp. at 15; *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020) ("Under *Sonner*, the plaintiffs are required, at a minimum, to plead that they lack an adequate remedy at law, which they have not done."); *Murphy v. Olly Pub. Benefit Corp.,* 651 F. Supp. 3d 1111, 1129 (N.D. Cal. 2023) (collecting cases); *see also* Mot. at 11.

Plaintiffs suggest they can cure any deficiency in equitable jurisdiction by amending to add "a claim for damages at law under the CLRA, and a cause of action for civil theft at law under Penal Code Section 496(c)[.]" Opp. at 15. In fact, adding those claims (showing that Plaintiffs allege that they do have an adequate remedy at law) would *defeat*, not support, equitable jurisdiction.[9] *Guzman v. Polaris Indus., Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022).

### IV.  Plaintiffs' Opposition Does Not Save Their CLRA or UCL Claims.

#### A.  Plaintiffs Fail to State a Claim Under the CLRA Because DFS Contests Are Not a Covered Good or Service.

Conceding that DFS contests are not "goods," Plaintiffs argue they are "services" because (i) the CLRA should be liberally construed; and (ii) the courts in *Ochoa*, 2023 WL 4291650, at *13, and *Doe v. Roblox Corp.*, 602 F. Supp. 3d at 1263, held that "services" include online gambling. Opp. at 14. Neither argument has merit.

As an initial matter, the California Supreme Court held in *Fairbanks* that the CLRA's definition of "services" is *not* to be liberally construed:

---

1041 (affirming trial court's grant of motion for judgment on the pleadings of claims related to gambling debts); *Ochoa*, 2023 WL 4291650, at *4; *Hang Ngoc Lam*, 2020 WL 806655, at *2; *Mason*, 140 F. Supp. 3d at 466 & n.14.

[9] Amendment would be futile in any event, because even if Plaintiffs sufficiently allege an inadequate remedy at law, their restitution claims will still be barred by the public policy doctrine. *See* Section II *supra*.

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

> A liberal construction mandate affects statutory construction only when the statutory language is ambiguous and the intent of the enacting body is in doubt, however; it cannot be invoked when, as here, the meaning of the statutory language is not otherwise uncertain.

*Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 64 (2009). The California Supreme Court therefore ruled that, "[r]ather than applying to all businesses, or to business transactions in general, the [CLRA] applies only to transactions for the sale or lease of consumer 'goods' or 'services' as those terms are defined in the act." *Id.* at 65.

Plaintiffs rely on *Doe* and *Ochoa*, which do not address *Fairbanks*, and represent the minority view within the Northern and Central Districts in finding that virtual currency and mobile slot machine apps were services under the CLRA. *See Ochoa*, 2023 WL 4291650, at *13 (acknowledging that its holding, and *Doe* on which it relies, are in the minority, and that "*Mai* and other cases" that reached the opposite conclusion "appear[ ] to be the majority"); *see also, e.g.*, *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) (dismissing CLRA claim because digital currency is not covered by CLRA); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) (same). Plaintiffs also do not address *Fairbanks*, which squarely rejects "[u]sing the existence of . . . ancillary services to bring intangible goods within the coverage of the [CLRA.]" 46 Cal. 4th at 65. They have advanced no persuasive reason for this Court to overlook the holding in *Fairbanks* and extend the scope of the CLRA to sweep in ancillary services associated with intangible goods.

**B.      Plaintiffs' UCL and CLRA Claims Fall Short of the Rule 9(b) Heightened Pleading Standard.**

In its opening brief, DraftKings explained that Plaintiffs failed to allege that DraftKings *knew* its DFS contests were illegal and that any allegation that DraftKings "should have known" was insufficient. Mot. at 13. Plaintiffs do not address this issue and have therefore conceded it.

DraftKings also demonstrated that Plaintiffs' UCL and CLRA claims sound in fraud yet fail to satisfy Rule 9(b). Plaintiffs do not dispute that Rule 9(b) applies, nor do they address the fundamental inconsistencies in their allegations. For example, on the one hand, they allege that they created DraftKings accounts "in response to" advertisements on television or other online media

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1    (*not* on DraftKings' website). Compl. ¶¶ 113 (Zhen responded to advertisements "online and while

2    watching NBA games on TV in California"), 126 (Smith responded to advertisements "on television

3    while watching the NBA"). On the other hand, Plaintiffs allege that DraftKings represented on its

4    *website* that DFS contests are legal. *Id*. ¶ 44.

