Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP LLC**
3415 S Sepulveda Blvd., Suite 1121
Los Angeles, CA 90034
Telephone: 310-896-5813
E-mail: wes@almeidalawgroup.com

Margot P. Cutter, SBN 306789
**CUTTER LAW P.C.**
401 Watt Avenue
Sacramento, CA 95864
Telephone: 916-290-9400
E-mail: mcutter@cutterlaw.com

F. Peter Silva II, SBN 348070
**TYCKO & ZAVAREEI LLP**
333 H Street, Suite 500
Chula Vista, CA 91911
Telephone: 510-588-5299
E-mail: psilva@tzlegal.com

James Bilsborrow, *pro hac vice*
**WEITZ & LUXENBERG PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
E-mail: jbilsborrow@weitzlux.com

**[Additional Counsel on Signature Page]**

Counsel for Plaintiffs and the Proposed Class

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHICHENG ZHEN *et al.,* individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> DRAFTKINGS, INC., JASON D. ROBINS, MATTHEW KALISH, PAUL LIBERMAN, CROWN GAMING, INC., AND DOES 1-20, <br><br> Defendants. | Case No. 3:25-cv-04618-CRB <br><br> Related Cases: <br>     3:25-cv-05542-CRB <br>     3:25-cv-10473-CRB <br><br> **PLAINTIFFS' OPPOSITION TO THE INDIVIDUAL DEFEDANTS AND CROWN'S MOTION TO DISMISS** <br><br> Assigned to: Hon. Charles R. Breyer <br> Hearing Date: June 26, 2026 <br> Time: 10:00 AM |

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................1

II.  FACTUAL BACKGROUND ........................................................................................3

    A.   Defendants and the RICO Enterprises. ..............................................................3

    B.   The Enterprises' Conduct. ...................................................................................4

        1.   The Natural Person Enterprise. ................................................................4

        2.   The Legal Entity Enterprise. ....................................................................5

    C.   The Enterprises' Conduct Harmed Plaintiffs. ....................................................6

III. ARGUMENT ............................................................................................................6

    A.   This Court Has Personal Jurisdiction Over the Individual Defendants and Crown. ............................................................................................................6

        1.   Legal Standard ........................................................................................6

        2.   The Court Has Jurisdiction Over the Individual Defendants. ...................7

            a.   The Individual Defendants Directed Activities into California. ......................................................................................7

            b.   Even If the Individual Defendants' Conduct Was Through DraftKings, that Does Not Deprive this Court of Personal Jurisdiction. ..................................................................................8

            c.   Plaintiffs' Claims Arise from the Individual Defendants' Contacts. .........................................................................................9

        3.   This Court Has Specific Jurisdiction Over Crown. ..................................10

    B.   Plaintiffs State Violations of RICO Section 1962(c). ........................................12

        1.   Plaintiffs Have Standing to Pursue Their RICO Causes of Action (Element 5). ............................................................................................12

        2.   Plaintiffs Establish the Existence of the Enterprises (Element 2). .............15

        3.   Plaintiffs Establish the Conduct of Defendants in Operating the RICO Enterprises (Element 1). ...............................................................16

            a.   The Legal Entity Enterprise Is a Distinct Associated-in-Fact Enterprise. ....................................................................................17

            b.   Defendant Robins, Liberman, and Kalish Are Liable for Their RICO Conduct. .............................................................................18

            c.   Crown Is Liable for Its RICO Conduct. .......................................20

-i-

4.      Defendants Engaged in a Pattern of Racketeering Activity (Elements 3 and 4). ...................................................................20

a.      Plaintiffs State a Pattern of Racketeering Activity for Wire Fraud ......................................................................................21

b.      Plaintiffs State a Pattern of Racketeering for Violation of Federal Anti-Gambling Laws.............................................23

C.      Plaintiffs Also Establish a RICO Conspiracy Claim Under Section 1962(d)........24

D.      Plaintiffs' RICO Claims Are Timely. ...................................................................25

IV.      CONCLUSION.................................................................................................................25

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-04618-CRB

# TABLE OF AUTHORITIES

Page(s)

Cases

*Activision Publ'g, Inc. v. EngineOwning UG,*
   2023 WL 3272399 (C.D. Cal. Apr. 4, 2023) ........................................................................ 3, 23

*Adell v. Macon Cnty. Greyhound Park, Inc.,*
   785 F. Supp. 2d 1226 (M.D. Ala. 2011) ...................................................................................... 15

*Alan Neuman Prods., Inc. v. Albright,*
   862 F.2d 1388 (9th Cir. 1988) ...................................................................................................... 23

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
   666 F. Supp. 2d 1109 (C.D. Cal. 2009) ......................................................................................... 9

*Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) ...................................................................................................... 22

*Boyle v. United States,*
   556 U.S. 938 (2009) ...................................................................................................................... 16

*Briskin v. Shopify, Inc.,*
   135 F.4th 739 (9th Cir. 2025) ............................................................................................... 2, 8, 11

*Canyon Cnty. v. Syngenta Seeds, Inc.,*
   519 F.3d 969 (9th Cir. 2008) ........................................................................................................ 13

*Chaset v. Fleer/Skybox Int'l, LP,*
   300 F.3d 1083 (9th Cir. 2002) ................................................................................................ 14, 15

*City & Cnty. of San Francisco v. Purdue Pharma L.P.,*
   491 F. Supp. 3d 610 (N.D. Cal. 2020) .................................................................................... 12, 13

*Cooper v. Pickett,*
   137 F.3d 616 (9th Cir. 1997) ........................................................................................................ 25

*Corsair Gaming, Inc. v. Sambi LLC,*
   2025 WL 2094010 (N.D. Cal. May 19, 2025) .............................................................................. 10

*Dhoat v. Walia*,
   2024 WL 4804980 (N.D. Cal. Nov. 15, 2024) ......................................................................... 3, 24

*Diaz v. Gates,*
   420 F.3d 897 (9th Cir. 2005) ........................................................................................................ 12

*Dumas v. Major League Baseball Props., Inc.,*
   104 F. Supp. 2d 1220 (S.D. Cal. 2000) ........................................................................................ 14

-iii-

*DynaPass Inc. v. Mobile Authentication Corp.*,
2019 WL 2902870, (C.D. Cal. Apr. 15, 2019) .......................................................................... 9

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004)................................................................................................ 23

*Ferrari v. Mercedes-BenzUSA, LLC*,
2016 WL 7188030 (N.D. Cal. Dec. 12, 2016) .................................................................. 20, 23

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021).............................................................................................................. 10

*Gonzales v. Lloyds TSB Bank, PLC*,
532 F. Supp. 2d 1200 (C.D. Cal. 2006)................................................................................. 23

*Green v. Aztar Corp.*,
2003 WL 22012205 (N.D. Ill. Aug. 22, 2003)....................................................................... 15

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023)........................................................................................... 8, 10

*Howard v. Am. Online Inc.*,
208 F.3d 741 (9th Cir. 2000)................................................................................................ 24

*Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
2010 WL 2198200, at *5-6, n. 7 (N.D. Cal. May 28, 2010)................................................... 18

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
806 F. Supp. 3d 1015 (N.D. Cal. 2025) ................................................................................ 14

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) ........................................................................... *passim*

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Pracs. Litig.*,
601 F. Supp. 2d 1201 (S.D. Cal. 2009) .............................................................................. 2, 17

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................................. 19, 20

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
533 F. Supp. 3d 858 (N.D. Cal. 2021) ......................................................................... 18, 19, 20

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
826 F. Supp. 2d 1180 (C.D. Cal. 2011).................................................................................. 23

*In re Volkswagen "Clean Diesel" Litig.*,
349 F. Supp. 3d 881 (N.D. Cal. 2018) ......................................................................... 2, 12, 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 4890594 (N.D. Cal. 2017)............................................................................. 2, 16, 21

-iv-

*j2 Glob. Commc'ns, Inc. v. Blue Jay, Inc.*,
    2009 WL 29905 (N.D. Cal. Jan. 5, 2009) ................................................................ 8

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ............................................................................... 12

*Kennedy v. Full Tilt Poker*,
    2010 WL 1710006 (C.D. Cal. Apr. 26, 2010) ....................................................... 23

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
    940 F.2d 397 (9th Cir. 1991) ................................................................................. 23

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................................... 25

*Matsunoki Grp., Inc. v. Timberwork Oregon, Inc.*,
    2009 WL 1033818 (N.D. Cal. Apr. 16, 2009) ......................................................... 9

*McLeod v. Valve Corp.*,
    2016 WL 5792695 (W.D. Wash. Oct. 4, 2016) ...................................................... 14

*Micron Tech., Inc. v. United Microelectronics Corp.*,
    2019 WL 266518 (N.D. Cal. Jan. 18, 2019) ............................................................ 9

