Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP LLC**
3415 S Sepulveda Blvd Ste 1121
Los Angeles, CA 90034-7090
Telephone: 310-896-5813
E-mail: wes@almeidalawgroup.com

Margot P. Cutter, SBN 306789
**CUTTER LAW P.C.**
401 Watt Avenue
Sacramento, CA 95864
Telephone: 916-290-9400
E-mail: mcutter@cutterlaw.com

F. Peter Silva II, SBN 348070
**TYCKO & ZAVAREEI LLP**
333 H Street, Suite 5000
Chula Vista, CA 91911
Telephone: 510-588-5299
E-mail: psilva@tzlegal.com

James Bilsborrow, *pro hac vice*
**WEITZ & LUXENBERG PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
E-mail: jbilsborrow@weitzlux.com

**[Additional Counsel on Signature Page]**

*Counsel for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZHICHENG ZHEN and JONATHAN SMITH, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DRAFTKINGS, INC., JASON D. ROBINS, MATTHEW KALISH, PAUL LIBERMAN, CROWN GAMING, INC., AND DOES 1-20,<br><br>Defendants. | Case No. 3:25-cv-04618-CRB<br><br>Related Cases:<br>    3:25-cv-05542-CRB<br>    3:25-cv-10473-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DRAFTKINGS' MOTION TO DISMISS**<br><br>Assigned to: Hon. Charles R. Breyer<br>Hearing Date: June 26, 2026<br>Time: 10:00 AM |

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.     FACTUAL BACKGROUND .........................................................................................5

        A.      DraftKings' California Gambling Operations.........................................................5

III.    ARGUMENT .................................................................................................................6

        A.      The Public Policy Doctrine Does Not Bar Plaintiffs' Claims...............................6

                1.      *Kelly* Misapplied California Law and Does Not Bind This Court..............6

                2.      Even If the Public Policy Doctrine Applies to Gambling Losses,
                        *Kyablue*, Not *Kelly*, Provides the Correct Rule of Decision. .....................9

                3.      *Kelly* Expressly Authorizes Statutory Causes of Action............................11

                4.      DraftKings, Not Plaintiffs, Is the Party at Fault Here. ..............................11

                5.      State Law Claims for Injunctive Relief Can Proceed. ...............................12

                6.      DraftKings' Other Authorities Do Not Dictate a Different Result. ...........12

                7.      DraftKings Concedes that the California Public Policy Doctrine
                        Does Not Apply to Plaintiffs' Federal Causes of Action...........................13

        B.      Plaintiffs' State Law Causes of Action Are Adequately Alleged. ........................13

                1.      Plaintiffs' Claims Under the UCL and CLRA Can Proceed......................13

                2.      DraftKings Committed Civil Theft. ..........................................................18

                3.      Plaintiffs Establish a Statute of Anne Claim for Recovery of
                        Gambling Losses. .....................................................................................19

        C.      DraftKings' Superficial Attacks on Plaintiffs' RICO Claims Fail........................21

        D.      Plaintiffs Have Standing to Seek Injunctive Relief...............................................23

        E.      Plaintiff Smith's Claims Are Not Time-Barred. ...................................................24

        F.      Plaintiffs' Equitable Claims Are Not Barred by *Sonner* and Its Progeny.............25

        G.      Plaintiffs Can Seek Declaratory Relief. ...............................................................25

IV.     CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AdTrader, Inc. v. Google LLC*,
   2018 WL 3428525 (N.D. Cal. July 13, 2018) ............................................................................ 19

*Aguilar v. Atl. Richfield Co.*,
   25 Cal. 4th 826 (2001) ................................................................................................................ 9

*Alves v. Players Edge, Inc.*,
   2007 WL 6004919 (S.D. Cal. Aug. 8, 2007) ............................................................................ 13

*Asdourian v. Araj*,
   38 Cal. 3d 276 (1985) ............................................................................................................... 12

*Barquis v. Merchants Collection Assn.*,
   7 Cal. 3d 94 (1972) .................................................................................................................... 8

*Bell v. Feibush*,
   212 Cal. App. 4th 1041 (2013) ................................................................................................. 19

*Blair v. Rent-A-Ctr., Inc.*,
   928 F.3d 819 (9th Cir. 2019) .................................................................................................... 23

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) .................................................................................................. 16

*Bronson v. Johnson & Johnson*,
   2013 WL 5731817 (N.D. Cal. Oct. 22, 2013) .......................................................................... 17

*Bryant v. Mead*,
   1 Cal. 441 (1851) ........................................................................................................................ 7

*Carrier v. Brannan*,
   3 Cal. 328 (1853) ........................................................................................................................ 7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ............................................................................................................ 2, 9

*Cervantes v. City of San Diego*,
   5 F.3d 1273 (9th Cir. 1993) ...................................................................................................... 21

*Chaset v. Fleer/Skybox Int'l, LP*,
   300 F.3d 1083 (9th Cir. 2002) .................................................................................................. 22

*Chowning v. Tyler Techs., Inc.*,
   2025 WL 3496690 (N.D. Cal. Dec. 5, 2025) ........................................................................... 18

-i-

*Cimoli v. Alacer Corp.*,
546 F. Supp. 3d 897 (N.D. Cal. 2021) ........................................................................ 23

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ...................................................................................................... 23

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .................................................................................................... 23

*Coffee v. Google, LLC*,
2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ................................................................. 15

*Colvin v. Roblox Corp.*,
725 F. Supp. 3d 1018 (N.D. Cal. 2024) ...................................................................... 14

*Colvin v. Roblox Corp.*,
2024 WL 4231090 (N.D. Cal. Sept. 19, 2024) ................................................... 3, 10, 11

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*,
858 F.2d 499 (9th Cir. 1988) .................................................................................... 5, 24

*Crockford's Club Ltd. v. Si-Ahmed*,
203 Cal. App. 3d 1402 (1988) ....................................................................................... 8

*D'Agnese v. Novartis Pharms. Corp.*,
2013 WL 321773 (D. Ariz. Jan. 28, 2013) .................................................................. 21

*Davidson v. Apple, Inc.*,
2017 WL 3149305 (N.D. Cal. July 25, 2017) ........................................................ 13, 21

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ............................................................................... 4, 23, 24

*DEPCOM Power, Inc. v. CSUN Solar, Inc.*,
2020 WL 5176193 (N.D. Cal. July 30, 2020) ............................................................. 21

*Doe v. Roblox Corp.*,
602 F. Supp. 3d 1243 (N.D. Cal. 2022) ................................................................. 14, 18

*Dufour v. BE LLC*,
2010 WL 2560409 (N.D. Cal. June 22, 2010) ............................................................ 22

*Edwards v. Apple, Inc.*,
2025 WL 2172717 (N.D. Cal. July 31, 2025) ......................................................... 18, 19

*Eiess v. USAA Fed. Sav. Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019) ...................................................................... 23

*Fairbanks v. Superior Ct.*,
46 Cal. 4th 56 (2009) .................................................................................................. 18

-ii-

*Falcocchia v. Saxon Mortg., Inc.*,
709 F. Supp. 2d 860 (E.D. Cal. 2010) ................................................................ 13

*Formic Ventures LLC v. SomaLogic, Inc.*,
2023 WL 6037899 (N.D. Cal. Sept. 15, 2023) .................................................. 19

*Gilbert v. MoneyMutual, LLC*,
2018 WL 8186605 (N.D. Cal. 2018) .................................................................. 14

*Grisham v. Philip Morris, Inc.*,
670 F. Supp. 2d 1014 (C.D. Cal. 2009) ............................................................. 24

*Grocery Outlet, Inc. v. Naftali, Inc.*,
2024 WL 4682311 (N.D. Cal. Nov. 5, 2024) .................................................... 25

*Gudgel v. Clorox Co.*,
514 F. Supp. 3d 1177 (N.D. Cal. 2021) ............................................................ 17

*Hamilton v. Abadjian*,
30 Cal. 2d 49 (1947) ........................................................................................... 7

*Hawkins v. Kroger Company*,
906 F.3d 763 (9th Cir. 2018) ............................................................................. 15

*Haywood v. Drown*,
556 U.S. 729 (2009) ........................................................................................... 13

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) ........................................................................... 15

*Hope v. Early Warning Servs. LLC*,
2023 WL 5505020 (C.D. Cal. July 13, 2023) ................................................... 23

*Humphrey v. Viacom, Inc.*,
2007 WL 1797648 (D.N.J. June 20, 2007) ....................................................... 20

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
806 F. Supp. 3d 1015 (N.D. Cal. 2025) ................................................. 13, 20, 22

*In re Conseco Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*,
2008 WL 4544441 (N.D. Cal. Sept. 30, 2008) ................................................. 24

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ............................................................................. 19

*In re Oreck Corp.*,
2012 WL 6062047 (C.D. Cal. Dec. 3, 2012) .................................................... 17

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ....................................................................................... 17

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

*In re Toyota Motor Corp. Prods. Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011)......................................................................... 22

*Ind. Towers of Wash. v. Wash.*,
    350 F.3d 925 (9th Cir. 2003) ...................................................................................... 13

*Jamgotchian v. Sci. Games Corp.*,
    371 F. App'x 812 ......................................................................................................... 13

*Kearns v. Ford Motor Company*,
    567 F.3d 1120 (9th Cir. 2009)..................................................................................... 17

*Kelly v. First Astri Corporation*,
    72 Cal. App. 4th 462 (1999)................................................................................. *passim*

*Kenney v. Fruit of the Earth, Inc.*,
    2024 WL 4578981 (9th Cir. Oct. 25, 2024)................................................................ 23

*Kraus v. Trinity Mgmt. Servs., Inc.*,
    23 Cal. 4th 116 (2000) .................................................................................................. 8

*Kyablue v. Watkins*,
    210 Cal. App. 4th 1288 (2012)........................................................................ 2, 7, 10, 12

*Lam v. Hawaiian Gardens Casino*,
    2020 WL 806655 (C.D. Cal. Jan. 8, 2020) ................................................................ 13