5        Despite these broad allegations, Plaintiffs do not plead anything about the NBA television

6    advertisements they allegedly responded to, let alone that in those advertisements, DraftKings

7    represented that DFS contests were legal. That omission is fatal to their claims. *Kearns v. Ford*

8    *Motor Co*., 567 F.3d 1120, 1126 (9th Cir. 2020) (claims did not satisfy Rule 9(b) because

9    "[n]owhere in the TAC does Kearns specify what the television advertisements or other sales

10   material specifically stated."). To the extent Plaintiffs attempt to rely on alleged representations on

11   DraftKings' website, Plaintiffs fail to allege that, before creating their accounts, they saw any

12   representation on DraftKings' website that DFS contests were legal or that DraftKings knew any of

13   its representations were false.[10]

14       The authorities cited by Plaintiffs do not help them. In *Bronson*, the court held that the

15   plaintiffs satisfied Rule 9(b) because they alleged what they relied on (product packaging and

16   website) and when: "Plaintiff Bronson relied on the website, establishes when she viewed the

17   website–after her first purchase of Splenda Essentials products–and alleges all Plaintiffs relied on

18   the package when they purchased the antioxidant product." *Bronson v. Johnson & Johnson, Inc.*,

19   No. C 12-04184 CRB, 2013 WL 5731817, at *6 (N.D. Cal. Oct. 22, 2013). In *Oreck*, the court held

20   that the plaintiffs had satisfied Rule 9(b) because they "provid[ed] examples of advertisements

21   similar to those they saw," and "explain[ed] which type of advertising (infomercial, online, etc.)

22   each plaintiff [had] viewed." *In re Oreck Corp. Halo Vacuum and Air Purifiers Mktg. and Sales*

23   *Pracs. Litig.*, No. ML 12-2317 CAS (JEMx), 2012 WL 6062047, at *15 (N.D. Cal. Dec. 3, 2012).

24       Here, in contrast, Plaintiffs allege that they relied on advertisements without alleging *any* of

25   the content of those advertisements or providing any examples. Cf. Compl. ¶ 94 (describing

26   DraftKings' television advertisements as "featuring celebrities and promotional products and offers

27

28   _____

[10] Such a statement would have been accurate in any event. *See* n.1, *supra*.

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

to attract new customers," but with no reference to the substantive content). The UCL and CLRA claims are deficient under Rule 9(b) and must be dismissed.

## V.    Smith's Claims Are Time-Barred.

In the opposition, Smith makes a series of concessions that confirm his claims are time-barred: (i) he admits he began entering DFS contests, which he now contends are illegal, in 2019 (*see* Compl. ¶ 130); (ii) a claim that accrued in 2019 would typically be barred both by the CLRA's three-year statute of limitations and the UCL's four-year statute of limitations (Cal. Civ. Code § 1783; Cal. Bus. & Prof. Code § 17208); (iii) as of 2019, there was substantial local publicity raising questions about the legality of DFS contests in California;[11] (iv) Smith has the burden to plead the elements of the discovery rule, including both "'(1) the time and manner of discovery[;] *and* (2) the inability to have made earlier discovery despite reasonable diligence'" (*Schwartz v. Finn,* No. 21-15841, 2022 WL 636641, at *1 (9th Cir. Mar. 4, 2022) (emphasis added and citation omitted)); and (v) Smith has failed to plead those elements. *See* Opp. at 13-14.

Smith offers three counterarguments, none of which saves his claims: (i) he has pled enough at this stage to survive a motion to dismiss; (ii) the statute of limitations is tolled by DraftKings' alleged misrepresentations of legality; and (iii) not all of his transactions fall outside the four-year statute of limitation period. Each fails as a matter of law.

Because Smith has not sufficiently pled the elements of the discovery rule, the Court can determine *now* that his claims are time-barred. The cases upon which he relies stand for the uncontroversial proposition that, *if a plaintiff has sufficiently pled those elements*, the court should defer a ruling on whether the claims are time-barred until a later date.[12] Smith has not done so. He

---

[11] Plaintiffs did not oppose DraftKings' request for judicial notice.

[12] *DeBiasio v. Polaris Indus., Inc.*, No. 2:22-cv-03715-JLS-PVC, 2023 WL 3150098, at *2 (C.D. Cal. Mar. 29, 2023) (plaintiff had sufficiently pled that statements by defendant did not put him on notice of nature of defect and of defendant's wrongdoing); *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988) (noting that "[c]onclusory statements are not enough. Conmar must plead with particularity the circumstances of the concealment and the facts supporting its due diligence"); *In re Conseco Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, No. C-05-04726 RMW, 2008 WL 4544441, at *8 (N.D. Cal. Sept. 30, 2008) (plaintiff "specifically [pled] facts which show (1) the time and manner of discovery and (2) the inability to have made earlier

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1  fails to allege when he discovered his claims or why he could not have discovered them earlier,

2  despite conceding that "information in the public sphere" called into question the legality of DFS

3  contests more than four years ago. Opp. at 14 n.7. His assertion that he learned of the alleged

4  illegality only "after engaging counsel" is irrelevant. *Id.* at 14. As DraftKings pointed out in its

5  opening brief, "the fact that an attorney has not yet advised him does not postpone commencement

6  of the limitations period." Mot. at 14 n.8 (quoting *Gutierrez v. Mofid*, 39 Cal. 3d 892, 898, 901

7  (1985)). Smith does not address that point or *Gutierrez*.