*Moran v. Bromma*,
    675 F. App'x 641 (9th Cir. 2017) ..................................................................... 18, 19

*MSP Recovery Claims, Series LLC v. Amgen Inc.*,
    2024 WL 3464410 (C.D. Cal. July 15, 2024) ........................................................ 13

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
    298 F.3d 768 (9th Cir. 2002) ................................................................................. 25

*People Ctr., Inc. v. Deel, Inc.*,
    2026 WL 497491 (N.D. Cal. Feb. 23, 2026) ..................................................... 15, 16

*People ex rel. Vacco v. World Interactive Gaming Corp.*,
    185 Misc. 2d 852 (N.Y. Sup. Ct. 1999) ................................................................. 24

*PLS-Pac. Laser Sys. v. TLZ Inc.*,
    2007 WL 2022020, (N.D. Cal. July 9, 2007) ........................................................... 9

*Price v. Pinnacle Brands, Inc.*,
    138 F.3d 602 (5th Cir. 1998) ................................................................................. 15

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) ................................................................................. 13

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ............................................................................................... 18

-v-

*River City Markets, Inc. v. Fleming Foods W., Inc.*,
  960 F.2d 1458 (9th Cir. 1992)................................................................................................ 18

*Romano v. Torch Elecs., LLC*,
  2023 WL 9064602 (W.D. Mo. Aug. 21, 2023)...................................................................... 15

*Schneider v. Chipotle Mexican Grill, Inc.*,
  328 F.R.D. 520 (N.D. Cal. 2018) .......................................................................................... 13

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004).............................................................................................. 6, 7

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) ........................................................................................................ 12, 14

*Shaw v. Nissan N. Am., Inc.*,
  220 F. Supp. 3d 1046 (C.D. Cal. 2016)................................................................................. 23

*Steele v. Hosp. Corp. of Am.*,
  36 F.3d 69 (9th Cir. 1994)..................................................................................................... 15

*United States v. Garlick,*
  240 F.3d 789 (9th Cir. 2004)................................................................................................. 21

*United States v. Stapleton,*
  293 F.3d 1111 (9th Cir. 2002)............................................................................................... 21

*Ward v. Crow Vote LLC,*
  634 F. Supp. 3d 800 (C.D. Cal. 2022)................................................................................... 15

*Yagman v. Kelly*,
  2018 WL 2138461 (C.D. Cal. Mar. 20, 2018) ...................................................................... 17

**Statutes**

18 U.S.C. § 1084 ................................................................................................................. *passim*

18 U.S.C. § 1343 ................................................................................................................. *passim*

18 U.S.C. § 1953 ................................................................................................................. *passim*

18 U.S.C. § 1955 ................................................................................................................. *passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ................. *passim*

California Penal Code 337a ........................................................................................................... 5

**Rules**

Federal Rule of Civil Procedure Rule 8(d)(2)............................................................................... 3

Federal Rule of Civil Procedure Rule 9(b) ....................................................................... 3, 22, 25

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Congress enacted the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), in 1970 for a clear and urgent purpose: to eradicate organized criminal enterprises whose business models depended on illegal gambling, corruption, and other forms of racketeering that threatened the integrity of interstate commerce. RICO was designed to put an end to coordinated, profit-driven gambling schemes that operate outside lawful regulatory frameworks, conceal responsibility through layered entities, and generate revenue through conduct that federal and state law prohibit.

Illegal gambling was not an incidental concern of RICO—it was one of the statute's foundational targets. Congress identified illegal gambling operations as a primary engine of organized crime, and RICO's structure reflects that focus: unlawful gambling offenses appear prominently among the predicate acts enumerated in 18 U.S.C. § 1961(1).

This case fits squarely within that statutory design. Plaintiffs allege that Defendants have operated two Enterprises whose very purpose is to profit from illegal gambling activity, evade regulatory oversight, and mislead consumers about the nature and legality of the gambling service that they offer. Defendants' conduct is not an isolated violation; it is a coordinated, continuous pattern of racketeering activity built upon the very harms RICO was enacted to prevent. By structuring their operations to obscure responsibility, by targeting consumers, and by generating substantial revenue from conduct that state law prohibits, Defendants have engaged in the type of organized, illicit gambling enterprise that Congress sought to eliminate through RICO.

In the Motion, Defendants Jason Robins, Matthew Kalish, and Paul Liberman (collectively, "Individual Defendants") and Crown Gaming, Inc. ("Crown," and with the Individual Defendants, "Defendants") take a scattershot approach to attacking the First Amended Complaint ("FAC"). Each of their arguments fail.

**First,** Defendants contend that this Court lacks personal jurisdiction over them. But after intentionally, knowingly, and willfully directing conduct at California for years, that argument is a non-starter. As the Ninth Circuit recently confirmed "an interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are its 'own choice and not random,

isolated, or fortuitous,' even if that platform cultivates a nationwide audience for commercial gain." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 758 (9th Cir. 2025) (cleaned up). That is certainly the case here, and Plaintiffs establish that each Defendant has sufficient contacts with California for this Court to exercise personal jurisdiction.

**Second,** Plaintiffs state a claim for violations of RICO section 1962(c). Contrary to Defendants' arguments, Plaintiffs have standing because, in reliance on Defendants' false advertising, they believed they were paying for *legal* sports betting; but they received only *illegal* sports betting in violation of California law. It is well established that paying more for a service than one would have without the fraudulent information is sufficient to state a claim for injury to property, which in turn gives rise to RICO standing. *See, e.g.*, *In re Volkswagen "Clean Diesel" Litig.,* 349 F. Supp. 3d 881, 904 (N.D. Cal. 2018) (hereafter "*Volkswagen II*"). And while Defendants argue that the mere illegality of gambling does not lead to RICO liability, that argument ignores the allegations that Defendants used "wires" (the internet) to falsely advertise their gambling services as legal in California—conduct that led directly to Plaintiffs' injuries.

**Third,** the FAC alleges the existence of two Enterprises whose purpose is to perpetuate illegal gambling in California. The FAC's detailed allegations of the structure of each enterprise, the longevity of each, and each participant's role establish the RICO Enterprises distinct existence. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.,* 2017 WL 4890594, at *16 (N.D. Cal. 2017) (hereafter "*Volkswagen I*").

**Fourth,** the FAC details each Defendant's conduct in operating the RICO Enterprises and the distinctions between normal business operations (in states where gambling is legal) and the Enterprises' illegal activities in California. FAC ¶¶ 157-219. Within the Legal Entity Enterprise, DraftKings, Inc. and Crown took on different roles such that their activities were distinct and separate despite Crown being a subsidiary of DraftKings, Inc. These allegations of separateness satisfy the requirement to show that a subsidiary and a parent are RICO persons distinct from the associated-in-fact enterprise they are a part of. *See In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Pracs. Litig.*, 601 F. Supp. 2d 1201, 1213-14 (S.D. Cal. 2009). And as for the Individual Defendants, the law is clear that when an individual is "at the helm" of an enterprise, directing its

illegal activities, that person can be liable for RICO violations and cannot hide behind their corporate title. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 983 (N.D. Cal. 2018).

**Fifth,** Plaintiffs sufficiently allege a pattern of racketeering activity for wire fraud by alleging that the Defendants transmitted information about gambling, wagers, and bets, across state lines using "wires" (the internet). These allegations, which specify exactly how Defendants' conduct violated Sections 1084, 1953, and 1955, are sufficient to put Defendants on notice of the allegations against them under Rule 9(b). *See, e.g.*, *Activision Publ'g, Inc. v. EngineOwning UG,* 2023 WL 3272399, at \*25-26 (C.D. Cal. Apr. 4, 2023) (rejecting "group pleading" arguments).

**Sixth,** Plaintiffs establish a RICO conspiracy claim under Section 1962(d) because the underlying RICO claims are plausibly alleged. *See, e.g.*, *Dhoat v. Walia* , 2024 WL 4804980 at \*7 (N.D. Cal. Nov. 15, 2024).

**Finally,** Plaintiffs' RICO claims are timely because each Plaintiff alleges actual injury arising from Defendants' conduct within the past four years. FAC ¶¶ 109-134.