*Lane & Pyron, Inc. v. Gibbs*,
    266 Cal. App. 2d 61 (1968)........................................................................................... 8

*Langone v. Kaiser*,
    2013 WL 5567587 (N.D. Ill. Oct. 9, 2013)................................................................ 20

*Lanovaz v. Twinings N. Am., Inc.*,
    726 F. App'x 590 (9th Cir. 2018) ............................................................................... 23

*Lavick v. Nitzberg*,
    83 Cal. App. 2d 381 (1948)........................................................................................... 7

*Linton v. Axcess Fin. Servs., Inc.*,
    2023 WL 4297568 (N.D. Cal. June 30, 2023) ........................................................... 25

*Lopez v. Garland*,
    116 F.4th 1032 (9th Cir. 2024)................................................................................... 20

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000)..................................................................................... 25

*Los Angeles Turf Club v. Horse Racing Labs*,
    2017 WL 11634526 (C.D. Cal. May 15, 2017) ..................................................... 11, 12

-iv-

*Lytle v. Nutramax Labs., Inc.*,
   114 F.4th 1011 (9th Cir. 2024).................................................................................. 8

*Mai v. Supercell Oy,*
   2024 WL 2077500 ..................................................................................................... 15

*Mann v. Gullickson*,
   2016 WL 6473215 (N.D. Cal. Nov. 2, 2016)............................................................. 11

*Mason v. Mach. Zone, Inc.*,
   140 F. Supp. 3d 457 (D. Md. 2015) ........................................................................... 15

*May v. Google LLC*,
   2024 WL 4681604 (N.D. Cal. Nov. 4, 2024)............................................................. 19

*McGee v. Superior Ct.*,
   176 Cal. App. 3d 221 (1985) ...................................................................................... 9

*Medina v. Safe-Guard Prods., Int'l., Inc.*,
   164 Cal. App. 4th 105 (2008) ..................................................................................... 15

*Metro. Creditors Serv. v. Sadri*,
   15 Cal. App. 4th 1821 (1993)...................................................................................... 8

*Murphy v. Olly Pub. Benefit Corp.*,
   651 F. Supp. 3d 1111 (N.D. Cal. 2023) .................................................................. 5, 25

*Ochoa v. Zeroo Gravity Games LLC*,
   2023 WL 4291650 (C.D. Cal. May 24, 2023) ................................................... *passim*

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)..................................................................................................... 23

*Owen By & Through Owen v. United States*,
   713 F.2d 1461 (9th Cir. 1983)..................................................................................... 9

*People v. McKale*,
   25 Cal. 3d 626 (1979) ................................................................................................. 8

*Peterson v. Cellco P'ship,*
   164 Cal. App. 4th 1583 (2008).................................................................................... 15

*Plumlee v. Pfizer, Inc.*,
   2014 WL 695024 (N.D. Cal. Feb. 21, 2014)............................................................... 24

*Prescott v. United States*,
   731 F.2d 1388 (9th Cir. 1984)..................................................................................... 1

*In re JUUL Labs. Prods. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020) ........................................................................ 22

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015)................................................................................. 4, 15

*Exp. Grp. v. Reef Indus., Inc.*,
   54 F.3d 1466 (9th Cir. 1995).................................................................................... 9

*Reeves v. Niantic, Inc.*,
   2022 WL 1769119 (N.D. Cal. May 31, 2022) ........................................................ 18

*Rubin v. Green*,
   4 Cal. 4th 1187 (1993) ............................................................................................. 8

*Ruiz v. Bradford Exchange, Ltd.*,
   2025 WL 2473007 (9th Cir. Aug. 28, 2025)........................................................... 25

*Rushing v. Williams-Sonoma, Inc.*,
   2022 WL 2833980 (N.D. Cal. July 20, 2022) ........................................................ 24

*Schneider v. Chipotle Mexican Grill, Inc.*,
   328 F.R.D. 520 (N.D. Cal. 2018) ...................................................................... 15, 16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ............................................................................................... 21

*Simon v. SeaWorld Parks & Ent., Inc.*,
   2022 WL 1594338 (S.D. Cal. May 19, 2022).......................................................... 18

*Siry Inv., L.P. v. Farkhondehpour*,
   13 Cal. 5th 333 (2022) ....................................................................................... 8, 19

*Smith v. Wells Fargo Bank, N.A.*,
   135 Cal. App. 4th 1463 (2005)............................................................................ 3, 14

*Sonnenberg v. Amaya Grp. Holdings (IOM) Ltd.*,
   810 F.3d 509 (7th Cir. 2016)................................................................................... 20

*Sonner v. Premier Nutrition Corporation*,
   971 F.3d 834 (9th Cir. 2020)................................................................................... 25

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
   17 Cal. 4th 553 (1998) ......................................................................................... 8, 9

*Styne v. Stevens*,
   26 Cal. 4th 42 (2001) ............................................................................................... 9

*Tak Chun Gaming Promotion Co. Ltd. v. Long*,
   96 Cal. App. 5th 1027 (2023)........................................................................... passim

*Tokar v. Redman*,
   138 Cal. App. 2d 350 (1956)..................................................................................... 7

-vi-

*Tri-Q, Inc. v. Sta-Hi Corp.*,
   63 Cal. 2d 199 (1965) ............................................................................................... 10

*Union Collection Co. v. Buckman*,
   150 Cal. 159 (1907) ..................................................................................................... 7

*Vascular Imaging Pros., Inc. v. Digirad Corp.*,
   401 F. Supp. 3d 1005 (S.D. Cal. 2019) ............................................................... 5, 25

*Vasquez v. Cebridge Telecom CA, LLC*,
   569 F. Supp. 3d 1016 (N.D. Cal. 2021) .................................................................. 23

*Wallace v. Opinham*,
   73 Cal. App. 2d 25 (1946) ..................................................................................... 7, 11

*Wehlage v. EmpRes Healthcare*, Inc.,
   791 F. Supp. 2d 774 (N.D. Cal. 2011) .................................................................... 17

*West Pac. Elec. Co. Corp. v. Dragados/Flatiron*,
   2018 WL 2088276 (E.D. Cal. May 4, 2018) ........................................................... 24

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................................... 14

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................................. *passim*

Cal. Civ. Code § 22.2 ............................................................................................ *passim*

Cal. Civ. Code §§ 1750 *et seq.* ............................................................................ *passim*

Cal. Penal Code § 337a ........................................................................................... 1, 6

Cal. Penal Code § 484(a) .......................................................................................... 18

Cal. Penal Code § 496(c) ...................................................................................... *passim*

Statute of Anne, 9 Ann. C. 14 s. II ....................................................................... *passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ................. *passim*

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

California is alive with the sound of illegal sports gambling. Yet Defendant DraftKings, Inc. ("DraftKings") feigns shock that its daily fantasy sports contests could be part of the problem. In its Motion to Dismiss, DraftKings does not address the central question in this case: do its daily fantasy sports contests violate the Penal Code. It does not do so because DraftKings knows that its daily fantasy sports contests are illegal "bets" and "wagers" within the meaning of California Penal Code Section 337a(a)(6) and answering the question will effectively end this case in Plaintiffs' favor. In fact, the California Attorney General recently confirmed that DraftKings' gambling enterprise violates California law: "California law prohibits the operation of daily fantasy sports games[.] Such games constitute wagering on sports in violation of Penal Code section 337a."[1]

Despite the AG Opinion, DraftKings continues to prominently represent and warrant on its website that "DraftKings Daily Fantasy Sports is legal in . . . California," and that "DraftKings monitors new developments and acts quickly to ensure it is in compliance with the laws in any jurisdiction where it operates," including California. FAC ¶¶ 74-77 (quoting DraftKings' website). Both statements are false. And rather than take responsibility for its actions, DraftKings doubles down on technicalities that DraftKings claims exempt it from civil liability, conveniently leaving DraftKings with the billions it has unlawfully taken from the class. Each of these arguments fails.

**First,** DraftKings invokes the "public policy doctrine" that was articulated in *Kelly v. First Astri Corporation*, 72 Cal. App. 4th 462 (1999), to argue that California imposes a categorical bar on civil litigation related to gambling. Not so. Rather, California law incorporates traditional English common law, which treats gambling *losses* as something different from gambling *debts*— and allows suits to recover those losses. In 1850, California "imported . . . the written statutes enacted by Parliament," including a 1710 statute, known as the Statute of Anne ("the Statute"), designed to curb excessive gambling by allowing lawsuits to recover gambling losses. *Tak Chun Gaming Promotion Co. Ltd. v. Long*, 96 Cal. App. 5th 1027, 1032-33 (2023) (cleaned up). Civil Code 22.2 confirms that the Statute of Anne, along with other English common law, remains the

---

[1] First Amended Complaint ("FAC") at Ex. B, hereafter "AG Opinion." The AG Opinion is "entitled to great weight." *Prescott v. United States*, 731 F.2d 1388, 1393 (9th Cir. 1984).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

law in California. *Id.* The Statute expressly treats gambling *debts* as distinct from gambling *losses*— declaring gambling debts "utterly void . . . and of none effect," while creating a private cause of action to recover gambling losses. *See Kyablue v. Watkins*, 210 Cal. App. 4th 1288, 1295 n. 4 (2012); *accord* 9 Ann. C. 14 s. II; *see also* FAC ¶ 299 (quoting Section II).

Despite this critical distinction, *Kelly* conflated California's longstanding public policy against enforcing gambling *debts* (which is prohibited under the Statute) with a sweeping prohibition against any claim arising from gambling transactions, including *losses*. But that is not the framework that California imported in 1850, and no California Supreme Court decision cited by *Kelly* or DraftKings has *held* that gambling losses are not recoverable in California. Moreover, *Kelly*'s finding that no California statute authorized the recovery of gambling losses is dicta (*Kelly* involved only common law claims), and *Kelly* failed to consider both Civil Code 22.2 (incorporating the Statute of Anne) and the legislative enactments in the second half of the 20th Century that were enacted to ensure that consumers had tools available to hold companies accountable for unfair and unlawful conduct. In fact, one month before *Kelly* was decided, the California Supreme Court confirmed that California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), "was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility of man's invention would contrive." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999). DraftKings' gambling services are a prohibited "new scheme."