8         Nor can Smith toll the limitations period by invoking fraudulent concealment based on the

9  same alleged misrepresentations underlying his claims. "[T]he factual basis for fraudulent

10  concealment must be *distinct* from a cause of action." *Rushing v. Williams-Sonoma, Inc*., No. 16-cv-

11  01421, 2022 WL 2833980, at *7 (N.D. Cal. July 20, 2022) (emphasis added). Here, the allegation

12  that DraftKings misrepresented the legality of DFS contests is the *basis* for Plaintiffs' claims. The

13  Complaint alleges that DraftKings violated the UCL "by tricking consumers into believing operation

14  of the Gambling Websites is lawful[,]" and violated the CLRA by misrepresenting the

15  characteristics of its goods or services. Compl. ¶¶ 166, 173. Because those allegations relate to the

16  underlying wrongdoing rather than an effort to prevent a lawsuit, they cannot support tolling.

17  *Rushing*, 2022 WL 2833980, at *8 (Williams-Sonoma continuing to falsely advertise its bedding

18  "cannot constitute the 'affirmative conduct' needed for fraudulent concealment" because "these

19  allegations are 'related to the underlying wrongdoing'"); *Spears v. First Am. eAppraiselt*, No. 5-08-

20  CV-00868-RMW, 2013 WL 1748284, at *5 (N.D. Cal. Apr. 23, 2013) (fraudulent concealment does

21  not toll statute of limitations when "facts describing concealment" are "still related to the underlying

22  wrongdoing rather than an effort to prevent plaintiffs from being able to sue").

23         Finally, Smith's suggestion that some of his transactions may fall within the limitations

24  period also fails. He does not discuss why that would matter or how it would save his claims. To the

25  extent he invokes the continuing violation doctrine, he has not pled that theory or any of its

26  _____

27  discovery despite reasonable diligence"); *Grisham v. Philip Morris, Inc*., 670 F. Supp. 2d 1014,
    1048 (C.D. Cal. 2009) (at summary judgment, plaintiff introduced specific substantive evidence of
28  delayed discovery).

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

1  elements. *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 884 (N.D. Cal. 2015) (holding that

2  plaintiffs had failed to plead a continuing violation because they failed to allege details regarding

3  "new or independent actions taken by the Defendants" after specific date). Nor could he. Even if

4  DraftKings engaged in continuing violations by continuing to represent that DFS contests are legal,

5  "judges in this District have held that that the statute of repose begins to run on the date of the *first*

6  misrepresentation." *Betz v. Trainer Wortham & Company, Inc.*, 829 F. Supp. 2d 860, 864 (N.D. Cal.

7  2011) (emphasis added). A defendant's continued conduct or its lingering effects do not restart the

8  clock. *Int'l Ass'n of Machinists and Aerospace Workers AFL-CIO v. Aloha Airlines, Inc.*, 790 F.2d

9  727, 737 (9th Cir. 1986) ("The fact that a party violating the RLA persists in its position or that the

10 effects of its actions continue after the claim initially arose does not create a continuing violation so

11 that the statute of limitations is re-started with each action.").

12 **VI.    Plaintiffs' Allegations That DraftKings Acted with Malice Should Be Stricken.**

13      Plaintiffs do not dispute, and therefore concede, that (1) they have failed to allege facts

14 supporting a finding of malice, oppression, or fraud, and that (2) these allegations are relevant only

15 to punitive damages (which are not available under the UCL, and which the complaint disclaims

16 with respect to the CLRA cause of action). *See* Opp. at 14–15. Plaintiffs argue only that, as a

17 technical matter, the Court cannot dismiss a request for punitive damages under Rule 12(b)(6).[13] *Id.*

18 That is incorrect. *See, e.g., GardenSensor, Inc. v. Stanley Black & Decker, Inc*., No. 12-CV-03922

19 NC, 2013 WL 12177929, at *6 (N.D. Cal. Feb. 25, 2013) (granting motion to dismiss punitive

20 damages request under Rule 12(b)(6)); *Panoyan v. Regalo Int'l LLC*, No. CV 19-07469 PA (SKx),

21 2019 WL 8758897, at *3 (C.D. Cal. Oct. 25, 2019) (same).

22                          **CONCLUSION**

23      The Court should grant Defendant's motion to dismiss and dismiss both causes of action in

24 the Complaint without leave to amend.

25

26 ───────────────

[13] Even if that were true (and it is not), the Court can construe the motion as a motion to strike

27 pursuant to Rule 12(f), because DraftKings has demonstrated that the request for punitive damages
is "immaterial" in that it is not relevant to any of the claims. *See Sturm v. Rasmussen*, No. 18-CV-

28 01689-W-BLM, 2019 WL 626167, at *4 (S.D. Cal. Feb. 14, 2019).

1

2    DATED:  October 16, 2025              COBLENTZ PATCH DUFFY & BASS LLP

3                                          By:    /s/ Richard R. Patch

4                                               RICHARD R. PATCH
                                                Attorneys for Defendant
5                                               DRAFTKINGS INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**