## II.    FACTUAL BACKGROUND

### A.    Defendants and the RICO Enterprises.

The FAC establishes the existence of two separate RICO enterprises: (i) the "Natural Person Enterprise" (*id.* ¶¶ 157-189) and (ii) the "Legal Entity Enterprise" (*id.* ¶¶ 190-219) (together, the "Enterprises"). The Natural Person Enterprise consists of Defendants Jason Robins, Matthew Kalish, and Paul Liberman (collectively, "Individual Defendants") and the enterprise itself is DraftKings, Inc. who is not a named defendant for purposes of the Natural Person Enterprise. *Id.* ¶ 154. The Legal Entity Enterprise is an associated-in-fact enterprise consisting of Defendants DraftKings, Inc., Crown, and the Individual Defendants. *Id.* ¶ 155.[1]

The Enterprises exist for the purpose of perpetuating illegal gambling services throughout California, in knowing and direct violation of state law. FAC ¶¶ 157, 190. The Enterprises exist separate and apart from the regular business activities of Defendants, which are to provide gambling

---

[1] To the extent the Court finds any conflict in Plaintiffs' allegations as to the Natural Person Enterprise and the Legal Entity Enterprise, Federal Rule of Civil Procedure Rule 8(d)(2) allows Plaintiffs to plead their allegations in the alternative.

services in jurisdictions where those services are legal. FAC ¶¶ 155, 157, 159.

**B.      The Enterprises' Conduct.**

      **1.      The Natural Person Enterprise.**

In operating DraftKings and the Gambling Websites, the Individual Defendants work through the Natural Person Enterprise to offer illegal gambling services, including Daily Fantasy Sports and Pick6, throughout California. FAC ¶¶ 157-58. The Individual Defendants use DraftKings, Inc. to effectuate the Natural Person Enterprise, including using DraftKings, Inc. to: (i) offer the illegal gambling services in California, (ii) make false representations regarding the legality of its services in California, and (iii) spend millions of dollars advertising the illegal gambling services in California. *Id.* ¶ 159. Each Individual Defendant plays a role in the Natural Person Enterprise. **Robins** is the CEO of DraftKings and oversees strategy, operations, and legislative efforts to further perpetuate gambling throughout the country. Robins abuses his authority as CEO to coopt DraftKings, Inc. to offer illegal gambling services in California, despite knowledge of its illegality. *Id.* ¶¶ 160-161, 168-171. **Kalish,** as President of DraftKings North America, leads DraftKings' operations, marketing, and customer experience. Kalish abuses his authority as President to coopt DraftKings, Inc. to offer market and offer illegal gambling services in California, despite knowledge of its illegality. *Id.* ¶¶ 163-164, 168-171. **Liberman** serves as the President of Global Technology and Product at DraftKings, Inc., and oversees gambling services, including the DraftKings' daily fantasy sports application. Liberman abuses his authority as President to coopt DraftKings, Inc. to offer illegal gambling services in California, despite knowledge of its illegality. *Id.* ¶¶ 165-166, 168-171.

The Individual Defendants perpetuate the Natural Person Enterprise's illegal gambling scheme through DraftKings, Inc. The Individual Defendants developed the illegal gambling services at issue, namely, Daily Fantasy Sports and Pick6. FAC ¶ 171. To attract California users for these illegal gambling services, the Individual Defendants used DraftKings, Inc. to disseminate false statements concerning the gambling services' legality, including on the Gambling Websites and in California advertisements. FAC ¶¶ 76-78, 100-108, 159.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-04618-CRB

The FAC includes numerous examples of specific false statements made by DraftKings (at the direction of the Individual Defendants), including screenshots:




FAC ¶ 77; *see also id.* ¶¶ 71-78, 98-101 (additional false representations of legality).

Californians, including Plaintiffs, relied on the false statements of legality, and once registered to use the illegal gambling services, the Individual Defendants used the wires (namely, the internet), to provide betting information to California residents, accept bets from California residents, and pay California residents who won bets through the Enterprises' illegal Gambling Websites. FAC ¶¶ 112, 125, 174. The Individual Defendants continued their illegal gambling operations even after the California attorney general confirmed in July 2025 that those services violated California Penal Code 337a. *Id*. ¶¶ 42, 43, 167-174; *id.* at Ex. B (attaching AG Opinion).

### 2.    The Legal Entity Enterprise.

The Legal Entity Enterprise—managed and directed by DraftKings, Inc. and Crown—perpetuates its illegal gambling scheme in a similar manner. The Legal Entity Enterprise operates as an associated-in-fact enterprise and was formed between Defendants DraftKings, Inc., Crown, and the Individual Defendants. FAC ¶¶ 190, 207. Since at least 2018, DraftKings, Inc. and Crown associated with each other and the Individual Defendants to market and sell illegal gambling services in California, including Daily Fantasy Sports and Pick6. *Id.* ¶¶ 197, 199. Each Defendant plays a specific role in this scheme. **DraftKings, Inc.** advertises gambling services, interfaces with

California customers, and takes bets from, and pays money to, California residents. *Id.* ¶ 195. **Crown** maintains and implements the software necessary for Californians to participate in the gambling services. *Id.* ¶¶ 194-195. And the Individual Defendants participate in the same roles as in the Natural Person Enterprise. *Id.* at ¶ 197.

**C.     The Enterprises' Conduct Harmed Plaintiffs.**

As a result of the Enterprises' conduct, Plaintiffs were harmed. Both Plaintiffs saw the representations that the gambling services are legal and available in California. FAC ¶¶ 110-111 (Zhen), 123-24 (Smith). Both Plaintiffs relied on the false statements that the gambling services were legal. *Id.* ¶¶ 112 (Zhen), 125 (Smith). Both Plaintiffs used the illegal gambling services (and would not have but for Defendants' false statements), and as a result, both Plaintiffs lost money. *Id.* ¶¶ 112-117 (Zhen), 125-128 (Smith). The financial losses Plaintiffs suffered are the direct result of the Enterprises' conduct. *Id.* ¶¶ 271, 287.

## III.     <u>ARGUMENT</u>

**A.     This Court Has Personal Jurisdiction Over the Individual Defendants and Crown.**

After intentionally, knowingly, and willfully directing conduct at California for years, Defendants Robins, Kalish, Liberman, and Crown ask this Court to find that it lacks personal jurisdiction over them. Defendants do not submit any evidence to support their Motion. As such, this Court must take Plaintiffs' allegations as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). As shown in the FAC, this Court has personal jurisdiction.

**1.     Legal Standard.**

Where, as here, a motion contesting personal jurisdiction is based solely on the allegations made in the complaint, the plaintiff only needs make a *prima facie* showing of jurisdictional facts, and the allegations in the complaint are taken as true. Schwarzenegger, 374 F.3d at 800. To analyze a claim of specific personal jurisdiction, the Ninth Circuit has established a three-prong test:

> [1] the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> [2] the claim must be one which arises out of or relates to the defendant's forum-

-6-

related activities; and

[3] the exercise of personal jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* at 802. Defendants have the burden to "present a compelling case" that the exercise of jurisdiction is not reasonable when a plaintiff satisfies the first two prongs. *Id.*

**2.      The Court Has Jurisdiction Over the Individual Defendants.**

**a.      The Individual Defendants Directed Activities into California.**

In the FAC, Plaintiffs show that the Individual Defendants purposefully direct their activities into California. While Defendants argue that Plaintiffs' allegations are conclusory, vague, and made on information and belief, those arguments fall flat.

Defendants Robins is the Chief Executive Officer and Chairman of the Board of DraftKings and co-founded DraftKings. FAC ¶ 6. Robins oversees DraftKings' nationwide strategy and operations and led efforts to pass fantasy sports, sports, betting, and iGaming legislation, in California, such as working on Proposition 27. *Id.* ¶¶ 160-61, 170. Defendant Kalish is the President of DraftKings North America and co-founded DraftKings. *Id.* ¶ 7. Kalish oversees nationwide performance of DraftKings' Daily Fantasy Sports, and he *leads* DraftKings' *operations*, *marketing*, and customer experience departments, including within California. *Id.* ¶ 164 (emphasis added). Defendant Liberman is the President of Global Technology and Product and co-founded DraftKings. *Id.* ¶ 8. Mr. Liberman has developed applications and product offerings for DraftKings, including the Daily Fantasy Sports app that is offered in California. *Id.* ¶ 166.

In these roles, the Individual Defendants have undertaken a plethora of activities specifically aimed at California, including but not limited to:

- Using DraftKings to offer illegal gambling services in California, representing that the gambling services are legal, and advertising within California. *Id.* ¶ 159.

- Perpetuating an illegal gambling enterprise throughout California. *Id.* ¶ 157.

- Developing the Pick6 gambling service at issue, deciding to offer the Pick6 service in California, and continuing to offer DraftKings' daily fantasy sports service at the same time. *Id.* ¶ 171.

-7-

- Transmitting bets into California, accepting bets from California residents, and paying California residents who won bets on the DraftKings service. *Id*. ¶ 174.

- Designing a website and mobile application that allow participation in betting and wagering pools in California. *Id*. ¶ 178.