As further detailed in **Section III.A.1**, below, *Kelly* was wrongly decided. Yet, for the past quarter-century, trial courts have followed *Kelly*'s inaccurate statement of California law without evaluating the soundness of *Kelly*'s underpinnings. This Court is not bound by *Kelly* and has an opportunity to correct the confusion *Kelly* created. It should do so.

**Second,** DraftKings ignores that *Kelly* is not the California Court of Appeal's final word on the public policy doctrine. In *Kyablue v. Watkins*—decided 13 years after *Kelly*—the California Court of Appeal held that the public policy doctrine must be applied flexibly, weighing the "relative moral fault of the plaintiff and the defendant" as well as "the degree of moral turpitude involved" instead of applying a categorical bar to gambling-related claims. 210 Cal. App. 4th at 1292-93.

Applying *Kyablue's* more recent statement of law, Judge Chhabria found that gambling-related UCL claims could proceed past the pleadings, explaining that the public policy doctrine "stems from the general rule against enforcing contracts founded on illegal consideration, which is intended to prevent the guilty party from reaping the benefit of his wrongful conduct[.]" *Colvin v. Roblox Corp.*, 2024 WL 4231090, at *4 (N.D. Cal. Sept. 19, 2024) (cleaned up). This balancing inquiry is factual in nature, and *Kelly* itself was only decided at summary judgment. *Kelly*, 72 Cal. App. 4th at 496. Moreover, *Kelly* does not apply to statutory causes of action (the only claims at issue here), does not address injunctive relief, and does not apply to federal causes of action. *See id.* at 466. Even if the public policy doctrine applies to gambling losses (it does not), as detailed in **Section III.A.2**, below, *Kelly* does not prevent this case from proceeding.

**Third,** DraftKings does not dispute that Plaintiffs state a UCL unlawful claim based on DraftKings' violations of the Penal Code—nor could it. "Virtually any law—federal, state or local—can serve as a predicate for a section 17200 action." *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1480 (2005). Instead, DraftKings contends that the portions of claims arising under the UCL and the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA") predicated on false representations cannot proceed. This is a non-starter. DraftKings spends a half *billion* dollars each year on advertising and marketing—including California-specific ad campaigns—designed to deceive Californians to engage in illegal gambling activities by creating the false impression that DraftKings' activities are legal in California. In **Section III.B.1**, below, Plaintiffs identify examples of specific false statements DraftKings made, allege their reasonable reliance on those statements, and confirm that but-for the false statements, they would not have used DraftKings' Gambling Websites in California. Nothing more is required at this stage.

DraftKings further argues that Plaintiffs lack statutory standing because they received what they paid for—entry into a sports betting contest. But DraftKings' self-serving characterization does not fit Plaintiffs' theory of the case. Plaintiffs allege that what they agreed to purchase was a *legal* entry into a gambling contest, but what they received from DraftKings was *per se* defective because it was an entry into an *illegal* gambling contest, which inherently has less (in fact zero) value. The "difference between what was paid and what a reasonable consumer would have paid *at*

*the time of purchase* without the fraudulent or omitted information" is a classic economic injury sufficient to create statutory standing under the UCL and CLRA. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015). In fact, DraftKings recognizes in its Motion that Plaintiffs have alleged "two types of losses [full refund and price premium]. Both measures directly derive from the entry fees paid by Plaintiffs" to DraftKings. Mtn. 14:26-28.

**Fourth,** Plaintiffs establish California state law claims for Civil Theft under Penal Code Section 496(c) and violations of the Statute of Anne. While DraftKings attempts to claim that Plaintiffs have not satisfied the elements of either cause of action, as explained in **Sections III.B.2-3**, DraftKings is mistaken. DraftKings created an illegal gambling scheme and solicited Plaintiffs to engage in illegal gambling by explicitly and falsely representing that the gambling activities were legal. Relying on DraftKings' representations, Plaintiffs lost money to DraftKings, which DraftKings retained. These allegations state a claim for Civil Theft and violations of the Statute.

**Fifth,** DraftKings makes superficial attacks on Plaintiffs' RICO causes of action. But in an attempt to make an end run around the page limitations imposed by this Court, DraftKings purports to "incorporate by reference" arguments made by other defendants in this action. This is improper. The arguments actually contained in DraftKings' own Motion total about a half page and provide no analysis for why Plaintiffs have not alleged their RICO causes of action. As explained in **Section III.C,** this Court should reject those superficial attacks, and to the extent the Court intends to consider the "incorporation by reference arguments," Plaintiffs respectfully request leave to file a ten-page supplemental brief on those arguments.

**Sixth,** DraftKings contends that Plaintiffs lack standing to pursue injunctive relief claims, but as detailed in **Section III.D**, Ninth Circuit law is clear that "a previously deceived consumer may have standing to seek an injunction . . . even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). That is the case here, as Plaintiffs expressly allege they wish to *lawfully* gamble online (FAC ¶¶ 118, 131), and DraftKings continues to falsely claim that "DraftKings Daily Fantasy Sports [are] legal in . . . California." *Id.* ¶ 76.

-4-

**Seventh,** DraftKings asks this Court to make a factual determination that Plaintiff Smith's claims are time-barred, but as shown in **Section III.E**, such a determination is not appropriate on the pleadings. Moreover, even if the Court could make this determination now (it cannot), Plaintiffs expressly allege that the statute of limitations has been tolled based on DraftKings' affirmative and ongoing misrepresentations of legality, preserving their claims. *See, e.g.*, *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 506 (9th Cir. 1988) (reversing dismissal of tolled claim).

**Eighth,** DraftKings argues this Court lacks equitable jurisdiction because Plaintiffs have adequate remedies at law. Plaintiffs agree that their legal claims are adequately alleged, but Rule 8 expressly allows Plaintiffs to plead their theory of the case in the alternative, and Plaintiffs have done so here. As explained in **Section III.F**, "*Sonner* does not require Plaintiffs to 'demonstrate' anything at the pleadings stage," "has minimal application at the pleading stage," and that alleging (as Plaintiffs do) that "legal remedies [are] not as certain as equitable remedies . . . is sufficient." *Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1129 (N.D. Cal. 2023) (Breyer, J.).

**Finally,** DraftKings contends that there is no separate cause of action for declaratory judgment. As shown in **Section III.G**, DraftKings is wrong. *See, e.g.*, *Vascular Imaging Pros., Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1011 (S.D. Cal. 2019) (recognizing cause of action).

Put simply, and as shown in detail below, the Motion should be denied in its entirety.

## II.    FACTUAL BACKGROUND

### A.    DraftKings' California Gambling Operations.

DraftKings is one of the largest daily fantasy sports providers in the country, offering "Daily Fantasy Sports" ("DFS") and "Pick6" through its website and mobile apps (collectively, "Gambling Websites") to California residents. FAC ¶ 50; *see also id.* ¶¶ 53-70 (step-by-step explanation of DFS); *id.* ¶¶ 79-97 (Pick6). DraftKings also spends half a *billion* dollars each year promoting its gambling services (*id.* ¶ 102), including California-specific marketing campaigns (*id.* ¶ 104).

"Well aware that customers would refuse to play its Daily Fantasy Sports [and Pick6] contests if they knew and understood those contests violated California criminal law, on its Daily Fantasy Sports website, DraftKings repeatedly assures prospective customers that Daily Fantasy Sports [and Pick6] are legal in California." FAC ¶¶ 72, 98; *id.* ¶¶ 77, 101 (mobile apps). For

example, on the main DraftKings landing page, DraftKings includes a "Where is DFS legal" link, which reflects that California is a legal market. *See id.* ¶¶ 74, 76; *id.* ¶ 77 (mobile apps); *id.* ¶¶ 98-101 (Pick6). DraftKings further warrants that it actively monitors state law to ensure legality and updates its Gambling Websites accordingly. *Id.* ¶ 75 (quoting DraftKings' website).

Despite DraftKings' representations, in reality, its gambling services violate the California Penal Code, including Section 337a(a)(6), which makes it a crime to "offer[] or accept[] any . . . bets . . . or wagers[.]" FAC ¶ 20; *see also id.* ¶¶ 17-29 (additional Penal Code violations).

In the Amended Complaint, each Plaintiff alleges that DraftKings' representations were material and that if DraftKings had not "represent[ed] that such activities were legal in California (when, unknown to Plaintiff[s] at the time, they in fact were not legal), [they] would not have made any of those bets or wagers and would not have paid any money to DraftKings." *See* FAC ¶¶ 108-21 (Zhen); *id.* ¶¶ 122-34 (Smith).

After this lawsuit was filed, the California Attorney General confirmed the unlawful nature of DraftKings' gambling enterprise: "California law prohibits the operation of daily fantasy sports games . . . . Such games constitute wagering on sports in violation of Penal Code section 337a." FAC at Ex. B. Yet DraftKings continues to offer its illegal gambling services in California.

### III.    ARGUMENT

**A.    The Public Policy Doctrine Does Not Bar Plaintiffs' Claims.**

DraftKings invokes *Kelly* to insist the "public policy doctrine" categorically bars Plaintiffs' claims because they arise from illegal gambling transactions. DraftKings' argument, an attempt to blame the victims of its unlawful enterprise—and keep their money—fails.

**1.    *Kelly* Misapplied California Law and Does Not Bind This Court.**

In its Motion, DraftKings relies on the "public policy" doctrine articulated in *Kelly* to claim that Plaintiffs' statutory causes of action to recover gambling losses cannot proceed. *Kelly* engaged in a historical analysis of California caselaw going back to 1851 to conclude that existing California law barred the recovery of gambling *losses*. *Kelly* was not and is not an accurate statement of California law, and this Court need not follow it.