As the Ninth Circuit recently confirmed, these allegations are sufficient: if a defendant sells "via an interactive website" and causes delivery "into a forum[,]" the defendant has purposefully directed its conduct to the forum such that the exercise of personal jurisdiction may be appropriate." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1094 (9th Cir. 2023). This is because "an interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are its 'own choice and not random, isolated, or fortuitous,' even if that platform cultivates a nationwide audience for commercial gain" and the services are received by the consumer. *Briskin*, 135 F.4th at 748 (cleaned up). The FAC is replete with allegations that the Enterprises directed their gambling services *to California*, and advertised the gambling services *within California*, even if they also cultivated a broader nationwide audience at the same time. These allegations satisfy the *Schwarzenegger* test.

**b.    Even If the Individual Defendants' Conduct Was Through DraftKings, that Does Not Deprive this Court of Personal Jurisdiction.**

Defendants argue that the Individual Defendants' actions directed towards California were actually the actions of DraftKings, Inc. But Plaintiffs' FAC makes clear that the Individual Defendants undertook the conduct to effectuate the illegal gambling scheme in California. FAC ¶ 159. Far from imputing the Individual Defendants' conduct to DraftKings, allegations that the Individual Defendants took certain actions "through" or "by and through" DraftKings just explains how Defendants effectuated their scheme. As alleged, the Individual Defendants used DraftKings to "offer illegal gambling services in California," to "make representations regarding the legality of its services in California," and to "spend millions of dollars advertising the legality and availability of its illegal gambling services within California." *Id.* ¶ 159. While the Individual Defendants used DraftKings as the vehicle for their scheme, that does not mean they did not undertake the conduct they are alleged to have committed. *j2 Glob. Commc'ns, Inc. v. Blue Jay,*

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-04618-CRB

*Inc.*, 2009 WL 29905 at *7 (N.D. Cal. Jan. 5, 2009) (a corporate officer may be held personally responsible for causing the corporation to act for purposes of personal jurisdiction).

And, even if the Court were to find that it was DraftKings, Inc. who undertook these actions, it does not mean that the Individual Defendants are not subject to jurisdiction in this Court because the Individual Defendants directed that conduct. A corporate officer's contacts on behalf of a corporation are sufficient to establish personal jurisdiction where the officer is "a primary participant" or "had control of, and direct participation in the alleged activities." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) (cleaned up); *see also Matsunoki Grp., Inc. v. Timberwork Oregon, Inc.*, 2009 WL 1033818 at *4-5 (N.D. Cal. Apr. 16, 2009) (a corporate officer who was personally involved in marketing and product distribution was subject to personal jurisdiction).[2]

As alleged, "Mr. Robins as CEO, Mr. Kalish as President of DraftKings North America . . . , and Mr. Liberman as President of Global Technology and Product devised the Pick6 service, decided that they would offer the illegal Pick6 service in California as well as continuing to offer their illegal daily fantasy sports service." FAC ¶ 171. This alone is sufficient, but the FAC offers even more. *See id.* ¶¶ 172-183.

This Court should find that the Individual Defendants purposefully directed their activities into California.

### c.   Plaintiffs' Claims Arise from the Individual Defendants' Contacts.

Plaintiffs' allegations arise out of and relate to Defendants' contacts with this forum. Plaintiff Zhen alleges that while in California around May 2024 he saw advertisements for DraftKings that prompted him to make an account, saw the representations that DraftKings' services were legal in California, setup an account, and used his account to gamble, losing

---

[2] Defendants cite only four authorities in support of their personal jurisdiction arguments. None of these cases require dismissal. In *DynaPass Inc. v. Mobile Authentication Corp.*, 2019 WL 2902870, (C.D. Cal. Apr. 15, 2019), plaintiffs failed to file an opposition and only alleged that Defendant conducted internet research about a company from outside California. In *Micron Tech., Inc. v. United Microelectronics Corp.*, 2019 WL 266518 (N.D. Cal. Jan. 18, 2019), the plaintiff failed to tie the forum contacts to the conduct at issue. And while officers are not always subject to jurisdiction based on a corporation's contacts, *PLS-Pac. Laser Sys. v. TLZ Inc.*, 2007 WL 2022020, (N.D. Cal. July 9, 2007), here Plaintiffs' allegations show that the Individual Defendants had control of and directly participated in the scheme, making personal jurisdiction over them proper.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-04618-CRB

approximately $1,000, including $400 on the Pick6 service alone. FAC ¶¶ 109-117. Similarly, Plaintiff Smith alleges that while in California in 2019 he saw advertisements for DraftKings that prompted him to make an account, saw the representations that DraftKings' services were legal in California, and used his account to gamble, losing approximately $1,700. *Id*. ¶¶ 122-129.

In *Ford Motor Company*, the Supreme Court held that "our most common formulation of the [personal jurisdiction] rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (cleaned up). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that *some* relationships will support jurisdiction without a causal showing." *Id*. (emphasis added). This suit is tied to the Individual Defendants' contacts with California. Just as in *Herbal Brands,* where Plaintiffs' claims "allege[d] harm caused by the Defendants' sales of products—clearly ar[o]se out of and relate[d] to Defendants' conduct of selling those same products to Arizona residents[,]" Plaintiffs claims here arise from the Individual Defendants' California contacts, namely the offering and promotion of the gambling services. *Herbal Brands*, 72 F.4th 1085 at 1096; *see also Corsair Gaming, Inc. v. Sambi LLC*, 2025 WL 2094010 at *6 (N.D. Cal. May 19, 2025) (personal jurisdiction where defendant sold products in California via website).[3]

### 3.      This Court Has Specific Jurisdiction Over Crown.

This Court also has personal jurisdiction over Crown because Crown purposefully directed its activities towards California, Plaintiffs' claims arise out of and relate to Crown's California contacts, and the exercise of jurisdiction over Crown would be reasonable. Defendants argue that Plaintiffs' allegations amount to mere "unidentified conduct," but that argument ignores that the FAC identifies significant conduct including that Crown "participated in the unlawful gambling practices and services at issue in this case, and assisted in the directing the marketing and advertising of these services within and to the state of California, including within the Northern

_____

[3] Defendants' argument that Robins' political and media advocacy concerning the legality of sports gambling in California are somehow not *contacts* related to California misses the mark. For years, Robins has advocated for California to legalize sports betting, including under Proposition 27 in 2022. *Id.* ¶¶ 162, 170. As the Supreme Court explained in *Ford Motor Company*, a plaintiff's suit does not always need to "arise out of" the defendant's contacts with the forum; they can also *relate* to the defendant's forum contacts. 592 U.S. at 362. Here, that includes Robins' advocacy for changes to California's prohibition on the gambling services that Defendants offer in the state.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-04618-CRB

District." FAC ¶ 13 (cited by Defendants in support of its "unidentified conduct" argument despite the conduct it identifies). Plaintiffs also allege that Crown:

- Offers software that facilitates the California gambling services (FAC ¶ 194);

- Builds, maintains, and implements the technological infrastructure necessary for users to engage in the gambling services in California (*id*. ¶ 204);

- Uses third-party contracts as well as its own proprietary technology to create infrastructure necessary for the California gambling services (*id*. ¶ 194);

- Associates with DraftKings, Inc. to offer gambling services in California (*id*. ¶ 195);

- Maintains a product facing role by maintaining and implementing software to allow users to gamble in California (*id*.); and

- Associates with the other Defendants as an enterprise to violate federal gambling laws in California and offer unlawful gambling services in California (*id*. ¶ 199).

These allegations are sufficient to show that Crown directed its activities to California and that Plaintiffs' suit arises out of or relates to these contacts with California. In *Briskin,* the Ninth Circuit analyzed whether the Northern District had jurisdiction over Shopify, Inc., an entity that sells web-based payment platforms and related services to merchants who engage in online commercial transactions. 135 F.4th at 747. In finding specific personal jurisdiction over Shopify, the Ninth Circuit noted that "an interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are its 'own choice and not random, isolated, or fortuitous,' even if that platform cultivates a nationwide audience for commercial gain." *Id*. at 758 (cleaned up).

Crown builds, maintains, and implements the Gambling Websites, which are the technical infrastructure—the very backbone—of the gambling services at issue here. FAC ¶ 194. Further, Crown implements software to allow users to participate in the enterprise's services in California specifically. *Id.* ¶ 195. Crown's activities are its own choice and are not random, isolated, or fortuitous, as they are specifically carried out to offer illegal gambling services in California. Just like in *Briskin*, where the plaintiff's claims arose out of Shopify's contact with the plaintiff's devices, here, Plaintiffs' claims arise out of their use of the Gambling Websites that Crown built and for which it supplies software, to facilitate illegal gambling. *Id*. at 760. Since Plaintiffs' claims

-11-

arise out of and relate to these California-specific contacts, the Court may exercise jurisdiction.