**First,** *Kelly*'s historical analysis overlooked a critical 1850 statute, "An Act Adopting the

Common Law." That act provided that "[t]he common law of England . . . is the rule of decision in all the courts of [California]." That enactment remains the law of California and is currently codified at Civil Code Section 22.2. As the California Court of Appeals recently confirmed, Civil Code Section 22.2 "imported not only the whole body of judge-made, decisional law of the English courts, but *also the written statutes enacted by Parliament." Tak Chun*, 96 Cal. App. 5th at 1032-33 (cleaned up; emphasis added). "Among the enactments of Parliament adopted as California common law was the Statute of Anne," *id.* at 1033, which, among other things, created a private right of action for any person to bring suit to recover gambling losses.

The Statute, which still applies in California under Civil Code Section 22.2, expressly treats gambling *debts* as distinct from gambling *losses. See Kyablue*, 210 Cal. App. 4th at 1295 n.4 (recognizing distinction). Section I of the Statute "declares all gambling *debts* utterly void, frustrate, and of none effect, to all intents and purposes whatsoever[.]" *Id.* (emphasis added). And Section II expressly *allows* consumers to sue for gambling *losses. See* 9 Ann. C. 14 s. II (allowing persons "to sue for and recover the Money or Goods so lost [while gambling] . . . in any [court]"). Despite this critical distinction, the *Kelly* court did not cite or evaluate the Statute or Section 22.2. This significant error warrants rejecting *Kelly*.

**Second,** consistent with the framework established by the Statute of Anne, the historical California Supreme Court cases *Kelly* relied upon are gambling *debt* cases—yet *Kelly* collapsed this important distinction. *See, e.g., Bryant v. Mead*, 1 Cal. 441, 442 (1851) (suit by debtor to collect on credit advanced to gamble); *Carrier v. Brannan*, 3 Cal. 328, 328 (1853) ("complaint contained a count for money lent and advanced"); *Union Collection Co. v. Buckman*, 150 Cal. 159, 160 (1907) (suit on contract to recover money lent to gamble was unenforceable); *Hamilton v. Abadjian*, 30 Cal. 2d 49, 52 (1947) (suit by debtor to collect on credit advanced to gamble). While *Kelly* also relied upon *Wallace v. Opinham*, 73 Cal. App. 2d 25 (1946), a gambling loss case decided by the California Court of Appeals, *Wallace* did not consider the Statute or Section 22.2. *Id.* at 27.[2]

---

[2] Additionally, *Kelly* reviewed more recent California Court of Appeal decisions, but none of those decisions support *Kelly*'s prohibition on the recovery of gambling *losses. See, e.g., Lavick v. Nitzberg*, 83 Cal. App. 2d 381, 382 (1948) (suit to recover gambling debt); *Tokar v. Redman*, 138

**Third,** in parroting *Wallace's* inaccurate statement of the law, *Kelly* also did not consider (let alone analyze) the many statutory enactments that occurred between 1946 and 1999. For example, in 1963, "the Legislature . . . [added the] sweeping language" of "unlawful" to the UCL specifically to prohibit "ongoing wrongful business conduct in whatever context such activity might occur." *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 111 (1972). In 1970, the CLRA was enacted with a broad purpose "to protect consumers against unfair and deceptive business practices." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1038 (9th Cir. 2024) (citation omitted). In 1972, Penal Code Section 496(c) was amended so that "*any person* who has been injured by a violation of section 496(a) may bring an action[.]" *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 347 (2022) (cleaned up; emphasis added). In 1977, restitution and disgorgement were codified as UCL remedies, and the UCL was amended to clarify that its remedies were cumulative "unless otherwise *expressly* provided." *People v. McKale*, 25 Cal. 3d 626, 633 (1979) (emphasis added). Finally, in direct response to judicial decisions applying the UCL too narrowly, in "1992, the Legislature amended section 17200 to expand the definition of unfair competition to include '*any* unlawful, unfair, or fraudulent business *act or* practice[.]' The 1992 amendments overruled former case law that had limited the statute's application." *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 569 (1998) (cleaned up; italics in original).[3] None of these statutes recognized an exemption for trade practices related to gambling, which DraftKings now asks the Court to impose.

In short, the tools available to Californians to sue for unfair and illegal business activities expanded dramatically between 1946 and 1999, but *Kelly* ignored these developments.

**Fourth,** by the time *Kelly* was decided in 1999, the California Supreme Court had already held that "anything that can properly be called a business practice and that at the same time is forbidden by law" violates the UCL. *Rubin v. Green*, 4 Cal. 4th 1187, 1200 (1993). Further,

Cal. App. 2d 350, 352 (1956) (suit to recover gambling debt); *Lane & Pyron, Inc. v. Gibbs*, 266 Cal. App. 2d 61, 69 (1968) (reversing judgment that debt was uncollectable gambling loan); *Crockford's Club Ltd. v. Si-Ahmed*, 203 Cal. App. 3d 1402 (1988) (allowing collection of gambling debt); *Metro. Creditors Serv. v. Sadri*, 15 Cal. App. 4th 1821 (1993) (suit to recover gambling debt).
[3] DraftKings argues that enforcement by the Attorney General is the appropriate remedy here, but private UCL "actions supplement the efforts of law enforcement and regulatory agencies" and "[t]his court has repeatedly recognized the importance of these private enforcement efforts." *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126 (2000).

consistent with the UCL's plain statutory text, the California Supreme Court held that the UCL applied to all business conduct unless "expressly" excluded by another statutory enactment. *Stop Youth Addiction*, 17 Cal. 4th at 569 (emphasis added). In fact, just one month before *Kelly* was decided, the California Supreme Court confirmed that the UCL "was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility of man's invention would contrive." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 181 (collecting cases). Yet, the *Kelly* court did not consider or address these controlling California Supreme Court authorities when it stated that "[n]o California statute authorizes a party . . . to recover gambling losses." *Kelly*, 72 Cal. App. 4th at 822. That statement is not the law of this state.

**Fifth,** *Kelly* only involved claims arising at common law,[4] and *Kelly*'s speculation about the availability of statutory claims to recover gambling *losses* was not before the Court of Appeal. "The holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning." *McGee v. Superior Ct.*, 176 Cal. App. 3d 221, 226 (1985). *Kelly*'s statements about the available statutory remedies in California "were not necessary to the decision and thus have no binding or precedential impact in the present case." *Exp. Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1472 (9th Cir. 1995); *accord Styne v. Stevens*, 26 Cal. 4th 42, 52 (2001) (where "[t]here is no indication the issue" was before the court, those statements are "not authority for the proposition").

Given *Kelly*'s flawed analysis, this "case presents one of those rare instances where convincing evidence exists that the highest court of a state will not follow the result reached by some of that state's inferior appellate courts." *Owen By & Through Owen v. United States*, 713 F.2d 1461, 1465 (9th Cir. 1983).[5] This Court should not follow *Kelly*.

**2.      Even If the Public Policy Doctrine Applies to Gambling Losses, *Kyablue*, Not *Kelly*, Provides the Correct Rule of Decision.**

As shown above, the public policy doctrine should not be construed to apply to gambling

---

[4] The same is true of *Wallace,* the only California gambling *loss* case cited by *Kelly*.
[5] Tellingly, despite being decided 27 years ago, the California Supreme Court has only cited *Kelly* a single time, and even there, only cited *Kelly* in a string cite regarding the applicable standard for summary judgment. *See Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 843 (2001).

losses. But even if the doctrine did apply, DraftKings ignores that *Kelly* is not the California Court of Appeals' final word on the public policy doctrine. In *Kyablue*, 210 Cal. App. 4th 1288 (2012), the Court of Appeal examined *Kelly* and clarified that the public policy doctrine should not be applied "inflexibly," and courts instead must weigh the "relative moral fault of the plaintiff and the defendant" as well as "the degree of moral turpitude involved" in determining whether the doctrine bars a particular claim:

> The rule is intended to *prevent the guilty party from reaping the benefit of his wrongful conduct*, or to protect the public from the future consequences of an illegal contract. To serve these objectives courts recognize varying forms and degrees of illegality, and that the particular facts of the case must be considered before remedy is refused. The rule is not intended to be inflexibly applied in its fullest rigor under any and all circumstances, but involves *weighing the relative moral fault of the plaintiff and the defendant*, whether refusing a remedy can protect the public, *the degree of moral turpitude involved, and whether application of the rule will result in the unjust enrichment of the defendant at the expense of the plaintiff. . . .*

*Kyablue*, 210 Cal. App. 4th at 1292-93 (cleaned up; emphasis added); *see also Colvin*, 2024 WL 4231090, at *2 (applying *Kyablue* and holding that the public policy doctrine did not prevent UCL claims arising from gambling transactions from proceeding).

DraftKings attempts to pivot the Court's attention to *Tak Chun's* statements about gambling *debts* to argue that those same policy considerations should apply to gambling *losses*. But as recognized by *Tak Chun* itself, the foundation of California's prohibition on the recovery of gambling *debts* is the Statute of Anne. The Statute expressly allows for the recovery of gambling losses. *Tak Chun*, 96 Cal. App. 5th at 1032-33. *Tak Chun* did not decide a framework to evaluate such losses, as gambling losses were not at issue in that action. *See id.*

The public policy doctrine is "intended to prevent the guilty party from reaping the benefit of his wrongful conduct," *Tri-Q, Inc. v. Sta-Hi Corp.*, 63 Cal. 2d 199, 218 (1965), and applying *Kelly* in a rigid fashion at the pleading stage would undercut that policy by allowing DraftKings to keep the billions of dollars that Plaintiffs allege it has illegally taken from Californians. To the extent that the "public policy doctrine" applies at all to gambling *losses*, *Kyablue* governs here and warrants a fact-intensive inquiry into relative fault.