**B.      Plaintiffs State Violations of RICO Section 1962(c).**

"RICO is to be read broadly" to effectuate its "remedial purposes." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497-98 (1985); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.,* 295 F. Supp. 3d at 957 (N.D. Cal. 2018). To state a civil RICO claim under Section 1962(c), plaintiffs must allege the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). Plaintiffs establish each of these elements.

**1.      Plaintiffs Have Standing to Pursue Their RICO Causes of Action (Element 5).**

Defendants contend that Plaintiffs lack RICO standing because they received the benefit of their bargain—the opportunity to engage in sports gambling. Defendants' self-serving re-characterization of Plaintiffs' claims ignores that what they agreed to purchase was a *legal* bet on a gambling contest, that the affirmative (and false) representations of legality were material to their decision to make the bet, and that they would not have made the purchase if the unlawful nature of the activity had been disclosed. *See* FAC ¶¶ 113, 119 (Zhen); ¶¶ 126, 132 (Smith). What Plaintiffs received was entry into an *illegal* contest, which inherently has less valuable (in fact, no value) compared to the supposedly legal services advertised. *Id.* at ¶¶ 260-61.

"RICO standing is limited to plaintiffs who have suffered (1) an injury to 'business or property,' that is (2) 'by reason of' a RICO violation." *City & Cnty. of San Francisco v. Purdue Pharma L.P.,* 491 F. Supp. 3d 610, 648 (N.D. Cal. 2020). Plaintiffs satisfy this standard here. The "injury to business or property" test is designed to "weed[] out cases that are based on only intangible injuries like emotional distress." *Volkswagen II,* 349 F. Supp. 3d at 904. While the "RICO injury" must be "concrete" and "tangible," in the Ninth Circuit "this requirement sets a relatively low threshold. Plaintiffs do not need to identify the amount of damage so long as the fact of damage is based on a plausible theory." *Id.* at 881; *see also Diaz v. Gates,* 420 F.3d 897, 901 (9th Cir. 2005) ("our approach [to injury to business or property] allows more claims to go forward").

Consistent with this low threshold, "a consumer who has been overcharged can claim an injury to her property, based on a wrongful deprivation of her money." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976 (9th Cir. 2008). It is sufficient for "Plaintiffs [to] allege that they each paid a premium for something that they did not receive . . . [or] that they [] paid inflated [costs]." *Volkswagen II,* 349 F. Supp. 3d at 904*; see also Purdue Pharma*, 491 F. Supp. 3d at 649 (under RICO, "a consumer who has been overcharged may claim an injury to her property"); *MSP Recovery Claims, Series LLC v. Amgen Inc.,* 2024 WL 3464410, at *13 (C.D. Cal. July 15, 2024) (finding RICO standing and explaining that by "definition, an overcharge is paying more for a product than what one otherwise would have"); *Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 989 (9th Cir. 2015) (The "difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information" is an economic injury.). "The fact that the price . . . did not change after the representation does not establish that there is no triable issue as to whether Plaintiffs paid a price premium." *Schneider v. Chipotle Mexican Grill, Inc.,* 328 F.R.D. 520, 531 (N.D. Cal. 2018).

Said differently, allegations showing that the purchase would not have occurred but for the false representation or that a consumer paid a price premium because of the false representation are sufficient to establish RICO injury. That is precisely what Plaintiffs allege here: Plaintiffs "suffered monetary harm as a result of DraftKings' conduct because: (a) they would not have purchased the services on the same terms had it not been for Defendant's unlawful, unfair, and deceptive actions . . . and/or (b) they paid a price premium for the services . . . due to Defendant's marketing misrepresentations and deceptive labeling[.]" FAC ¶ 261.[4] Indeed, in its separate motion, DraftKings, Inc. (represented by the same counsel as Defendants) admits that "Plaintiffs assert two types of losses [full refund and price premium]. Both measures directly derive from the entry fees paid by Plaintiffs." ECF No. 77, Mtn. 14:26-28.

Defendants attempt to argue that mere "illegality" of gambling—despite that illegal

---

[4] If the Court determines that an amended pleading is required (it should not), Plaintiffs can add details further explaining the difference in value between legal gambling contracts (what Plaintiffs bargained for) and illegal gambling contracts (what they received), including further details on how the charging of the "vig" would never have occurred but for the false representations.

-13-

gambling is a RICO predicate act (*see* 18 U.S.C. § 1084, 1953, 1955)—is insufficient to establish RICO injury. Defendants are mistaken: "the compensable injury necessarily is the harm caused by predicate acts . . . . Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts." *Sedima,* 473 U.S. at 497 (cleaned up). While Defendants point to *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083 (9th Cir. 2002), *Chaset* does not help them. There, the Ninth Circuit held that *accurate* labeling on a *potentially* illegal gambling product (physical baseball cards) did not give rise to a RICO cause of action. But *Chaset* did not reach the question of whether physical baseball cards were illegal gambling under California law. Thus, *Chaset* did not resolve whether allegations of losses incurred through illegal gambling operations can state a claim for RICO liability at the pleading stage. *See id.* at 1086-1088.

In any event, like the *Chaset* court, this Court also does not need to reach the issue whether Defendants' gambling services, standing alone, are sufficient predicate act for civil RICO causation. Plaintiffs' allegations are not limited to technical illegality. Rather, Plaintiffs allege that the illegal gambling services *combined* with the fraudulent use of the "wires" (the internet) to make false statements about the legality of the gambling services caused Plaintiffs' injuries. FAC ¶¶ 109-134, 153-219. None of Defendants' authorities address a similar fact pattern, and Defendants' two lead authorities, *In re Apple Inc. App Store Simulated Casino-Style Games Litig.,* 806 F. Supp. 3d 1015 (N.D. Cal. 2025) and *Chaset*, both recognize that allegations establishing a price premium based on false representations are sufficient to confer RICO standing.

In *Simulated Casino-Style Games*, Judge Davila found that factual allegations establishing a price premium likely are sufficient to state a claim arising from gambling losses: "While they paid money expecting to receive a fair chance to win at virtual slots, they did not actually receive a fair chance. That might well be a winning argument had Plaintiffs alleged *how* social casino apps are rigged. But they did not, making only the conclusory allegation that social casino apps *are* rigged." 806 F. Supp. 3d at 1047 (emphasis in original).[5] Similarly, in *Chaset*, the Ninth Circuit focused on the

---

[5] Many of Defendants' authorities recognize the same—that allegations showing false representations or cheating would give rise to RICO claims. *See, e.g., McLeod v. Valve Corp.*, 2016 WL 5792695, at *3 (W.D. Wash. Oct. 4, 2016) (failure to allege any false representation); *Dumas*

*accurate* statements on the gambling product's packaging to conclude that no economic injury was present: "[p]laintiffs do not allege that they received something different than precisely what they bargained for: six to twenty cards in a pack with a chance that one of those cards may be of Ken Griffey, Jr." 300 F.3d at 1087 (quoting *Price v. Pinnacle Brands, Inc.,* 138 F.3d 602, 607 (5th Cir. 1998)).[6]

Unlike the plaintiffs in *Simulated Casino-Style Games* and *Chaset*, here, Plaintiffs identify the false statements made by Defendants about the legality of the gambling services (FAC ¶¶ 71-78, 98-101), state their reliance on those statements (*id.* ¶¶ 109-134), show illegality under California law (*id.* ¶¶ 17-43), and confirm that those false statements (combined with the illegal services) caused their RICO injuries (*id.* ¶¶ 109-134, 153-219). Nothing more is required.

### 2.    Plaintiffs Establish the Existence of the Enterprises (Element 2).

In the FAC, Plaintiffs establish two enterprises—the Natural Person Enterprise and the Legal Entity Enterprise. The Natural Person Enterprise consists of Defendants Robins, Kalish, and Liberman and the enterprise itself is DraftKings, Inc. FAC ¶ 154. The Legal Entity Enterprise is an associated-in-fact enterprise consisting of DraftKings, Inc., Crown Gaming, Inc., and the Individual Defendants. *Id.* ¶155.