**3.    *Kelly* Expressly Authorizes Statutory Causes of Action.**

Even if this Court were to follow *Kelly* (it should not), by *Kelly*'s own terms, the public policy doctrine does not apply here because the doctrine only applies "*in the absence of a statute authorizing a recovery[.]*" 72 Cal. App. 4th at 489 (emphasis added); *see also Wallace*, 73 Cal. App. 2d at 26 (same). Here, Plaintiffs state claims under statutes—the UCL, the CLRA, Penal Code Section 496(c), the Statute of Anne, RICO, and the Declaratory Judgment Act—and do not bring any claims under the common law. As further detailed in Sections III.B, below, each of those statutory causes of action is sufficiently pled and must be allowed to proceed under *Kelly*.

In its Motion, DraftKings does not meaningfully address this important distinction between statutory and common law claims, and entirely ignores Judge Chhabria's recent decision in *Colvin v. Roblox Corporation*, which explicitly found that a "California UCL unlawful claim [based] on allegations that [defendant] facilitated illegal gambling" can proceed despite the public policy doctrine. 2024 WL 4231090, at *2. Instead, DraftKings asks this Court to read the word "statute" to mean the "Statute of Anne," yet that limitation appears nowhere in *Kelly*.

Several other courts have rejected DraftKings' construction of the public policy doctrine and allowed UCL and CLRA claims arising from gambling transactions to proceed. *See, e.g.*, *Los Angeles Turf Club v. Horse Racing Labs*, 2017 WL 11634526, at *9 (C.D. Cal. May 15, 2017) (granting summary judgment for *plaintiff* on UCL claim arising from fantasy sports gambling); *Ochoa v. Zeroo Gravity Games LLC*, 2023 WL 4291650, at *5, 13 (C.D. Cal. May 24, 2023) (*Kelly* inapplicable to claim for UCL injunctive relief and stating that CLRA applies to online gambling).

**4.    DraftKings, Not Plaintiffs, Is the Party at Fault Here.**

Even if the public policy doctrine could apply in some circumstances to statutory claims seeking to recover gambling losses (it does not), the "policy [in *Kelly*] stems from the general rule against enforcing contracts founded on illegal consideration, which is intended to prevent the guilty party from reaping the benefit of his wrongful conduct, or to protect the public from the future consequences of an illegal contract." *Colvin*, 2024 WL 4231090, at *4 (cleaned up); *see also Mann v. Gullickson*, 2016 WL 6473215, at *6 (N.D. Cal. Nov. 2, 2016) (collecting California and federal authorities and stating that "[i]n compelling cases, illegal contracts will be enforced in order to

-11-

avoid unjust enrichment to a defendant and a disproportionately harsh penalty upon the plaintiff"); *Asdourian v. Araj*, 38 Cal. 3d 276, 292 (1985) (same).

DraftKings spent hundreds of millions of dollars on a comprehensive marketing campaign designed to solicit users to gamble based on the false premise that DraftKings' services were lawful. FAC ¶¶ 105-07. Further, DraftKings expressly represents and warrants that it carefully monitors all applicable laws and regulations and that its services are legal in California. *Id.* ¶¶ 72-77, 98-101. Each Plaintiff explicitly alleges that these representations were material in their respective decisions to use DraftKings' gambling services and that "[i]f DraftKings had not solicited bets and wagers from Plaintiff[s] . . . while representing that such activities were legal in California (when, unknown to Plaintiff[s] . . . at the time, they in fact were not legal), [they] would not have made any of those bets or wagers and would not have paid any money to DraftKings." FAC ¶ 115 (Zhen); *see id.* ¶ 128 (Smith). These allegations establish that the "relative moral fault of the plaintiff and the defendant" as well as "the degree of moral turpitude involved" rests squarely with DraftKings, not Plaintiffs. DraftKings should not be allowed to reap the profits from the unlawful transactions it induced based on false representations. *See Kyablue*, 210 Cal. App. 4th at 1292-93. Indeed, consistent with the factual nature of the public policy doctrine inquiry, *Kelly* itself was decided on summary judgment, and even if the Court were inclined to apply *Kelly* here (it should not), application on the pleadings is premature. *See Kelly*, 72 Cal. App. 4th at 496.

## 5.    State Law Claims for Injunctive Relief Can Proceed.

Even if this Court were to find the public policy doctrine applicable at the pleading stage (it should not) and that monetary relief is not available for state law claims (it is), the consequence would only be a narrowing of the available *remedies*. *Kelly* "did not purport to preclude from going forward any claim seeking public injunctive relief based on deceptive advertising under California's consumer protection statutes." *Ochoa*, 2023 WL 4291650, at *5; *see also Los Angeles Turf Club*, 2017 WL 11634526, at *9 (granting summary judgment for *plaintiff* on UCL injunctive relief claim arising from fantasy sports gambling).

## 6.    DraftKings' Other Authorities Do Not Dictate a Different Result.

In its Motion, DraftKings points to a number of authorities that have blindly applied *Kelly*,

-12-

without going back to first principles to understand whether *Kelly* was rightly decided and accurately reflects California law. *See In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 806 F. Supp. 3d 1015, 1035 (N.D. Cal. 2025) (decided without addressing *Kelly*'s underpinnings, *Tak Chun's* finding that the Statute of Anne applies in California, *Kyablue*, or *Colvin*); *Jamgotchian v. Sci. Games Corp.*, 371 F. App'x 812, 812 n.\*\* (9th Cir. 2010) (unpublished decision that "is not precedent," did not address *Kyablue*, and did not involve statutory causes of action); *Lam v. Hawaiian Gardens Casino*, 2020 WL 806655, at \*3 (C.D. Cal. Jan. 8, 2020) (seeking to *enforce* a gambling contract); *Ochoa*, 2023 WL 4291650 at \*5 (allowing UCL injunctive relief claims to proceed); *Alves v. Players Edge, Inc.*, 2007 WL 6004919, at \*14 (S.D. Cal. Aug. 8, 2007) (decided without addressing *Kelly*'s underpinnings and before *Kyablue*); *Tak Chun*, 96 Cal. App. 5th at 1030 (recognizing that the Statute of Anne applies in California, rejecting attempt to enforce gambling *debts*, and not addressing gambling *losses*). This Court has an opportunity to correct the confusion created by *Kelly*, and it should do so.

### 7. DraftKings Concedes that the California Public Policy Doctrine Does Not Apply to Plaintiffs' Federal Causes of Action.

Finally, DraftKings does not dispute, and therefore has waived any argument that the public policy doctrine applies to Plaintiffs' RICO and Declaratory Judgment Act claims. *See, e.g.*, *Davidson v. Apple, Inc.*, 2017 WL 3149305, at \*14 (N.D. Cal. July 25, 2017) (citing *Ind. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (failure to raise an argument in an opening brief waives it)). Moreover, even if it had, it would not change the result: "[States] lack authority to nullify a federal right or cause of action they believe is inconsistent with their local policies." *Haywood v. Drown*, 556 U.S. 729, 736 (2009); *see also Falcocchia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d 860, 865 (E.D. Cal. 2010) ("[S]tate law cannot provide a defense to federal claims.").

Put simply, the public policy doctrine does not prevent Plaintiffs' claims from proceeding.

## B. Plaintiffs' State Law Causes of Action Are Adequately Alleged.

### 1. Plaintiffs' Claims Under the UCL and CLRA Can Proceed.

In the Motion, DraftKings does not dispute that Plaintiffs state a UCL unlawful claim based on DraftKings' violations of the Penal Code—nor could it: "[v]irtually any law—federal, state or

-13-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

local—can serve as a predicate for a section 17200 action." *Smith*, 135 Cal. App. 4th at 1480. Instead, DraftKings throws a scattershot of technical legal arguments against the wall, hoping that one will stick and result in dismissal. Each of DraftKings' arguments fails.

**First**, and tellingly, DraftKings never identifies the relevant legal standard for assessing the misrepresentations that give rise to Plaintiffs' UCL and CLRA claims—the statements are governed by the "reasonable consumer test." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under the reasonable consumer test, plaintiffs need only "show that members of the public are likely to be deceived, whether by explicitly false representations or by misleading, deceptive, or confusing representations." *Gilbert v. MoneyMutual, LLC*, 2018 WL 8186605, at *18 (N.D. Cal. 2018) (cleaned up). Here, Plaintiffs have met this standard by identifying the specific false and deceptive statements made by DraftKings. *See* FAC ¶¶ 50-97. For example, "DraftKings Daily Fantasy Sports is legal in . . . California." (*id.* ¶ 76), and DraftKings continued to make this representation despite the AG's Opinion. *See id.* ¶¶ 74-78, 98-101 (representations of legality); *id.*, Ex. B (AG Opinion). A reasonable consumer encountering DraftKings' statements is left with one understanding: DraftKings' gambling contests are, in DraftKings' words, "legal in . . . California."

**Second,** DraftKings claims that Plaintiffs lack statutory standing to pursue their UCL and CLRA claims because Plaintiffs supposedly received what they paid for—a chance to gamble on the outcome of a sporting event. But DraftKings' self-serving re-characterization of Plaintiffs' claims disregards that Plaintiffs agreed to purchase—based on DraftKings' own advertising—a *legal* bet on a gambling contest; that the legality was material to their decision to bet; and that they would not have spent money if the unlawful nature of the activity was accurately represented. *See* FAC ¶¶ 113, 119 (Zhen); ¶¶ 126, 132 (Smith). Instead, what Plaintiffs received was *per se* defective because it was entry into an *illegal* contest and inherently less valuable—in fact, had no value— compared to a legal service. *See Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1260 (N.D. Cal. 2022) (purchase of virtual currency gave rise to UCL statutory standing where material aspects were not disclosed); *Colvin v. Roblox Corp.*, 725 F. Supp. 3d 1018, 1024-25 (N.D. Cal. 2024) (economic injury from online gambling transactions).