"The test for an associated-in-fact enterprise does not have 'a high threshold for pleading.' *People Ctr., Inc. v. Deel, Inc.,* 2026 WL 497491, at *24 (N.D. Cal. Feb. 23, 2026). To establish an associated-in-fact enterprise, a plaintiff must show: (1) a common purpose, (2) a structure or

*v. Major League Baseball Props., Inc.,* 104 F. Supp. 2d 1220, 1223 (S.D. Cal. 2000) ("Plaintiffs allege no fraud or dishonesty with respect to Defendants' gambling activity."), *aff'd sub nom. Chaset v. Fleer/Skybox Int'l, LP,* 300 F.3d 1083 (9th Cir. 2002); *Romano v. Torch Elecs., LLC,* 2023 WL 9064602, at *3 (W.D. Mo. Aug. 21, 2023) (no allegation that the gambling service were "rigged" in violation of state law); *Adell v. Macon Cnty. Greyhound Park, Inc.,* 785 F. Supp. 2d 1226, 1240 (M.D. Ala. 2011) ("There are no allegations connecting the alleged rigging to any particular electronic bingo machine played by Plaintiffs."); *Green v. Aztar Corp.,* 2003 WL 22012205, at *3 (N.D. Ill. Aug. 22, 2003) ("Green does [not] allege that defendants lied to him about his bets or that he was swindled or defrauded out of money").

[6] Defendants' remaining authorities are similarly distinguishable. *Ward v. Crow Vote LLC,* 634 F. Supp. 3d 800, 819 (C.D. Cal. 2022), *aff'd,* 2024 WL 2239010 (9th Cir. May 17, 2024) (affirming summary judgment dismissing RICO claims because the "[c]ompetition . . . does not constitute unlawful gambling under Arizona law"); *Steele v. Hosp. Corp. of Am.,* 36 F.3d 69, 70 (9th Cir. 1994) ("the insurance companies and not the patients themselves [are] who suffered financial loss from the allegedly fraudulent health care billings").

-15-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-04618-CRB

organization, and (3) longevity necessary to accomplish the purpose. *Boyle v. United States,* 556 U.S. 938, 946 (2009). Those elements are met.

The **purpose** of both Enterprises is to perpetuate illegal gambling in California where each Enterprise offers illegal gambling services. FAC ¶¶ 157, 190. The **structure** of each Enterprise is detailed in the FAC, with each Defendant serving a specific role, as further detailed in Section III.B.3, below. *See also* FAC ¶¶ 159 (overview of structure of the Natural Person Enterprise), 160-162 (Robins' role), 163-164 (Kalish's role), 165-166 (Liberman's role), 191 (overview of the structure of the Legal Entity Enterprise), 195 (DraftKings' role), 195 (Crown's role), 197 (Individual Defendants' roles). The FAC also shows the **longevity** of the Enterprises, extending back to at least 2012 in the case of the Natural Person Enterprise and 2018 in the case of the Legal Entity Enterprise, and continuing to present. *See id.* ¶¶ 50 (DraftKings operating in California since at least 2012), 135 (same), 168 (Natural Person Enterprise), 199 (Legal Entity Enterprise formed in 2018); *see also People Ctr., Inc.,* 2026 WL 497491, at *24 (open-ended continuity satisfied by ongoing conduct and close-ended continuity satisfied for conduct lasting a year or more).

This is sufficient. *See Volkswagen I*, 2017 WL 4890594, at *16 (evaluating each element of the "enterprise" test and finding each satisfied).

**3.    Plaintiffs Establish the Conduct of Defendants in Operating the RICO Enterprises (Element 1).**

Defendants contend that Plaintiffs have failed establish that the Enterprises are distinct from Defendants' ordinary business activities and that Defendants participated in the Enterprises. Defendants are wrong. Plaintiffs' allegations detail the distinctiveness of the Enterprises and how each Defendant participated in the conduct of the Enterprises.

Plaintiffs' FAC alleges the existence of two enterprises, the Natural Person Enterprise (FAC ¶¶ 157-189) and the Legal Entity Enterprise (*Id.* ¶¶ 190-219). The activities of the RICO persons participating in each enterprise are distinct from the RICO persons' normal business activities. *Id.* ¶¶ 159 ("Defendants Robins Kalish, and Liberman use DraftKings, Inc. to undertake their illegal gambling enterprise in a way that is distinct from DraftKings' operations in states where they are legally allowed to offer their Daily Fantasy Sports and Pick6 services."), 282 ("the [Legal Entity]

-16-

enterprise has an existence separate and apart from the pattern or racketeering activity"). And that the Defendants participated in the affairs of their respective Enterprises, not just their own affairs. *Id.* ¶¶ 167-174 (describing how Defendants in the Natural Persons Enterprise furthered the enterprise's business by devising and offering new illegal products in California), 190-215 (describing how Defendants in the Legal Entity Enterprise exists outside the respective entities' and individuals' business activities).

Defendants make slightly different arguments concerning each Enterprise, and those arguments are addressed in the sections that follow.

### a.    The Legal Entity Enterprise Is a Distinct Associated-in-Fact Enterprise.

Defendants contend that the parent-subsidiary relationship between DraftKings, Inc. and Crown doom Plaintiffs' claims. But neither the Supreme Court nor the Ninth Circuit have addressed the parent-subsidiary question in the context of RICO. *Yagman v. Kelly*, 2018 WL 2138461 at *15 (C.D. Cal. Mar. 20, 2018). Instead, courts within the Ninth Circuit look to see whether the complaint alleges "something more" to show distinctiveness when corporate parents and subsidiaries are alleged to be RICO persons in the same enterprise. *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Pracs. Litig.*, 601 F. Supp. 2d 1201, 1213-14 (S.D. Cal. 2009).

In *Countrywide*, plaintiffs satisfied this "something more" requirement by, in part, "alleg[ing] that each individual in the Countrywide Enterprise had a distinct role." *Id.* at 1214. Specifically, plaintiffs alleged that one parent defendant was in the business of originating loans, another parent defendant provided tax services, a subsidiary defendant provided additional products during loan closing, and another subsidiary defendant appraisal services. *Id.* Plaintiffs' allegations are similar to those in *Countrywide.* Plaintiffs allege that DraftKings's role in the Legal Entity Enterprise was to advertise the enterprises' service, interface with users, and complete the functions necessary to pay-out wager to users, while Crown's role was to be product-facing, maintaining and implementing software to allow users to participate in the enterprise's gambling operations. FAC ¶ 195. These allegations are sufficient to show that there was distinctiveness between DraftKings as the parent and Crown as the subsidiary. *See also id.* ¶ 194 (additional allegations of separateness).

While Defendants cite *Ice Cream Distributors of Evansville, LLC* to argue that a parent-

subsidiary relationship cannot constitute an enterprise (Mot. at 13), *Ice Cream Distributors* did not engage with the "something more" requirement and expressly noted that Plaintiffs had failed to allege the parent company's role in the enterprise. 2010 WL 2198200 at *5-6, n. 7 (N.D. Cal. May 28, 2010). In contrast, here, Plaintiffs alleged "something more" *and* the distinct roles of the related corporate Defendants.

To the extent that Defendants argue the presence of Robins, Liberman, and Kalish destroys distinctiveness, that is also not the law. Generally, "a corporate officer is sufficiently distinct from the corporation for which he works such that a plaintiff can allege the officer as the RICO person and the corporation as the RICO enterprise." *Moran v. Bromma*, 675 F. App'x 641, 645 (9th Cir. 2017); *see also River City Markets, Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1461 (9th Cir. 1992) ("[W]e consistently have held that in multiple-defendant RICO cases, some of the individual defendants may also be identified as members of the alleged association-in-fact enterprise.").

### b.    Defendant Robins, Liberman, and Kalish Are Liable for Their RICO Conduct.[7]

Defendants attempt to paint with a broad brush and discuss each Individual Defendant's RICO conduct in the context of both Enterprises without considering what Plaintiffs actually allege. For a defendant to be seen as participating in the enterprise, a plaintiff must allege that the defendant had some part in directing the enterprise's affairs. *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 982 (N.D. Cal. 2018) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). In the FAC, Plaintiffs allege each Defendants' participation in directing each the Enterprises affairs, and that Defendants' conduct is distinct from their normal corporate activities and taken in furtherance of the Enterprises.

With respect to the Legal Entities Enterprise, Defendants rely heavily on the order regarding the *original* complaint in *Juul*, but in a subsequent decision the *Juul* court found that additional factual allegations satisfied the distinctiveness requirements. *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 533 F. Supp. 3d 858, 872-875 (N.D. Cal. 2021). Similarly, in

---

[7] It should be noted that in discussing whether Plaintiffs alleged that Defendants participated in the conduct of a distinct racketeering enterprise that Defendants make no challenge to DraftKings, Inc.'s participation in the Legal Entity Enterprise.

*Chrysler*, the court examined whether the Plaintiffs had sufficiently alleged an associated-in-fact enterprise, and whether an individual defendant—the CEO of two RICO defendants—conducted the affairs of the enterprise. *Chrysler*, 295 F. Supp. 3d at 941, 982-83. There, the court found that plaintiffs' allegations plausibly supported that the individual defendant engaged in conducting the affairs of the enterprise because he was "'at the helm'" of the enterprise to illegally circumvent U.S. emissions standards. *Id.* at 983. Plaintiffs' allegations here are no different. As alleged Robins "oversees [DraftKings'] strategy and operations," Kalish "leads DraftKings' operations, marketing, and customer experience departments," and Liberman's team "under his leadership" has "developed award-winning, stand-alone apps and product offerings including . . . DraftKings Daily Fantasy Sports app." FAC ¶¶ 161, 164, 166.