Moreover, even if DraftKings' illegal gambling services had some value (they do not), that

-14-

would not change the result. The "difference between what was paid and what a reasonable consumer would have paid *at the time of purchase* without the fraudulent or omitted information" is a classic economic injury sufficient for statutory standing. *Pulaski*, 802 F.3d at 989 (emphasis added); *see also Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 530–31 (N.D. Cal. 2018) ("Defendant's contention that, because Plaintiffs received 'some value from' their purchases they are not entitled to a full refund addresses a question of damages, not one of standing.").

Indeed, the lead *published* opinion that DraftKings relies on confirms that this sufficient. In *Hawkins v. Kroger Company*, 906 F.3d 763 (9th Cir. 2018), the Ninth Circuit held that under California law a "consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging that he or she would not have bought the product but for the misrepresentation. That assertion is sufficient to allege causation and it is also sufficient to allege economic injury." *Id.* at 768 (cleaned up); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (standing satisfied where plaintiff relied upon defendant's false representations that induced transaction).[6]

This is precisely what occurred here. Plaintiffs allege that DraftKings "represent[ed] that [the gambling] activities were legal in California (when, unknown to Plaintiff[s] at the time, they in fact were not legal), [and they] would not have made any of those bets or wagers and would not have paid any money to DraftKings." *See* FAC ¶¶ 108-21 (Zhen); *id.* ¶¶ 122-34 (Smith). Further, while Plaintiffs are not obligated to prove their damages model at this early stage of the case, the FAC also previews the two primary theories to come: Plaintiffs "suffered monetary harm as a result of DraftKings' conduct because: (a) they would not have purchased the services on the same terms had it not been for Defendant's unlawful, unfair, and deceptive actions . . . and/or (b) they paid a price premium for the services . . . due to Defendant's marketing misrepresentations and deceptive

---

[6] DraftKings relies heavily on an *unpublished* Ninth Circuit opinion, which is "not precedent," *Mai v. Supercell Oy,* 2024 WL 2077500, at *1 & n.** (9th Cir. May 9, 2024). *Mai* did not address a claim that illegality decreased the value of the purchased item and that the purchase would not have occurred if the true nature of the service had been disclosed. DraftKings' other authorities are similarly distinguishable. *See, e.g.*, *Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583, 1591 (2008) (no allegation of price premium); *Medina v. Safe-Guard Prods., Int'l., Inc.*, 164 Cal. App. 4th 105, 115 (2008) (same); *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 465 (D. Md. 2015) (overpayment for an illegal good can serve as the basis for a UCL claim); *Coffee v. Google, LLC,* 2022 WL 94986, at *9 (N.D. Cal. Jan. 10, 2022) (no allegation of direct purchase from defendant).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

labeling[.]" *Id.* ¶¶ 261.[7] Indeed, DraftKings admits that "Plaintiffs assert two types of losses [full refund and price premium]. Both measures directly derive from the entry fees paid by Plaintiffs . . . ." Mtn. 14:26-28. "The fact that the price . . . did not change after the representation does not establish that there is no triable issue as to whether Plaintiffs paid a price premium." *Schneider*, 328 F.R.D. at 531.

Moreover, even if Plaintiffs ultimately cannot recover some or all the money that they bet (they can), Plaintiffs are still entitled to recover the entry fees—the "vig"—that were paid to and kept by DraftKings. Those charges were separate and independent from the gambling losses that Plaintiffs suffered. FAC ¶ 39 (identifying annual California entry fees in excess of $200 million); *id.* ¶¶ 60, 80, 116, 130 (stating that DraftKings charges entry fees and takes a portion of each bet placed); Mtn. 20:24 (DraftKings takes a "portion of the entry fees"); Mtn. 14:26-28 (Plaintiffs' "losses" are "(1) all amounts received by DraftKings from customers entering DFS contests in California (namely, entry fees), and (ii) Plaintiffs' net losses[.]").

**Third,** to the extent Rule 9(b) applies, Plaintiffs' allegations are sufficient to give DraftKings "notice of the particular misconduct [claimed against it] . . . so that [DraftKings] can defend against the charge and not just deny that [it has] done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Plaintiffs have done so here by alleging the "Who," "What," "When," "Where," and "How" of their claims:

- **Who:** Plaintiffs (FAC ¶¶ 109-134); the class (*id.* ¶ 225); DraftKings (*id.* ¶¶ 50-108).
- **What:** Unlawful gambling on the DraftKings Gambling Websites (*id.* ¶¶ 50-70, 79-97), and false and deceptive representations about the legality of those gambling services in California (*e.g., id.* ¶¶ 71-78, 98-101).
- **When:** Since at least 2012 and continuing to present as to the putative class (*id.* ¶¶ 50, 225), between 2024 and February 2025 for Plaintiff Zhen (*id.* ¶¶ 110, 117), and between 2019 and May 2025 for Plaintiff Smith (*id.* ¶¶ 123, 127).

---

[7] If the Court determines that an amended pleading is required (it should not), Plaintiffs can add details further explaining the difference in value between legal gambling contracts (what Plaintiffs bargained for) and illegal gambling contracts (what they received), including further details on how the charging of the "vig" would never have occurred but for the false representations.

- **Where:** On the Gambling Websites, namely DraftKings.com and the DraftKings apps (*id.* ¶¶ 50-97), with users physically located in California (*id.* ¶¶ 109, 122, 225).

- **How:** Taking bets and wagers in violations of the California Penal Code (*id.* ¶¶ 17-29, 51-97) and falsely representing that the transactions were legal (*id.* ¶¶ 71-78, 98-101).

While DraftKings contends that Plaintiffs fail to identify the specific false statements they were exposed to, this argument misses the mark. Plaintiffs expressly identify that at the time of account signups "DraftKings represented to Plaintiff[s] that the services it offered in California were legal." FAC ¶ 110 (2024 for Zhen), ¶ 123 (2019 for Smith). Further, they allege that "[s]ince that time, DraftKings has continued to represent to Plaintiff[s,] including on the Gambling Websites themselves—that its services are legal in California." *Id.* ¶ 111 (Zhen), ¶ 124 (Smith). Plaintiffs also specifically allege the types of representations they were exposed to, including by providing screen captures of website statements. *Id.* ¶¶ 50-108. While DraftKings attempts to rely on *Kearns v. Ford Motor Company*, 567 F.3d 1120 (9th Cir. 2009), "*Kearns* did not require such specific allegations." *Bronson v. Johnson & Johnson*, 2013 WL 5731817, at *6 (N.D. Cal. Oct. 22, 2013). Indeed, "it would be unfair to require plaintiffs to recall and specify precisely which of the many advertisements they [saw or] the particular advertisements they relied upon. It suffices for plaintiffs to provide examples of advertisements similar to those they saw as long as all the advertisements convey the core allegedly fraudulent message." *In re Oreck Corp.*, 2012 WL 6062047, at *15 (C.D. Cal. Dec. 3, 2012).[8]

**Fourth,** and contrary to DraftKings' contentions, Plaintiffs also sufficiently allege "actual reliance." In *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009), the California Supreme Court held that to satisfy this requirement the plaintiff must show that he personally lost money or property because of his own actual and reasonable reliance on the allegedly untrue or misleading statement. *Id.* at 326-28. Plaintiffs have satisfied this requirement by alleging that they relied on DraftKings'

---

[8] DraftKings' remaining authorities do not support a different result, as Plaintiffs have specifically plead what was false about DraftKings statements—the Gambling Websites falsely claim that the services offered on the gambling websites are legal in California. *See Wehlage v. EmpRes Healthcare*, Inc., 791 F. Supp. 2d 774, 790 (N.D. Cal. 2011) (failure to allege specific false statements and what was false about them); *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1188 (N.D. Cal. 2021) (failure to identify false statement on product label).

-17-

representations concerning the legality of its gambling services, that they would not have used DraftKings' gambling services if they had known that they were not legal, and that they each personally lost money as a result. FAC ¶¶ 111-13, 124-27. Plaintiffs' reliance is particularly reasonable here, as DraftKings expressly warrants not only that its gambling services are legal, but that it "monitors new developments and acts quickly to ensure it is in compliance with the laws in any jurisdiction where it operates. As laws change or regulations are implemented, DraftKings will take steps to ensure its continued compliance, and changes to this site may take place to reflect any such new laws or regulations." *Id.* ¶ 75 (quoting DraftKings' website).

**Finally,** DraftKings contends that the CLRA does not apply to online gambling transactions because they are not "goods" or "services" within the meaning of the CLRA. However, "[i]n light of the CLRA's underlying purpose to protect consumers and the liberal construction with which courts should interpret it," the case law recognizes that "Plaintiffs' claims [arising from online gambling] fall within the purview of the CLRA." *Ochoa*, 2023 WL 4291650, at *13; *see also Doe*, 602 F. Supp. 3d at 1263 (online gaming-related services "comfortably classified as an online entertainment *service*" (emphasis added)); *Chowning v. Tyler Techs., Inc.*, 2025 WL 3496690, at *4 (N.D. Cal. Dec. 5, 2025) (finding website transactions subject to the CLRA).[9]

### 2.    DraftKings Committed Civil Theft.

Plaintiffs also state a claim for Civil Theft under Penal Code Section 496(c), which allows for civil recovery of stolen money where: "(i) property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property." *Edwards v. Apple, Inc.*, 2025 WL 2172717, at *10 (N.D. Cal. July 31, 2025). "Theft" is defined broadly under Penal Code Section 484(a) to include the taking of property by "any false or fraudulent representation or pretense[.]"

As detailed in the FAC, DraftKings was "[w]ell aware that customers would . . . refuse to play its Daily Fantasy Sports contests if they knew and understood those contests violated

---

[9] DraftKings' authorities do not require a different result. *See Fairbanks v. Superior Ct.*, 46 Cal. 4th 56, 63 (2009) (finding CLRA does not apply to insurance); *Simon v. SeaWorld Parks & Ent., Inc.,* 2022 WL 1594338, at *8 (S.D. Cal. May 19, 2022) (failing to consider the CLRA's liberal construction requirement); *Reeves v. Niantic, Inc.,* 2022 WL 1769119, at *2 (N.D. Cal. May 31, 2022) (CLRA does not apply to virtual token).