With respect to the Natural Person Enterprise, Plaintiffs allege that the Individual Defendants' conduct in a distinct RICO enterprise (FAC ¶ 159), and "a corporate officer is sufficiently distinct from the corporation for which he works such that a plaintiff can allege the officer as a RICO person and the corporation as the RICO enterprise." *Moran*, 675 F. App'x at 645 (9th Cir. 2017). Here, "Defendants Robins, Kalish, and Liberman use DraftKings, Inc. to undertake their illegal gambling enterprise in a way that is distinct from DraftKings' operations in states where they are legally allowed to offer their Daily Fantasy Sports and Pick6 services." FAC ¶ 159. Further the Individual Defendants use DraftKings, Inc. to "offer illegal gambling services in California, (ii) make representations regarding the legality of its services in California . . . and (iii) spend millions of dollars advertising the legality and availability of its illegal gambling services in California." *Id*. And the Individual Defendants "devised the Pick6 service, decided they would offer the illegal Pick6 service in California as well as continuing to offer their illegal daily fantasy sports service." *Id*. ¶ 171. Even in *Juul*, the court permitted the RICO claims in the initial complaint to go forward against one of the officers where plaintiffs identified the officer's "role and personal conduct at the initial design and engineering of the JUUL product and then subsequent development and rollout of the JUUL product." *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 605 (N.D. Cal. 2020).

Defendants' remaining arguments and case law similarly do not compel dismissal. *First*,

-19-

Defendants argue that plaintiffs must identify relevant board minutes or concrete board actions to survive Defendants' Motion, but as recognized in *Juul*, "[f]ailure to allege a Board vote does not doom plaintiffs' claims." 533 F. Supp. 3d at 872. *Second*, Defendants' argument that it is facially implausible that these Defendants made the decision to offer the illegal services in California because Liberman focuses on product design is non-sensical. Paragraph 166 specifically notes that "[h]e oversees our product development while leading efforts to maintain the Company's current product offerings… including DraftKings' DK Live and Leagues, *DraftKings Daily Fantasy Sports app*, and most recently, the DraftKings Sportsbook and iGaming platforms." FAC ¶ 166 (emphasis added). Insteading of showing implausibility, these allegations confirm Liberman's participation in the Natural Persons Enterprise as Plaintiffs allege that Daily Fantasy Sports is one of the Enterprise's illegal product offerings. *Id*. ¶¶ 167-169. Finally, *Ferrari v. Mercedes-Benz USA, LLC* does not compel a different result, as the *Ferrari* plaintiffs merely alleged "corrupt influence" without further substantive allegations. 2016 WL 7188030 at *3 (N.D. Cal. Dec. 12, 2016). That is not the case here.

### c.      Crown Is Liable for Its RICO Conduct.

Crown also participated in a RICO enterprise, the Legal Entity Enterprise. As alleged, Crown "associated with [DraftKings] for the purpose of offering gambling services to California users that the enterprise marketed as being legal[.]" FAC ¶ 195. Crown maintains and implements software to allow users to participate in the enterprise's illegal California gambling operations. *Id*. Further, Crown "manage[s] and direct[s] the enterprise." *Id*. ¶ 207. Defendants characterize the relationship of DraftKings, Inc. and Crown as a "routine commercial relationship," (Mot. at 16), but that does not save Crown, as entities cannot "hide behind lawful commercial dealings to avoid RICO liability." *Chrylser*, 295 F. Supp. 3d at 981. Plaintiffs' allegations are enough to plausibly show that Crown participated in the Legal Entity Enterprise.

### 4.      Defendants Engaged in a Pattern of Racketeering Activity (Elements 3 and 4).

"Racketeering activity" is broadly defined under RICO to include any of the predicate acts listed in 18 U.S.C. § 1961(1). As relevant here, those predicate acts include wire fraud (18 U.S.C. § 1343) and violation of federal anti-gambling laws (18 U.S.C. § 1084, 1953, 1955), each of which

-20-

is adequately alleged in the FAC.

          a.       **Plaintiffs State a Pattern of Racketeering Activity for Wire Fraud.**

The elements for "wire fraud" are "(1) a scheme to defraud, (2) the use of the [] wires to further that scheme, and (3) the specific intent to defraud." *Volkswagen I*, 2017 WL 4890594, at *11. The "scheme to defraud" requires a material misrepresentation, but the misrepresentation need not be made through the wires—the use of the wires only needs to be a "step in the plot." *United States v. Garlick,* 240 F.3d 789, 792 (9th Cir. 2004)). The "scheme to defraud" element of mail and wire fraud is "treated like conspiracy in several respects." *United States v. Stapleton,* 293 F.3d 1111, 1117 (9th Cir. 2002). As a result, each member of the scheme need not make a separate misrepresentation: "[j]ust as acts and statements of co-conspirators are admissible against other conspirators, so too are the statements and acts of co-participants in a scheme to defraud admissible against other participants. . . . [K]nowing participants in the scheme are legally liable for their co-schemers use of the [] wires." *Id.* Based on these principles, a defendant is liable for wire fraud if "(1) the defendant was a knowing participant in a scheme to defraud; (2) the defendant had the intent to defraud; and (3) a co-schemer committed acts of [] wire fraud during the defendant's participation in the scheme, and those acts were within the scope of the scheme." *Volkswagen I*, 2017 WL 4890594, at *12.

Turning to the allegations in the FAC, Plaintiffs have stated predicate acts of wire fraud. *See* FAC ¶¶ 179-186 (wire fraud committed by the Natural Person Enterprise), 210-215 (wire fraud committed by the Legal Entity Enterprise). Specifically, Plaintiffs allege that "Defendants knowingly devised and/or knowingly participated in a scheme or artifice to defraud [DraftKings] users, namely falsely representing to users that the gambling services were legal through statements communicated within the Gambling Websites." *Id.* ¶ 210 (Legal Entity Enterprise); *id.* ¶ 179 (similar allegations against the Natural Person Enterprise). Further, the FAC alleges that Defendants "transmitt[ed] information relating to an illegal gambling business across state lines; transmitt[ed] information relating to the legality of illegal gambling business across state lines; accept[ed] wagers related to illegal gambling . . . and pay[ed] out 'winning' . . . ; [and] [a]ccepted money from users related to their illegal gambling." *Id.* ¶ 212 (Legal Entity Enterprise) (cleaned

up); *id.* ¶ 183 (similar allegations against the Natural Person Enterprise). Moreover, each Defendant committed "[e]ach and every use" of the wires with the specific intent to defraud users or to obtain the property of users by means of false or fraudulent pretenses, representations, or promises." *Id.* ¶ 215 (Legal Entity Enterprise); *id.* ¶ 186 (similar allegations against the Natural Person Enterprise). Each Defendant engaged in at least two predicate acts. *Id.* ¶¶ 267-270, 283-286.

Defendants raise Rule 9(b), but the purpose of Rule 9(b) is to provide Defendants "notice of the particular misconduct [claimed against them] . . . so that [they] can defend against the charge and not just deny that [they have] done anything wrong." *Bly-Magee v. California,* 236 F.3d 1014, 1019 (9th Cir. 2001). Here, not only are the allegations sufficient for this purpose, but "[i]t is not possible for Plaintiffs to plead with particularly all instances of wire fraud that advanced, furthered, executed, and concealed the scheme because the particulars are within the exclusive control and within the knowledge of [Defendants]." FAC ¶ 214 (Legal Entity Enterprise); *id.* ¶ 185 (materially identical allegations against the Natural Person Enterprise). Despite this limitation, as discussed in Section III.B.3, above, the "conduct" of each specific Defendant is alleged, and the FAC still provides the "who, what, when, where, and how" of Plaintiffs' claims:

- **Who:** Each defendant in their respective roles conducting the enterprises. FAC ¶¶ 153-219.
- **What:** False and deceptive representations about the legality of gambling services in California made on the Gambling Websites and in electronic advertisements (*e.g., id.* ¶¶ 71-78, 98-101, 179, 210) and transmission of bets and wagers through the internet (*id.* ¶¶ 50-108, 183, 212).
- **When:** Since at least 2018 and continuing to present (*id.* ¶¶ 50, 199), between 2024 and February 2025 as directed at Plaintiff Zhen (*id.* ¶¶ 110, 117), and between 2019 and May 2025 as directed at Plaintiff Smith (*id.* ¶¶ 123, 127).
- **Where:** The Gambling Websites, namely DraftKings.com and the DraftKings apps (*id.* ¶¶ 50-97, 179, 210), and in California facing advertisements (*id.* ¶¶ 102-108).
- **How:** Falsely representing that the transactions were legal (*id.* ¶¶ 71-78, 98-101, 179, 210) and transmitting bets over the internet (*id.* ¶¶ 183, 212).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-04618-CRB

In the context of ongoing RICO enterprises, these allegations are sufficient. *See, e.g., Activision Publ'g, Inc. v. EngineOwning UG,* 2023 WL 3272399, at *25-26 (C.D. Cal. Apr. 4, 2023) (rejecting arguments related to "group pleading"); *Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1211–12 (C.D. Cal. 2006) ("Plaintiffs provide a time frame for these [wire] transfers and general allegations as to the entities involved in these transfers, but no specific dates are given. Based on the on-going nature of the fraud alleged by Plaintiffs, this is not a fatal flaw.").