California criminal law," so to induce Plaintiffs and the Class to use the Gambling Websites, "DraftKings repeatedly [and falsely] assure[d] prospective customers that Daily Fantasy Sports are legal in California." FAC ¶¶ 72, 98. DraftKings did so even though it "knew (or should have known) that its gambling operations in California were illegal[.]" *Id.* ¶ 150. Indeed, "[e]ven after the California Attorney General issued the July 3, 2025 legal opinion, DraftKings . . . continued to represent that its 'Daily Fantasy Sports' services are legal in California . . ." to facilitate the theft of Californians' money under false pretenses. *Id.* ¶ 140. Plaintiffs relied on those false representations, *id.* ¶¶ 112, 125, and as a result, Plaintiff Smith "lost a total of approximately $1,700 to DraftKings" and Plaintiff Zhen "lost approximately $1,000 to DraftKings"—meaning that DraftKings knowingly possesses (or did possess) property stolen from Plaintiffs. *Id.* ¶¶ 127, 114. Nor did DraftKings act "innocently or inadvertently, but [instead acted] with careful planning and deliberation reflecting the requisite criminal intent" by developing and executing the comprehensive illegal gambling scheme. *Edwards*, 2025 WL 2172717, at *10 (quoting *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 362 (2022)).

"At this stage where the Court must construe the facts in the light most favorable to Plaintiffs, that is enough." *Id.*; *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 611 (9th Cir. 2020) (reversing dismissal of Section 496 Civil Theft claim in putative class action).[10]

### 3.  Plaintiffs Establish a Statute of Anne Claim for Recovery of Gambling Losses.

As the California Court of Appeal recently confirmed, in 1850, California "adopted . . . the Statute of Anne[.]" *Tak Chun*, 96 Cal. App. 5th at 1033. Section II of the Statute of Anne allows any person who lost money gambling to bring suit for losses incurred within the past three months. 9 Ann. C. 14 s. II. In its Motion, DraftKings makes four primary arguments in seeking dismissal of

---

[10] DraftKings' authority *AdTrader, Inc. v. Google LLC*, 2018 WL 3428525, at *9 (N.D. Cal. July 13, 2018) actually supports Plaintiffs' position, as the case expressly recognized that a Civil Theft claim can remain where, as here, "the defendant received money based on false misrepresentations regarding his scam . . . business." The same is true of *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1049 (2013), which allowed a Civil Theft claim to proceed on a "false pretenses" theory. DraftKings' remaining authorities, *Formic Ventures LLC v. SomaLogic, Inc.,* 2023 WL 6037899 (N.D. Cal. Sept. 15, 2023) and *May v. Google LLC*, 2024 WL 4681604 (N.D. Cal. Nov. 4, 2024) did not include allegations like those here: "DraftKings knowingly, and by design, using fraudulent misrepresentations, defrauded Plaintiffs and the Class of their money[,]" (FAC ¶ 306), and regardless, both decisions granted plaintiffs leave to amend to add allegations of criminal intent.

-19-

the Statute of Anne cause of action. Each fails.

**First,** relying on *Kelly* and *Wallace*, DraftKings contends that California has not adopted Section II of the Statute, but as shown in Section III.A., *Kelly* and *Wallace*'s analysis is fundamentally flawed, as neither decision considered Civil Code Section 22.2. Moreover, those decisions directly conflict with *Tak Chun*, which considered Section 22.2 and found that California recognized the Statute since 1850. DraftKings attempts to distinguish *Tak Chun*, but *Tak Chun* expressly confirmed that "[a]mong the enactments of Parliament adopted as California common law was the Statute of Anne[.]" 96 Cal. App. 5th at 1033. While *Tak Chun* only *analyzed* Section I of the Statute, that limited analysis makes perfect sense: only gambling debts, which are subject to Section I, were before the Court.

**Second,** relying on cases applying out-of-state authority,[11] DraftKings contends that it is not a "winner" within the meaning of the Statute because it only took a fee on each bet and risked nothing itself. Yet this is not what the plain text of the statute requires: "[I]t shall be sufficient for the Plaintiff to allege, that the Defendant or Defendants are indebted to the Plaintiff, or received for the Plaintiff's Use, the Money so lost and paid." 9 Ann. C. 14 s. II. This is what Plaintiffs have alleged: "DraftKings is the 'winner' as they received all or part of the money lost by Plaintiffs in Defendants' gambling services." FAC ¶ 300. A court must "begin, as always, with the plain language of the statute" and that if "the plain language is clear, [the Court's] inquiry is complete." *Lopez v. Garland*, 116 F.4th 1032, 1043 (9th Cir. 2024). Here, the statute plainly sets forth what is required to state a claim "that Defendant [is] indebted to the Plaintiff, or received. . . the money so lost and paid," which Plaintiffs have satisfied. Accordingly, Plaintiffs are entitled to recover, at a minimum, the gambling fees—commonly called the "vig"—that DraftKings retained.

**Third,** DraftKings contends that Plaintiff Zhen's claims are time-barred because his last transaction occurred in February 2025, about four months before this action was filed. DraftKings

---

[11] *See, e.g.*, *In re Simulated Casino-Style Games*, 806 F. Supp. 3d at 1036 (applying the laws of Connecticut, Georgia, Illinois, Minnesota, Ohio, South Carolina, Virginia, West Virginia, and New Mexico); *Sonnenberg v. Amaya Grp. Holdings (IOM) Ltd.*, 810 F.3d 509 (7th Cir. 2016) (Illinois); *Langone v. Kaiser*, 2013 WL 5567587, at *1 (N.D. Ill. Oct. 9, 2013) (same); *Humphrey v. Viacom, Inc.*, 2007 WL 1797648, at *4 (D.N.J. June 20, 2007) (D.C., Georgia, Illinois, Kentucky, Massachusetts, New Jersey, Ohio and South Carolina).

-20-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

ignores that Zhen expressly alleges that his claims were tolled. FAC ¶¶ 144-48. "[O]rdinarily equitable tolling is not properly resolved at the pleading stage," and DraftKings offers no explanation for why that is not the case here. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993). Moreover, DraftKings does not dispute, and therefore concedes, that Plaintiff Smith's claim is timely. *Davidson*, 2017 WL 3149305, at *14 (failure to raise argument waives it).

**Fourth,** DraftKings contends that Plaintiffs have not stated the elements of a third-party Statute of Anne claim. Plaintiffs do not seek third-party standing in the FAC, except in their role as class action representatives under Rule 23. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010) (Rule 23 controls over conflicting state law). Plaintiffs reserve the right to allege third-party claims in addition to their Rule 23 class theory in an amended pleading.

DraftKings' attempt to run away from the plain, straightforward requirements of the Statute of Anne must be rejected.

## C.    DraftKings' Superficial Attacks on Plaintiffs' RICO Claims Fail.

Rather than addressing Plaintiffs' RICO claims in substance, DraftKings instead purports to "incorporate by reference" the arguments made by the other defendants in this action. This attempt to circumvent this Court's page limits is improper and should be rejected. *See, e.g.*, *DEPCOM Power, Inc. v. CSUN Solar, Inc.*, 2020 WL 5176193, at *3 (N.D. Cal. July 30, 2020) ("incorporating arguments made in prior briefing would violate Rule 10-1 and constitute an improper end run around the page limits prescribed by Rules 7-2 and 7-4"); *D'Agnese v. Novartis Pharms. Corp.*, 2013 WL 321773, at *13 (D. Ariz. Jan. 28, 2013) (not considering arguments "incorporated by reference").[12]

Turning to the arguments actually advanced in DraftKings' Motion, they boil down to two points, neither of which warrants dismissal of Plaintiffs' RICO claims. **First,** DraftKings contends that Plaintiffs lack RICO standing because they have not suffered actual injury. This passing argument recycles the standing points raised by Defendants with regard to Plaintiffs' UCL and CLRA claims. As explained in Section III.B.1 above, Plaintiffs have been injured by DraftKings'

---

[12] To the extent that the Court intends to consider the "incorporated by reference" arguments, Plaintiffs request leave to file a supplemental brief of up to ten pages addressing those arguments.

-21-

unlawful gambling enterprise. *See, e.g.*, FAC ¶¶ 108-21 (Zhen); *id.* ¶¶ 122-34 (Smith); *see also* Mtn. 14:26-28 (conceding that Plaintiffs' "losses" are "(1) all amounts received by DraftKings from customers entering DFS contests in California (namely, entry fees), and (ii) Plaintiffs' net losses"). "Plaintiffs here allege that they were deprived of their money based upon Defendants' conduct, which is sufficient." *Dufour v. BE LLC*, 2010 WL 2560409, at *11 (N.D. Cal. June 22, 2010) (Breyer, J.). DraftKings' two authorities are inapposite, as there was no dispute that the products at issue in those actions were as represented and accordingly, there was no economic injury. *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (purchase of trading cards); *In re Simulated Casino-Style Games*, 806 F. Supp. 3d at 1047 (purchase of virtual chip).

**Second,** without any analysis, DraftKings contends that Plaintiffs fail to "plausibly"[13] allege that DraftKings "participated in any RICO enterprise [that is] distinct from the ordinary business of DraftKings . . . nor do they plausibly allege a pattern of racketeering acts or RICO conspiracy." But DraftKings provides no explanation for how these elements are not met.[14] The FAC is clear that the enterprise is the "Legal Entities Enterprise," and it is distinct from DraftKings' ordinary business. FAC ¶¶ 153-56, 190-219, 279-94. Specifically, DraftKings is in the legitimate business of "provid[ing] gambling services in states where it is permissible to do so" (*id.* ¶ 282), but the Legal Entity Enterprise (which DraftKings is a part of) was formed specifically to "operate[] an illegal gambling business . . . in California." *Id.* ¶ 285; s*ee also id.* ¶ 155 ("The Legal Entities Enterprise exists outside of the respective entities' business activities and was formed between them as separate legal entities and persons for the purposes of carrying on an illegal gambling enterprise."). Similarly, the FAC shows that DraftKings engaged in racketeering acts (*id.* ¶¶ 198-215) and also establishes a claim for RICO conspiracy (*id.* ¶¶ 289-94). DraftKings has not identified any deficiencies with Plaintiffs' RICO causes of action, and the RICO claims should proceed.