Defendants' authorities do not require a different result. For example, *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004) found RICO fraud allegations insufficiently pled where plaintiff did not include "a word" of the false statements and did not "attach the [false] notices to [the complaint]." Here, in contrast, the FAC contains numerous specific examples of false statements and illegal conduct. And *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988) involved a complaint that was "entirely general" as to the RICO claims. Those circumstances are a far cry from this case, where Plaintiffs not only quote Defendants' false statements, but also include screen captures of the affirmative false representations of legality made on the Gambling Websites. *See* FAC ¶¶ 71-78, 98-101.[8]

### b.   Plaintiffs State a Pattern of Racketeering for Violation of Federal Anti-Gambling Laws.

In the Motion, Defendants do not dispute that violations of 18 U.S.C. §§ 1084, 1953, 1955—core federal anti-gambling laws—can serve as RICO predicate acts. Instead, they allege that those sections are inapplicable here. Defendants are wrong.

**Section 1084** prohibits anyone in the "business of betting or wagering" from knowingly

---

[8] Defendants' other authorities are similarly distinguishable. *See, e.g., Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) ("no specific mailings are mentioned" and "none of the actions allegedly taken by defendants constitute fraud"); *Ferrari v. Mercedes-Benz USA, LLC*, 2016 WL 7188030, at *3 (N.D. Cal. Dec. 12, 2016) ("no 'associated-in-fact' enterprise is alleged to exist. Rather, each of the companies is alleged to be a separate enterprise"); *Kennedy v. Full Tilt Poker*, 2010 WL 1710006, at *5 (C.D. Cal. Apr. 26, 2010) (no allegations of the "specific content of any alleged misrepresentation or how the misrepresentation was disseminated via mail or wire"); *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016) (fraudulent common purpose not established); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.,* 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011) (the 'who' is never identified).

-23-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-04618-CRB

using a "wire" for transmitting bets or wagers where the bet or wager is illegal in the state where the bet or wager is placed. 18 U.S.C. § 1084(a)-(b). In the Motion, Defendants protest that their actions were not "knowingly" conducted. The FAC alleges otherwise: "Defendants Robins, Kalish, and Liberman as owners and officers of DraftKings *knowingly* use wire communication facilities— including the internet—in interstate commerce to transmit bets and/or wagers[.]" FAC ¶ 174 (emphasis added); *see also* ¶¶ 203-205 (allegations as to Legal Entity Enterprise, including Crown).

**Section 1953** prohibits "knowingly carry[ing] or *send[ing]* . . . *any record*, paraphernalia, ticket, certificate, bills, slip, token, paper, *writing*, or *other device used* . . . for use in . . . sporting [wagering]." Defendants contend that Section 1953 does not apply because no physical equipment was moved across state lines. This construction ignores the plain text of the statute, which applies to "any record," "any . . . writing," or "other device used." The fact that the internet was used does not change the result: "Gambling conducted via the Internet . . . is indistinguishable from any other form of gambling[.]" *People ex rel. Vacco v. World Interactive Gaming Corp.,* 185 Misc. 2d 852, 862 (N.Y. Sup. Ct. 1999) (citing 18 U.S.C. § 1953).

**Section 1955** prohibits the financing, management, supervision, direction, and ownership of an "illegal gambling business." Section 1955 looks to state law to determine whether a gambling business is illegal. *Id.* at (b)(1)(i). In the Motion, Defendants do not contest that this predicate act is satisfied as to the Individual Defendants, and therefore have waived the argument. With regard to Crown, the sole argument raised is that Crown does not "manage[] or direct[]" the Legal Entity Enterprise. The FAC is directly to the contrary: "Crown Gaming Inc. manage[s] and direct[s] the enterprise[.]" FAC ¶ 207. *See also id.* ¶ 194-209 (additional allegations regarding Crown's role).

The FAC establishes multiple predicate acts, and the RICO claims can proceed.

**C.    Plaintiffs Also Establish a RICO Conspiracy Claim Under Section 1962(d).**

"To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.,* 208 F.3d 741, 751 (9th Cir. 2000). Plaintiffs adequately allege a Section 1962(d) conspiracy, and Defendants' Motion should be denied for three reasons. **First**, the FAC establishes substantive RICO violations under Section

-24-

1962(c). *See Dhoat*, 2024 WL 4804980 at *7 (refusing to dismiss Plaintiff's conspiracy claim under 18 U.S.C. § 1962(d), where Plaintiff plausibly alleged a substantive RICO violation under subsection (c)). **Second,** as shown in Section III.B.4, Plaintiffs' FAC is sufficient to satisfy Rule 9(b), as Plaintiffs allege "the who, what, when, where, and how" of the fraudulent conduct, including each Defendants' roles in the scheme. *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997). **Third,** "[i]t is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n,* 298 F.3d 768, 774-75 (9th Cir. 2002) (cleaned up). "The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." *Id*. Here, Plaintiffs allege such an agreement: Defendants agreed to launch and operate the illegal gambling services in California. FAC ¶¶ 135, 170-171, 275-76, 291-92. That is sufficient.

**D.      Plaintiffs' RICO Claims Are Timely.**

Plaintiffs' RICO claims are timely because each alleges actual injury arising from Defendants' conduct within the past four years. FAC ¶¶ 109-134. Moreover, Defendants' attempt to incorporate by reference arguments regarding timeliness in DraftKings, Inc.'s separate brief is improper, and for this separate reason, the Court should reject Defendants' timeliness argument.

## IV.      CONCLUSION

The Motion should be denied in full. To the extent the Court grants any portion, Plaintiffs respectfully request leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Respectfully submitted,

Dated: May 8, 2026

By: */s/ Wesley M. Griffith*
Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP LLC**
3415 S Sepulveda Blvd., Suite 1121
Los Angeles, CA 90034
Telephone: 310-896-5813
E-mail: wes@almeidalawgroup.com

Counsel for Plaintiffs and the Proposed Class

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-04618-CRB

David A. McGee, *pro hac vice*
**ALMEIDA LAW GROUP LLC**
609 H Street NE, Suite 445
Washington, D.C. 20001
Telephone: 202-913-5681
E-mail: dmcgee@almeidalawgroup.com

Margot Cutter, SBN 306789
**CUTTER LAW P.C**.
401 Watt Avenue
Sacramento, CA 95864
Telephone: 916-290-9400
E-mail:mcutter@cutterlaw.com

F. Peter Silva II, SBN 348070
**TYCKO & ZAVAREEI LLP**
333 H Street, Suite 5000
Chula Vista, CA 91911
Telephone: 510-588-5299
E-mail: psilva@tzlegal.com

Katherine M. Aizpuru, SBN 367828
Robert M. Devling, *pro hac vice* to be filed
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20006
Telephone: 202-973-0900
E-mail: kaizpuru@tzlegal.com
E-mail: rdevling@tzlegal.com

James Bilsborrow, *pro hac vice*
Aaron Freedman, *pro hac vice*
**WEITZ & LUXENBERG PC**
700 Broadway
New York, NY 10003
Telephone: 212-344-5461
E-mail: jbilsborrow@weitzlux.com

Michael Piggins, *pro hac vice* to be filed
**WEITZ & LUXENBERG PC**
3011 W. Grand Blvd., Fl. 24
Detroit, MI 48202
Telephone: 231-366-3108
E-mail: mpiggins@weitzlux.com

Counsel for Plaintiffs and the Proposed Class

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-04618-CRB

## CERTIFICATE OF SERVICE

I hereby certify that on the below date, I caused to be served a true and correct copy of the foregoing, which was served on all counsel of record using the Court's CM/ECF system.

Dated: May 8, 2026

/s/ *Wesley M. Griffith*
Wesley M. Griffith
**ALMEIDA LAW GROUP LLC**

Counsel for Plaintiffs and the Proposed Class

-27-