---

[13] DraftKings expressly concedes in the Motion that Plaintiffs' RICO allegations are subject to the "plausibility" standard of Rule 8.

[14] In support of this argument, DraftKings cites two cases, but DraftKings does not otherwise offer any analysis for why these decisions support its conclusory argument. Neither case resembles the facts alleged in the FAC. *In re Toyota Motor Corp. Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1199 (C.D. Cal. 2011) (dangerous vehicles); *In re JUUL Labs. Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 603 (N.D. Cal. 2020) (sale of e-cigarettes to minors).

-22-

**D.      Plaintiffs Have Standing to Seek Injunctive Relief.**

"[P]ublic injunctive relief [is] available under the UCL and CLRA . . . ," provided the plaintiff has standing. *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 824 (9th Cir. 2019) (cleaned up). Although courts in this Circuit were once divided on whether a deceived consumer can seek injunctive relief under Article III, the Ninth Circuit has resolved that question in favor of consumers. *See Davidson*, 889 F.3d at 969 (confirming that "a previously deceived consumer may have standing to seek an injunction . . . even though the consumer now knows or suspects that the advertising was false"). Since *Davidson*, district courts have found that claims for injunctive relief are proper in cases predicated on illegal gambling claims given the risk of future harm to plaintiffs and the public. *See, e.g.*, *Ochoa*, 2023 WL 4291650, at *5. Unlike the cases cited by DraftKings,[15] the risk of future injury is significant here, as Plaintiffs allege that they will "continue to gamble online in California" if it becomes legal and will be "tricked by DraftKings in the future . . . if DraftKings continues to claim that its practices are legal." FAC ¶¶ 118, 131. As the FAC makes clear, DraftKings continues to affirmatively misrepresent legality on the Gambling Websites. *Id.* ¶ 76; *see also* ¶¶ 135-43 (ongoing risk).

DraftKings' ongoing solicitation of Californians and false representations of legality are precisely the type of conduct that is likely to lead Plaintiffs and others to engage in illegal gambling if not enjoined. *See, e.g.*, *Vasquez v. Cebridge Telecom CA, LLC*, 569 F. Supp. 3d 1016, 1023 (N.D. Cal. 2021) (standing where plaintiff alleged desire to purchase service in the future if he could rely on defendant's representations); *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1258 (N.D. Cal. 2019) (standing where "nothing indicates that [plaintiff] wants to stop being a customer"); *Hope v. Early Warning Servs. LLC*, 2023 WL 5505020, at *9 (C.D. Cal. July 13, 2023) (standing where plaintiff "alleges that Defendant's business practices have misled Plaintiffs and the general

---

[15] *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) (national security case with speculation as to whether monitoring would continue); *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (police brutality by specific officers could not be imputed to entire department); *O'Shea v. Littleton*, 414 U.S. 488 (1974) (individual plaintiffs not subjected to civil rights violations); *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (plaintiff testified at deposition that she would not purchase product again even if false statements were removed); *Kenney v. Fruit of the Earth, Inc.*, 2024 WL 4578981, at *1 (9th Cir. Oct. 25, 2024) (accurate information disclosed); *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021) (same).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

public and will continue to mislead them in the future" (cleaned up)). Indeed, this expected reliance is precisely why DraftKings continues to make false representations. *See* FAC ¶¶ 72, 98, 135-43.

In these circumstances, "prevent[ing] [Plaintiffs] from bringing suit [for injunctive relief] on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws." *Davidson*, 889 F.3d at 970.

## E.      Plaintiff Smith's Claims Are Not Time-Barred.

DraftKings also argues that Plaintiff Smith's claims are time-barred as a matter of law because he *began* using the Gambling Websites in 2019. Yet DraftKings ignores that Mr. Smith continued to use the Gambling Websites into 2025 and that DraftKings' false, deceptive, and unlawful representations continued to be made to Mr. Smith throughout the entire period of use (and in fact, continued after this lawsuit was filed). FAC ¶¶ 50-108, 135-52. In these circumstances, each new bet made by Mr. Smith in reliance on DraftKings' misrepresentations constituted a new and separate violation restarting the statute of limitations—no different than if a consumer purchased a falsely labeled product four years ago, then bought it again four months ago in reliance on the same false label. *See, e.g.*, *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *7 (N.D. Cal. Feb. 21, 2014) ("[A] cause of action under [the CLRA and UCL] accrues when a defendant misrepresents or omits material information regarding a product or service and a consumer makes a purchase as a result of such deceptive practices."). Moreover, Mr. Smith expressly alleges that the statute of limitations as to himself and all other users has been tolled based on DraftKings' affirmative misrepresentations.[16] *See* FAC ¶¶ 144-48. These allegations are sufficient to establish tolling at the pleading stage. *See, e.g.*, *Conmar*, 858 F.2d at 506 (reversing dismissal of tolled claim); *In re Conseco Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 2008 WL 4544441, at *8 (N.D. Cal. Sept. 30, 2008) (defendant's alleged representations tolled claims); *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1048 (C.D. Cal. 2009) (tolling to be determined at trial).

---

[16] Information in the public sphere questioning the legality of daily fantasy sports does not overcome the application of the discovery rule or the fraudulent concealment doctrine. *See, e.g.*, *Rushing v. Williams-Sonoma, Inc.*, 2022 WL 2833980, at *6-7 (N.D. Cal. July 20, 2022); *West Pac. Elec. Co. Corp. v. Dragados/Flatiron*, 2018 WL 2088276, at *7 (E.D. Cal. May 4, 2018).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

**F.      Plaintiffs' Equitable Claims Are Not Barred by *Sonner* and Its Progeny.**

DraftKings argues that this Court lacks equitable jurisdiction over Plaintiffs' claims under *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834 (9th Cir. 2020), speculating that damages and restitution are identical in this action. It is too early in these proceedings to close the window on Plaintiffs' equitable claims. As this Court has previously recognized, "*Sonner* does not require Plaintiffs to 'demonstrate' anything at the pleadings stage" and has "minimal application at the pleading stage." *Murphy*, 651 F. Supp. 3d at 1129. Further, "*Sonner* is specifically limited to restitution claims and does not preclude claims for injunctive relief to prevent future harm." *Linton v. Axcess Fin. Servs., Inc.*, 2023 WL 4297568, at *3 (N.D. Cal. June 30, 2023).[17]

**G.      Plaintiffs Can Seek Declaratory Relief.**

Finally, because DraftKings contends that each of Plaintiffs' causes of action for monetary relief fails, maintenance of the declaratory judgment cause of action is appropriate, as it provides Plaintiffs alternative relief from DraftKings' unlawful practices. *See, e.g.*, *Vascular Imaging Pros., Inc.*, 401 F. Supp. 3d at 1011 (denying dismissal of declaratory relief claim where claim could "resolve uncertainties or disputes that may result in future litigation"); *Grocery Outlet, Inc. v. Naftali, Inc.*, 2024 WL 4682311, at *2 (N.D. Cal. Nov. 5, 2024) (Breyer, J.) (a separate cause of action for declaratory relief can be maintained where it can "serve a useful purpose in clarifying and settling the legal relations in issue . . . and controversy faced by the parties").

### IV.      <u>CONCLUSION</u>

The Motion should be denied in full. To the extent the Court grants any portion, Plaintiffs respectfully request leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Respectfully submitted,

Dated: May 8, 2026

By: */s/ Wesley M. Griffith*
Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP LLC**
3415 S Sepulveda Blvd Ste 1121
Los Angeles, CA 90034-7090
Telephone: 310-896-5813
E-mail: wes@almeidalawgroup.com

---

[17] If the Court instead dismisses (it should not), dismissal must be without prejudice to allow refiling in state court. *Ruiz v. Bradford Exchange, Ltd.*, 2025 WL 2473007, at *4 (9th Cir. Aug. 28, 2025).

-25-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

David A. McGee, *pro hac vice*
**ALMEIDA LAW GROUP LLC**
609 H Street NE, Ste. 445
Washington, D.C. 20001
Telephone: 202-913-5681
E-mail: dmcgee@almeidalawgroup.com

Margot Cutter, SBN 306789
**CUTTER LAW P.C.**
401 Watt Avenue
Sacramento, CA 95864
Telephone: 916-290-9400
E-mail: mcutter@cutterlaw.com

F. Peter Silva II, SBN 348070
**TYCKO & ZAVAREEI LLP**
333 H Street, Suite 5000
Chula Vista, CA 91911
Telephone: 510-588-5299
E-mail: psilva@tzlegal.com

Katherine M. Aizpuru, SBN 367828
Robert M. Devling, *pro hac vice*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20006
Telephone: 202-973-0900
E-mail: kaizpuru@tzlegal.com
E-mail: rdevling@tzlegal.com

James Bilsborrow, *pro hac vice*
Aaron Freedman, *pro hac vice*
**WEITZ & LUXENBERG PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
E-mail: jbilsborrow@weitzlux.com
E-mail: afreedman@weitzlux.com

Michael Piggins, *pro hac vice* to be filed
**WEITZ & LUXENBERG PC**
3011 W. Grand Blvd., Fl. 24
Detroit, MI 48202
Telephone: 231-366-3108
E-mail: mpiggins@weitzlux.com

*Counsel for Plaintiffs and the Proposed Class*

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS – Case No. 3:25-cv-4618-CRB

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the below date, I caused to be served a true and correct copy of the foregoing, which was served on all counsel of record using the Court's CM/ECF system.

Dated: May 8, 2026

/s/ *Wesley M. Griffith*
Wesley M. Griffith
**ALMEIDA LAW GROUP LLC**

-27-