RICHARD R. PATCH (State Bar No. 88049)
CLIFFORD E. YIN (State Bar No. 173159)
CHRISTOPHER J. WIENER (State Bar No. 280476)
LAURA R. SEEGAL (State Bar No. 307344)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone:  415.391.4800
Facsimile:  415.989.1663
Email:    ef-rrp@cpdb.com
          ef-cey@cpdb.com
          ef-cjw@cpdb.com
          ef-lrs@cpdb.com

Attorneys for Defendants
DRAFTKINGS INC., JASON D. ROBINS,
MATTHEW KALISH, PAUL LIBERMAN and
CROWN GAMING INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ZHICHENG ZHEN, and JONATHAN SMITH, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DRAFTKINGS, INC., JASON D. ROBINS, MATTHEW KALISH, PAUL LIBERMAN, CROWN GAMING, INC., AND DOES 1-20 <br><br> Defendants. | Case No. 3:25-cv-04618-CRB <br><br> Related Cases: 3:25-cv-05542-CRB; 3:25-cv-10473-CRB <br><br> **REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> Judge:   Hon. Charles R. Breyer <br> Date:    June 26, 2026 <br> Time:    10:00 a.m. <br> Ctrm.:   Courtroom 6 - 17th Floor |

*Coblentz Patch Duffy & Bass LLP — One Montgomery Street, Suite 3000, San Francisco, California 94104-5500 · 415.391.4800 · Fax 415.989.1663*

017373.0049 4934-9482-4616.13                                  Case No. 3:25-cv-04618-CRB

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................1

ARGUMENT .......................................................................................................................2

I. Plaintiffs Still Lack Standing. ................................................................................2

   A. Plaintiffs Lack RICO Standing (Counts 5 and 6)..............................................2

   B. Plaintiffs Lack UCL and CLRA Standing (Counts I and II).............................3

   C. Plaintiffs Lack Standing to Seek Injunctive Relief. ..........................................4

II. Plaintiffs' Claims Are Barred By Public Policy, And There Is No Basis For Plaintiffs' Radical Request To Overturn Decades of California Jurisprudence (Counts I, II, VII, VIII, and IX). .......................................................................................6

   A. This Court Should Follow The Public Policy Doctrine Articulated In *Kelly* And Subsequent Authorities. ....................................................................6

III. The Court Should Dismiss All Claims For Equitable Relief. ...............................9

IV. Plaintiffs Fail to State RICO Claims (Counts V and VI). ...................................9

V. Plaintiffs' Opposition Does Not Cure the UCL or CLRA Defects (Counts I and II). .................................................................................................................10

   A. DFS and Pick6 Contest Entries Are Not CLRA-Covered Goods or Services. ......................................................................................................10

   B. Plaintiffs Still Do Not Satisfy Rule 9(b). .......................................................10

VI. Plaintiffs' Statute of Anne, Penal Code § 496(c), and Declaratory-Relief Claims Fail. ...............................................................................................................11

   A. Plaintiffs Have No Claim Under Section II of the Statute of Anne (Count VII).....................................................................................................11

   B. The Court Should Dismiss the Civil Theft Claim (Count VIII).......................12

   C. The Court Should Dismiss The Declaratory Relief Claim (Count IX). ............13

VII. Smith's Claims Are Time-Barred or Must Be Time-Limited. .....................................14

CONCLUSION ...................................................................................................................15

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adell v. Macon Cnty. Greyhound Park, Inc.*,
   785 F. Supp. 2d 1226 (M.D. Ala. 2011) ................................................................................. 3

*Aguilar v. Atl. Richfield Co.*,
   25 Cal. 4th 826 (2001) ............................................................................................................ 6

*In re Apple Inc. App Store Simulated Casino-Style Games Litig. ("Casino-Style Games Litig.")*,
   806 F. Supp. 3d 1015 (N.D. Cal. 2025) ........................................................................ *passim*

*In re Apple Processor Litig.*,
   No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) ................................................. 9

*Aryeh v. Canon Bus. Sols., Inc.*,
   55 Cal. 4th 1185 (2013) ........................................................................................................ 14

*Brill v. Postle*,
   2020 WL 2936688 (E.D. Cal. 2020) ...................................................................................... 8

*Caldwell v. Nordic Naturals, Inc.*,
   709 F. Supp. 3d 889 (N.D. Cal. 2024) ................................................................................... 5

*Californians for Disability Rights v. Mervyn's, LLC*,
   39 Cal. 4th 223 (2006) ............................................................................................................ 5

*Cedar Shake & Shingle Bureau v. City of Los Angeles*,
   997 F.2d 620 (9th Cir. 1993) ................................................................................................ 13

*Cervantes v. City of San Diego*,
   5 F.3d 1273 (9th Cir. 1993) .................................................................................................. 12

*Chaset v. Fleer/Skybox Int'l, LP*,
   300 F.3d 1083 (9th Cir. 2002) ....................................................................................... 1, 2, 3

*Chowning v. Tyler Techs., Inc.*,
   No. 25-cv-04009-YGR, 2025 WL 3496690 (N.D. Cal. Dec. 5, 2025) ................................ 10

*Cimoli v. Alacer Corp.*,
   546 F. Supp. 3d 897 (N.D. Cal. 2021) ................................................................................... 5

*Colvin v. Roblox Corp.*,
   No. 23-cv-04146-VC, 2024 WL 4231090 (N.D. Cal. Sept. 19, 2024) ................................. 8

*D'Agnese v. Novartis Pharms. Corp.*,
   No. CV-12-00749-PHX-JAT, 2013 WL 321773 (D. Ariz. Jan. 28, 2013) ............................ 2

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .............................................................................................. 4, 5

017373.0049 4934-9482-4616.13

ii

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

*DEPCOM Power, Inc. v. CSUN Solar, Inc.*,
No. 18-cv-00729-JST, 2020 WL 5176193 (D. Ariz. July 30, 2020) ........................................ 2

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) .................................................................... 10

*Doe v. Roblox Corp.*,
602 F. Supp. 3d 1243 (N.D. Cal. 2022) .................................................................... 10

*Dufour* v. *BE LLC*,
No. C 09-03770 CRB, 2010 WL 2560409 (N.D. Cal. June 22, 2010) ................................... 3

*Edwards v. Apple, Inc.*,
No. 24-cv-05795-NW, 2025 WL 2172717 (N.D. Cal. July 31, 2025)................................... 13

*Eiess v. USAA Fed. Sav. Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019) ...................................................................... 5

*Fairbanks v. Superior Court*,
46 Cal. 4th 56 (2009) ............................................................................................ 10

*I.B. ex rel. Fife v. Facebook, Inc.*,
905 F. Supp. 2d 989 (N.D. Cal. 2012) ........................................................................ 10

*Formic Ventures LLC v. SomaLogic, Inc.*,
No. 22-cv-06887-BLF, 2023 WL 6037899 (N.D. Cal. Sept. 15, 2023) ............................... 13

*Hawkins v. Kroger Company*,
906 F.3d 763 (9th Cir. 2018)..................................................................................... 4

*Hope v. Early Warning Servs. LLC*,
No. SA CV 22-04639-DOC-ADS, 2023 WL 5505020 (C.D. Cal. July 13, 2023) .................. 5

*Ice Cream Distrib. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
No. 09-5815 CW, 2010 WL 2198200 (N.D. Cal. May 28, 2010) ........................................ 9

*Jamgotchian v. Sci. Games Corp.*,
371 F. App'x 812 (9th Cir. 2010) ............................................................................... 7

*Jamgotchian v. Sci. Games Corp.*,
No. CV 08-5121 GHK (CWx), 2008 WL 11411612 at *1 (C.D. Cal. Oct. 22, 2008).............. 6

*Kelly v. First Astri Corp.*,
72 Cal. App. 4th 462 (1999)............................................................................... 1, 6, 7, 8

*King v. Nat'l Gen. Ins. Co.*,
No. 15-cv-00313-DMR, 2025 WL 2494366 (N.D. Cal. Aug., 29, 2025)................................ 9

*Kraus v. Trinity Mgmt. Servs., Inc.*,
23 Cal. 4th 116 (2000) ............................................................................................ 5

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ............................................................................................ 5

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500 · FAX 415.989.1663
415.391.4800

*Kyablue v. Watkins*,
210 Cal. App. 4th 1288 (2012)................................................................................................ 6, 8

*Linton v. Axcess Fin. Servs., Inc.*,
No. 23-cv-01832-CRB, 2023 WL 4297568 (N.D. Cal. June 30, 2023) ................................... 9

*Los Angeles Turf Club, Inc. v. Horse Racing Labs, LLC*,
No. CV 15-09332 SJO, 2017 WL 11634526 (C.D. Cal. 2017) ............................................... 8

*Mai v. Supercell Oy*,
No. 23-15144, 2024 WL 2077500 (9th Cir. May 9, 2024) ................................................. 1, 3

*Mason v. Mach. Zone, Inc.*,
140 F. Supp. 3d 457 (D. Md. 2015), *aff'd on other grounds*, 851 F.3d 315 (4th Cir. 2017)  1, 3

*Medina v. Safe-Guard Prods., Int'l, Inc.*,
164 Cal. App. 4th 105 (2008)................................................................................................... 3

*Meyer v. Sprint Spectrum L.P.*,
45 Cal. 4th 634 (2009) ............................................................................................................ 3

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
15 F.4th 885 (9th Cir. 2021).................................................................................................... 6

*Murphy v. Olly Public Benefit Corp.*,
651 F. Supp. 3d 1111 (N.D. Cal. 2023) ................................................................................... 9

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
No. CV 05-6838 CAS, 2013 WL 6535164 (C.D. Cal. Dec. 9, 2013)...................................... 3

*Ochoa v. Zeroo Gravity Games LLC*,
No. CV 22-5896-GW-ASx, 2023 WL 4291650 (C.D. Cal. May 24, 2023) .................. 4, 8, 10

*People v. Vallerga*,
67 Cal. App. 3d 847 (1977)..................................................................................................... 13

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008)................................................................................................. 3

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015).................................................................................................... 4

*Reeves v. Niantic, Inc.*,
No. 21-cv-05883-VC, 2022 WL 1769119 (N.D. Cal. May 31, 2022).................................... 10

*Rushing v. Williams-Sonoma, Inc.*,
No. 16-cv-01421-WHO, 2022 WL 2833980 (N.D. Cal. July 20, 2022)................................. 14

*Ryan v. Microsoft Corp.*,
147 F. Supp. 3d 868 (N.D. Cal. 2015) .................................................................................... 14

*Schneider v. Chipotle Mexican Grill, Inc.*,
328 F.R.D. 520 (N.D. Cal. 2018)............................................................................................. 4

017373.0049 4934-9482-4616.13

iv

Case No. 3:25-cv-04618-CRB

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

*Siry Inv., L.P. v. Farkhondehpour*,
    13 Cal. 5th 333 (2022) ........................................................................................ 12, 13

*Sonnenberg v. Amaya Grp. Holdings (IOM) Ltd.*,
    810 F.3d 509 (7th Cir. 2016)...................................................................................... 12

*Tak Chun Gaming Promotion Co. v. Long ("Tak Chun")*,
    96 Cal. App. 5th 1027 (2023)............................................................................ 7, 8, 11

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011)......................................................................... 9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ...................................................................................................... 5

*Vasquez v. Cebridge Telecom CA, LLC*,
    569 F. Supp. 3d 1016 (N.D. Cal. 2021) ........................................................................ 5

*Wallace v. Opinham*,
    73 Cal. App. 2d 25 (1946)........................................................................................ 6, 7

**Statutes & Rules**

18 U.S.C. § 1962(c) ............................................................................................................ 10

Civil Code § 22.2 ................................................................................................................. 7

Penal Code § 496(c) ................................................................................................ 2, 8, 11, 13

**Other Authorities**

1 Witkin, Summary 11th Contracts § 1065 (2026) ............................................................. 7

7 Williston on Contracts § 17:22 n.3 (4th ed.).................................................................... 7

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

017373.0049 4934-9482-4616.13                     v                     Case No. 3:25-cv-04618-CRB

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**INTRODUCTION**

Rather than address the defects identified in DraftKings Inc.'s ("DraftKings") motion to dismiss, Plaintiffs Zhicheng Zhen and Jonathan Smith ("Plaintiffs") largely concede them and ask the Court to disregard longstanding authority that forecloses their claims. Most notably, Plaintiffs acknowledge that California courts have repeatedly held that plaintiffs may not recover alleged gambling losses through civil litigation, then devote much of their opposition to arguing that those decisions—including *Kelly v. First Astri Corp. ("Kelly")*, 72 Cal. App. 4th 462 (1999), and the decades of authority preceding and following it—were wrongly decided and should not be followed by this Court. That is an extraordinary request. For at least eighty years, California courts have uniformly recognized that, absent a statute specifically authorizing recovery, courts will not entertain claims seeking recovery of alleged gambling losses. *Plaintiffs cite no California decision rejecting that rule, no decision allowing the claims asserted here, and no statute authorizing the recovery they seek.* Their position ultimately reduces to a remarkable proposition: every California court to address the issue has gotten it wrong.

Plaintiffs' opposition also confirms that they lack standing to assert claims under RICO, the UCL, and the CLRA. Again, several authorities reject the very theories Plaintiffs advance. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086–87 (9th Cir. 2002); *Mai v. Supercell Oy*, No. 23-15144, 2024 WL 2077500, at *1 (9th Cir. May 9, 2024); *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 465–66 (D. Md. 2015), *aff'd on other grounds*, 851 F.3d 315 (4th Cir. 2017). Plaintiffs do not allege that DraftKings failed to run the contests properly, altered the rules, manipulated outcomes, withheld winnings, or denied them the opportunity to win. Instead, they contend that the Daily Fantasy Sports ("DFS") and/or Pick6 contests they entered into (and presumably sometimes won) were rendered valueless because according to Plaintiffs, they were unlawful in California. The cases cited above foreclose that theory.

Plaintiffs similarly lack standing to seek injunctive relief. Having now filed suit expressly alleging that DFS contests are unlawful in California, Plaintiffs cannot plausibly claim that they face a risk of being deceived in the future about the very legal issue they are actively litigating. Any future dispute concerning DFS legality would arise from legal developments or judicial determinations—not

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · Fax 415.989.1663

from reliance on any product representation—and therefore cannot support Article III standing for injunctive relief.

The remaining claims fail as well. Plaintiffs still do not plead the elements of a RICO enterprise or conspiracy. Their UCL and CLRA claims fail because DFS and Pick6 contest entries are not CLRA-covered goods or services and because the alleged misrepresentations do not satisfy Rule 9(b). Their requests for restitution, injunctive relief, and declaratory relief fail because Plaintiffs have an adequate remedy at law, their requests for damages and restitution are identical, and they cannot establish any real threat of future injury. Their Section II Statute of Anne claim fails because California has never recognized that cause of action, and, in any event, DraftKings is not a statutory "Winner." Their Penal Code section 496(c) claim fails because Plaintiffs do not plead theft or criminal intent. And Smith's claims are time-barred.

The Court should dismiss the FAC with prejudice.

## ARGUMENT

### I. Plaintiffs Still Lack Standing.

#### A. Plaintiffs Lack RICO Standing (Counts 5 and 6).

Plaintiffs lack standing because the only injury they allege—gaming losses (FAC ¶¶ 271, 277, 287, 293)—is not cognizable under RICO and does not confer standing. *Chaset*, 300 F.3d at 1086–87 (rejecting RICO standing where the plaintiffs alleged they had lost money in an illegal gambling transaction, because, whether the transaction was illegal or not, they had received the bargained-for opportunity to win); *In re Apple Inc. App Store Simulated Casino-Style Games Litig. ("Casino-Style Games Litig.")*, 806 F. Supp. 3d 1015, 1046–47 (N.D. Cal. 2025) (a "'disappointing gambling loss after receiving what was paid for is not injury to property sufficient for RICO standing.'") (citation omitted).[1] Plaintiffs entered into DFS or Pick6 contests with an opportunity to win. Plaintiffs do not allege that the contests were rigged, that their rules differed from what DraftKings disclosed, or that

---

[1] Plaintiffs' incorporation-by-reference objection fails. DraftKings raised its RICO standing arguments in its own brief, Plaintiffs responded to them, and the cases Plaintiffs cite are not analogous. *See DEPCOM Power, Inc. v. CSUN Solar, Inc.*, No. 18-cv-00729-JST, 2020 WL 5176193, at *3 (D. Ariz. July 30, 2020); *D'Agnese v. Novartis Pharms. Corp.*, No. CV-12-00749-PHX-JAT, 2013 WL 321773, at *13 (D. Ariz. Jan. 28, 2013).

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

DraftKings withheld winnings or otherwise denied them opportunities to win.[2]

Nor can Plaintiffs manufacture RICO injury by labeling the same alleged losses as a "price premium" or deprivation of money. The FAC pleads no objective market-value or price difference between the contest entries Plaintiffs purchased and those they received, and their subjective valuations are not relevant to establishing concrete financial injury under RICO. *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838 CAS (MANx), 2013 WL 6535164, at *7 (C.D. Cal. Dec. 9, 2013) (citing *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990)). Additionally, the alleged injury was caused by Plaintiffs' own decision to enter the contests, not DraftKings' conduct. *Adell v. Macon Cnty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1244 (M.D. Ala. 2011).

### B.    Plaintiffs Lack UCL and CLRA Standing (Counts I and II).

Plaintiffs concede that they base standing to sue under the UCL and CLRA solely on the alleged technical illegality of DFS contests. But as made clear by at least five different cases, technical illegality is insufficient to confer standing. *See Mai*, 2024 WL 2077500, at *1; *Mason*, 140 F. Supp. 3d at 465–66, *aff'd on other grounds*, 851 F.3d 315 (4th Cir. 2017); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591 (2008); *Medina v. Safe-Guard Prods., Int'l, Inc.*, 164 Cal. App. 4th 105, 115–16 (2008); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009). Plaintiffs cannot circumvent those cases by asserting that a good or service they purchased was worth less simply because it was allegedly unlawful.

This is especially true here, where Plaintiffs do not allege that they were "overcharged" or that the entry fees they paid were "artificially inflated." Instead, Plaintiffs allege only that they personally would have paid less had the contests been advertised differently. Plaintiffs do not explain how the legal status of the contests affects their value in any objective sense (or at all). They do not claim that the contests would have operated differently, or that the outcome would have been different, based on their legal status. To the contrary, Plaintiffs allege that California consumers received the exact same DFS and Pick6 contests, interfaces, and mechanics that they concede are

---

[2] Plaintiffs' reliance on *Dufour* v. *BE LLC*, No. C 09-03770 CRB, 2010 WL 2560409, at *11 (N.D. Cal. June 22, 2010), is misplaced. That case involved concrete financial losses from ordinary commercial fraud and did not address gambling losses or *Chaset*.

017373.0049 4934-9482-4616.13

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

offered legally in other states. FAC ¶¶ 74-78, 80-101, 157, 159, 266, 282. Plaintiffs do not allege that California users paid higher prices, entered into different contests with different rules or odds, or were denied any promised benefit compared to users in concededly lawful jurisdictions. Indeed, Plaintiffs' theory depends entirely on the legal characterization of the contests, not any difference in the actual contest. That defeats any inference that the alleged "illegality" in California created a price premium or other cognizable economic injury.[3]

### C.    Plaintiffs Lack Standing to Seek Injunctive Relief.

Plaintiffs do not dispute that they lack standing to seek injunctive relief unless they can show, under *Davidson v. Kimberly-Clark Corp.*, an "'actual and imminent, not conjectural or hypothetical' threat of future harm," and specifically, "'a sufficient likelihood that [they] will again be wronged in a similar way."' 889 F.3d 956, 969, 971 (9th Cir. 2018) (citations omitted); Opp. at 23. The FAC and plaintiffs' opposition confirm that they *cannot* make this showing.

Plaintiffs argue that there is a risk of future injury because they "allege that they will 'continue to gamble online in California' if it becomes legal" but "may be tricked by DraftKings in the future into engaging in unlawful gambling in California if DraftKings continues to claim that its practices are legal." (FAC ¶¶ 118, 131; Opp. at 23).[4] Plaintiffs' position—that they currently believe DFS contests are illegal in California despite DraftKings' representations to the contrary, yet could later be misled by those same representations—is implausible on its face.[5] In fact, Plaintiffs do not

---

[3] The cases cited by Plaintiffs – none of which involved representations about legality and all of which involved representations that lowered the value of the good or service purchased -- do not help them. *Hawkins v. Kroger Company*, 906 F.3d 763, 769 (9th Cir. 2018) (plaintiff alleged that she saw and relied on representation that bread crumbs had no trans fat); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (plaintiff alleged misrepresentations made by Google that placed ads on lower-quality web pages); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 530–31 (N.D. Cal. 2018) (plaintiff alleged that she saw and relied on representations that Chipotle products were non-GMO).

[4] DraftKings' position is, of course, that its DFS contests have always been, and remain, legal.

[5] Citing *Ochoa v. Zeroo Gravity Games LLC*, No. CV 22-5896-GW-ASx, 2023 WL 4291650, at *5 (C.D. Cal. May 24, 2023), Plaintiffs suggest that claims for injunctive relief are always proper in cases predicated on alleged illegal gambling. Opp. at 13. *Ochoa* says no such thing. In *Ochoa*, the defendant did not argue, and the court did not address, whether the plaintiffs faced an imminent threat of harm to confer Article III standing.

017373.0049 4934-9482-4616.13

4

Case No. 3:25-cv-04618-CRB

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

allege uncertainty about any feature, operation, or factual characteristic of DFS contests. The only issue they identify is whether the contests are legal in California, which is a legal question—not an inherent quality of the contests themselves. Plaintiffs are already fully aware of the issue, having retained counsel to advise them on this matter and filed this lawsuit to litigate it. In these circumstances, they cannot allege any risk of future deception or injury sufficient to support injunctive standing.[6]

Even if their theory were remotely plausible (and it is not), Plaintiffs' argument still fails under *Davidson.* Unlike in *Davidson*, where the court ruled that a consumer could not verify the truth of a product label without repurchasing the product, Plaintiffs can make their own assessment, or do so in consultation with their lawyers, as to whether DFS contests are legal in California.[7] More fundamentally, they can do so without ever entering another DFS contest – a point that Plaintiffs do not dispute.[8] *See* Mot. at 16.

---

[6] In arguing that they can enforce the UCL in addition to the Attorney General, Plaintiffs rely on *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126–27 (2000), but *Kraus* predates Proposition 64, which preserved enforcement by the Attorney General while limiting private standing to plaintiffs who "'suffered injury in fact and ha[ve] lost money or property as a result of . . .'" the challenged conduct. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320–21 (2011) (citation omitted); *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 232–33 (2006). In federal court, Plaintiffs also must satisfy Article III for each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Plaintiffs satisfy neither Proposition 64's standing requirements nor the real and immediate threat of future injury required for Article III standing to seek injunctive relief.

[7] All of the cases cited by plaintiffs are distinguishable, including because none of them relate to alleged misrepresentations about alleged illegality. *Vasquez v. Cebridge Telecom CA, LLC*, 569 F. Supp. 3d 1016, 1024 (N.D. Cal. 2021) (current customer had standing because he may be deceived in the future about future fees where disclosure would not provide him with full and accurate information); *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1258 (N.D. Cal. 2019) (same); *Hope v. Early Warning Servs. LLC*, No. SA CV 22-04639-DOC-ADS, 2023 WL 5505020, at *9 n.8 (C.D. Cal. July 13, 2023) (granting motion to compel arbitration where customer alleged unreimbursed losses from fraudsters).

[8] Plaintiffs do not meaningfully distinguish the published cases holding that a plaintiff lacks standing to seek injunctive relief where he can verify the truth or falsity of the alleged misrepresentation without purchasing the product again. *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021); *Caldwell v. Nordic Naturals, Inc.*, 709 F. Supp. 3d 889, 909 (N.D. Cal. 2024).

017373.0049 4934-9482-4616.13     5     Case No. 3:25-cv-04618-CRB

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

**II.    Plaintiffs' Claims Are Barred By Public Policy, And There Is No Basis For Plaintiffs' Radical Request To Overturn Decades of California Jurisprudence (Counts I, II, VII, VIII, and IX).**

**A.    This Court Should Follow The Public Policy Doctrine Articulated In *Kelly* And Subsequent Authorities.**

Plaintiffs concede, as they must, that (i) they seek to recover alleged gambling losses; and (ii) the public policy doctrine as articulated in *Kelly* (and several preceding and subsequent cases) bars all claims for gambling losses. Opp. at 6, 16. Plaintiffs instead argue that the Court need not follow any of those cases because they were all wrongly decided.[9] That argument is without merit.

This Court is bound by *Kelly* and the cases that preceded and followed it. Federal courts are:

> bound to follow the decisions of the state's highest court, and when the state supreme court has not spoken on an issue, we must determine what result the court would reach based on state appellate court opinions, statutes and treatises . . . We will ordinarily accept the decision of an intermediate appellate court as the controlling interpretation of state law . . . unless [we] find[ ] convincing evidence that the state's supreme court likely would not follow it.

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) (cleaned up). Plaintiffs articulate no convincing evidence that the California Supreme Court would not follow *Kelly*[10] or the cases following it. *Jamgotchian v. Sci. Games Corp.,* No. CV 08-5121 GHK (CWx), 2008 WL 11411612 at *1 (C.D. Cal. Oct. 22, 2008) ("Though the Supreme Court of California has not spoken on this issue, we have no reason to think they would disapprove of *Kelly*"). In fact, the public policy doctrine was held to bar claims for gambling losses 53 years before *Kelly,* and the scope of the doctrine has been repeatedly recognized by subsequent decisions of California intermediate courts and federal courts, and leading treatises. *Wallace v. Opinham*, 73 Cal. App. 2d 25, 26 (1946) ("*in the absence of a statute authorizing a recovery of gambling losses*, neither courts of law nor equity will aid or assist either party to enforce rights growing out of that illegal transaction") (emphasis in original); *Kyablue v. Watkins*, 210 Cal. App. 4th 1288, 1294–95 (2012) (noting the

---

[9] In opposing DraftKings' first motion to dismiss, Plaintiffs did not argue *Kelly* was wrongly decided, only that it was distinguishable. *See* ECF No. 51.

[10] Plaintiffs concede that, in *Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 843 (2001), the California Supreme Court cited *Kelly*, albeit on a different issue. Opp. at 9, fn. 5.

017373.0049 4934-9482-4616.13

6

Case No. 3:25-cv-04618-CRB

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

"historic distaste for judicial resolution of 'actions for recovery of gambling losses . . .'"); *Tak Chun Gaming Promotion Co. v. Long ("Tak Chun")*, 96 Cal. App. 5th 1027, 1035 (2023) (noting "'California's public policy against judicial resolution of civil claims arising out of gambling contracts or transactions'") (citation omitted); *Jamgotchian v. Sci. Games Corp.,* 371 F. App'x 812, 813 (9th Cir. 2010) (motion to dismiss proper under *Kelly* of claims seeking to recover losses from horse racing bets); *Casino-Style Games Litig.*, 806 F. Supp. 3d at 1035 (describing the doctrine's 'long pedigree' and noting that California courts have "consistently and repeatedly affirmed" it); 1 Witkin, Summary 11th Contracts § 1065 (2026) ("California denies recovery in **all** cases because of public policy against the activity") (emphasis added); 7 Williston on Contracts § 17:22 n.3 (4th ed.) ("public policy barring judicial resolution of civil claims arising out of gambling contracts or transactions applies not just to actions to enforce gambling debts but also to actions to recover gambling losses, absent a statutory right to bring such claims[,]" *citing Kelly*, 72 Cal. App. 4th 462). Plaintiffs do not (and cannot) cite a single case holding that the public policy doctrine does not bar claims for gambling losses.

Faced with this overwhelming authority, Plaintiffs argue that *Kelly* was wrongly decided because it did not consider Section II of the Statute of Anne, as purportedly adopted by Civil Code section 22.2's predecessor. But no California court has held that California common law has adopted Section II. *Tak Chun* recognized that California's public policy against enforcing gambling debts derives from the Statute of Anne, but it addressed only Section I, not Section II. *Tak Chun*, 96 Cal. App. 5th at 1033. Even if Section II had been adopted as California common law in 1850 (it has not), it still would not have the force of a statute enacted by the California Legislature. *Tak Chun*, in fact, rejected an analogous argument that Section I had statutory force. *Id.* at 1038.[11]

Plaintiffs next argue that, even if *Kelly* was correctly decided, its ruling does not apply here because "the doctrine only applies '*in the absence of a statute* authorizing a recovery[.]" Opp. at 11 (emphasis in original). But plaintiffs conspicuously omit the key part of that quote. *Kelly*, 72 Cal.

---

[11] That Section II has no statutory force is consistent with *Wallace* and *Kelly*, both of which recognized that California has enacted no *statute* authorizing recovery of gambling losses. *Wallace*, 73 Cal. App. 2d at 27; *Kelly*, 72 Cal. App. 4th at 489; *see also Tak Chun*, 96 Cal. App. 5th at 1036.

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

App. 4th at 481 (public policy doctrine applies "*in the absence of a statute authorizing a recovery of gambling losses*") (emphasis in original). None of the three statutes which Plaintiffs invoke (the UCL, CLRA and Penal Code Section 496(c)) is a statute authorizing recovery of gaming losses (and Section II of the Statute of Anne is neither a California statute nor part of California common law, as discussed above). *See* Mot. at 13-14. As several cases have held, the "broad, sweeping language" of those statutes do not authorize recovery of gaming losses; rather, the generalized intent of those statutes' is "too generic" to abrogate longstanding public policy. *See Casino Style Games Litig.*, 806 F. Supp. 3d at 1035; *see also Tak Chun*, 96 Cal. App. 5th at 1036, *Brill v. Postle*, 2020 WL 2936688, at *3 (E.D. Cal. 2020).

Plaintiffs also argue that the public policy doctrine bars only common law claims. That purported limitation is unsupported, and the cases cited by Plaintiffs help DraftKings or are distinguishable. In *Ochoa*, the court held that California's public policy against judicial recovery of gambling losses barred plaintiffs' claims for monetary relief under the UCL and CLRA. *Ochoa*, 2023 WL 4291650, at *5. Plaintiffs' remaining authorities are equally unhelpful. In *Colvin v. Roblox Corp.*, No. 23-cv-04146-VC, 2024 WL 4231090, at *4 (N.D. Cal. Sept. 19, 2024), the court recognized a narrow exception permitting minors to recover gambling losses, consistent with the policy concerns underlying *Kelly*. This case involves no such issue. Likewise, *Los Angeles Turf Club, Inc. v. Horse Racing Labs, LLC*, No. CV 15-09332 SJO (JEMx), 2017 WL 11634526, at *9 (C.D. Cal. 2017), neither addressed nor analyzed the public policy doctrine. Finally, Plaintiffs' reliance on *Kyablue v. Watkins* is misplaced. *Kyablue* addressed whether to recognize an exception to the rule against enforcing contracts founded on illegal consideration—not an exception to the rule barring recovery of gambling losses. 210 Cal. App. 4th at 1292–93. Indeed, *Kyablue* distinguished the general public policy concerns associated with gambling from the separate "historic distaste for judicial resolution of actions for recovery of gambling losses" recognized in *Kelly*. *Id*. at 1294–95. Far from undermining *Kelly*, *Kyablue* reaffirmed its continuing vitality.

Plaintiffs argue that if the public policy doctrine applies and bars their claims for monetary relief (and it does), their requests for injunctive relief nevertheless survive under *Ochoa*. But plaintiffs cite no case law following that ruling in *Ochoa,* and they ignore this district's more recent

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

decision in *Casino-Style Games Litig.*, which dismissed an injunctive relief claim under the public policy doctrine. 806 F. Supp. 3d at 1035 (dismissing UCL claim seeking restitution and injunctive relief "[s]ince gambling is at the heart of Plaintiffs' claims, the Court sees no path for Plaintiffs to plead around this policy.").

## III.   The Court Should Dismiss All Claims For Equitable Relief.

The Court lacks equitable jurisdiction. Plaintiffs do not dispute that damages and restitution are identical in this action, and they offer no explanation why legal remedies would be inadequate. All plaintiffs argue is that their pleading burden is minimal. But even at the pleadings stage, dismissal is proper where, as here, plaintiffs have plead (and do not dispute) that damages and restitution are the same. *King v. Nat'l Gen. Ins. Co.*, No. 15-cv-00313-DMR, 2025 WL 2494366, at *8 (N.D. Cal. Aug., 29, 2025); *see also In re Apple Processor Litig.*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023).[12]

## IV.   Plaintiffs Fail to State RICO Claims (Counts V and VI).

In addition to their lack of standing, Plaintiffs fail to plead the elements of their RICO claims. Plaintiffs fail to plead the existence of a distinct associated-in-fact enterprise because the alleged "Legal Entity Enterprise" consists of DraftKings, Crown, and DraftKings executives, who are also the alleged RICO "persons." *Ice Cream Distrib. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, No. 09-5815 CW, 2010 WL 2198200, at *5 (N.D. Cal. May 28, 2010). Furthermore, Defendants are alleged only to have conducted their ordinary business activities, not the conduct of an illegal enterprise. (FAC. ¶ 157 ("DraftKings' services can be offered legally in jurisdictions that permit the daily fantasy sports and Pick6 gambling services DraftKings offers (subject to appropriate registration and regulatory filings), but DraftKings also offers its daily fantasy sports and Pick6 services in jurisdictions where their services are not legally permitted"). Alleging that DraftKings' activities are lawful in some states but unlawful in California is not sufficient. *See In re Toyota Motor*

---

[12] Plaintiffs' authorities are inapposite. *Murphy v. Olly Public Benefit Corp.*, 651 F. Supp. 3d 1111, 1129 (N.D. Cal. 2023), denied dismissal because the plaintiffs adequately pleaded the inadequacy of legal remedies, while *Linton v. Axcess Fin. Servs., Inc.*, No. 23-cv-01832-CRB, 2023 WL 4297568, at *3 (N.D. Cal. June 30, 2023), dismissed a claim for injunctive relief for lack of Article III standing.

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800  ·  Fax 415.989.1663

*Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202-03 (C.D. Cal. 2011). Plaintiffs also fail to establish a pattern of racketeering, because their allegations of predicate acts are conclusory and/or do not satisfy Rule 9(b). The conspiracy claims fail because Plaintiffs plead no viable 18 U.S.C. § 1962(c) violation, and no agreement to commit predicate acts. *See Casino-Style Games Litig.*, 806 F. Supp. 3d at 1047. Plaintiffs' objection to DraftKings' joining in the arguments of the other defendants is without merit. *See* fn. 1, *supra*. Lastly, Smith's RICO claim is also time-barred, or at minimum time-limited, as explained in Section VII.

## V.    Plaintiffs' Opposition Does Not Cure the UCL or CLRA Defects (Counts I and II).

### A.    DFS and Pick6 Contest Entries Are Not CLRA-Covered Goods or Services.

DFS contest entries offered online or through a mobile application are not the type of goods or services covered by the CLRA. *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 60–61, 65 (2009) (rejecting efforts to use ancillary services to bring intangible products within the CLRA). Plaintiffs largely ignore *Fairbanks*, relying instead on a handful of cases addressing materially different transactions. In *Ochoa*, 2023 WL 4291650, at *13, the court recognized that *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1264 (N.D. Cal. 2022)—which treated certain mobile-app virtual-currency transactions as CLRA services—reflected a minority approach. Likewise, in *Chowning v. Tyler Techs., Inc.*, No. 25-cv-04009-YGR, 2025 WL 3496690, at *4 (N.D. Cal. Dec. 5, 2025), the court concluded that a campsite reservation qualified as a service only because it resembled a hotel reservation. Consistent with *Fairbanks*, courts have refused to convert intangible online transactions into CLRA services merely because they occur through a website, mobile application, user account, or payment platform. *See Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012); *Reeves v. Niantic, Inc.*, No. 21-cv-05883-VC, 2022 WL 1769119, at *2 (N.D. Cal. May 31, 2022).

### B.    Plaintiffs Still Do Not Satisfy Rule 9(b).

Plaintiffs do not dispute that (i) Rule 9(b) applies to their UCL and CLRA claims; and (ii) they have failed to identify the specific false statements upon which they relied. All they argue is that DraftKings supposedly represented to them that the services it offered in California were legal, but

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

neither plaintiff alleges he saw or relied on any such alleged representation at any time, let alone before he created an account with DraftKings or entered into any contest. Instead, Zhen alleged he created a DraftKings account "in response to advertisements he saw online and while watching NBA games on TV in California." FAC ¶¶ 110. He never alleged what those advertisements said, let alone that they represented that DraftKings' services were legal in California. Similarly, Smith alleged he created an account with DraftKings "in response to advertisements he had seen on television while watching the NBA," but he, too, failed to allege what those television advertisements said or that they represented that DraftKings' services were legal in California. *Id*. ¶ 123. Plaintiffs argue that they need not allege the specific advertisements they saw if they provided "examples of advertisements" that convey the "core allegedly fraudulent message" (Opp. at 17 (cleaned up)), but even if that were accurate (it is not), plaintiffs alleged no examples of any television or online advertisements in the FAC.[13] Their claims are deficient under Rule 9(b).

## VI.    Plaintiffs' Statute of Anne, Penal Code § 496(c), and Declaratory-Relief Claims Fail.

### A.    Plaintiffs Have No Claim Under Section II of the Statute of Anne (Count VII).

California law has never recognized a claim under Section II of the Statute of Anne. Plaintiffs cite no case that does so, relying solely on a case – *Tak Chun* – that they admit analyzed only Section I. Opp. at 20.

Even if the Court recognized the existence of a Section II claim under California law (and there is no basis to do so), Plaintiffs' direct claim under Section II still fails.[14] They have not alleged, and cannot allege, that DraftKings was a "Winner" within the meaning of Section II. Plaintiffs argue that the Court should apply the "plain language" of Section II, but they focus only on the simplified pleading language set out in that section while ignoring the substantive requirements of the cause of action. Section II provides that where a person loses money "by playing at Cards, Dice, Tables, or other Game or Games whatsoever," that person "shall be at Liberty within three Months then next, to

---

[13] Plaintiffs identify only a Ruffles potato chip advertisement, which contains no representation regarding legality, and screenshots from DraftKings' website and mobile application. Neither plaintiff alleges that he viewed or relied on any of those materials before opening a DraftKings account, let alone that they induced him to do so. *See* FAC ¶¶ 110, 123.

[14] Plaintiffs concede that they do not have a third-party claim under Section II. *See* Opp. at 21.

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · Fax 415.989.1663

sue for and recover the Money or Goods so lost, and paid or delivered or any Part thereof, from the respective *Winner and Winners* thereof[.]" FAC ¶ 299 (emphasis added). Courts, including in this district, have interpreted loss recovery statutes derived from Section II to require that the "Winner" participate in, and bear the risk of loss in, the game or wager itself. *See* Mot. at 20-21.[15] Plaintiffs concede that DraftKings "is not a direct participant in the game" and did not bear the risk of any losses associated with the contests, as it received only entry fees. FAC ¶ 60; Opp. at 20. But charging an entry fee – which DraftKings is entitled to retain whether a Plaintiff wins or loses a contest – does not transform it into a "Winner" within the meaning of Section II or equivalent loss recovery statutes. *See* Mot. at 20-21; *Sonnenberg v. Amaya Grp. Holdings (IOM) Ltd.*, 810 F.3d 509, 511 (7th Cir. 2016) ("charging a fee . . . is not the same as winning . . .").

Zhen's purported Section II claim is also untimely. Plaintiffs do not dispute that Zhen last participated in a DFS contest on February 12, 2025. FAC ¶ 117. Yet this action was not filed until June 1, 2025, more than three months later. Instead, Plaintiffs contend that the limitations period was tolled. Opp. at 20-21. But Plaintiffs cite no authority suggesting that a Section II claim may be tolled and allege no facts supporting tolling. Zhen knew when he entered the contests in 2024 and 2025 that he had lost money and that DraftKings retained his entry fees. FAC ¶¶ 113, 117, 120. Alleged representations concerning the legality of DFS contests—the asserted basis for tolling—would not have delayed discovery of those facts, particularly because Section II does not condition liability on whether the gambling activity was lawful.[16]

## B.   The Court Should Dismiss the Civil Theft Claim (Count VIII).

Plaintiffs have not alleged and cannot allege civil theft. As *Siry* explains, "not all commercial or consumer disputes alleging that a defendant obtained money or property through fraud,

---

[15] Plaintiffs object that DraftKings relies on out-of-state authorities. Opp. at 20. But it is unsurprising that no California law cases analyze the meaning of "Winner" under Section II because Section II is not California law.

[16] Plaintiffs also make a passing reference to equitable tolling, but that doctrine is neither pleaded nor applicable. Opp. at 21. Equitable tolling applies where a plaintiff reasonably pursues an alternative remedy. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). Zhen's claim is untimely not because he pursued another remedy, but because he waited more than three months after his last DFS contest to file suit.

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

misrepresentation, or breach of a contractual promise will amount to a theft." *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361–62 (2022). Plaintiffs admit they paid entry fees for contests that they participated in, and do not allege DraftKings fabricated contests, denied access, withheld winnings, changed rules after payment, or took property without consent. Their theory is only that DraftKings represented DFS/Pick6 contests were lawful, Plaintiffs later concluded otherwise, and the entry fees thus became "stolen property." That is a disputed legal position, not civil theft.[17]

Plaintiffs likewise do not dispute that a claim under Section 496(c) requires allegations of felonious intent. But the FAC alleges only that DraftKings "knew or should have known" its contests were unlawful. FAC ¶ 259. That is negligence language, not criminal intent. Nor do Plaintiffs allege any facts showing that, when Plaintiffs entered the contests giving rise to their claims—or even before this action was filed on June 1, 2025—DraftKings knew its contests were unlawful. To the contrary, DraftKings has consistently maintained that its contests are lawful. See *Formic Ventures LLC v. SomaLogic, Inc.*, No. 22-cv-06887-BLF, 2023 WL 6037899, at *1 (N.D. Cal. Sept. 15, 2023). And the Attorney General's nonbinding opinion,[18] issued on July 3, 2025, cannot retroactively convert a disputed legal position into criminal conduct or otherwise supply the felonious intent missing from the FAC. The Section 496(c) claim should therefore be dismissed.

C.    **The Court Should Dismiss The Declaratory Relief Claim (Count IX).**

Plaintiffs did not address any of the specific defects in their Declaratory Relief Claim identified by DraftKings. *See* Mot. at 23-24. Nor do Plaintiffs dispute that they cannot state a declaratory relief claim based on the redress of prior wrongs. Opp. at 25 (citing *Grocery Outlet, Inc. v. Naftali, Inc.*, No. 23-cv-05254-CRB, 2024 WL 4682311, at *2 (N.D. Cal. Nov. 5, 2024) (dismissing declaratory relief claim to redress prior wrongs because "[t]hat is not a proper use of

---

[17] Plaintiff relies on inapposite caselaw that does not involve such a dispute about alleged illegality. *Edwards v. Apple, Inc.*, No. 24-cv-05795-NW, 2025 WL 2172717, at *9–10 (N.D. Cal. July 31, 2025) (fees charged for devices that plaintiffs no longer owned)

[18] "[T]he opinions of the California Attorney General are advisory only and do not carry the weight of law." *People v. Vallerga*, 67 Cal. App. 3d 847, 870 (1977). Federal courts are not bound by California Attorney General opinions. *See Cedar Shake & Shingle Bureau v. City of Los Angeles*, 997 F.2d 620, 625 (9th Cir. 1993).

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

declaratory relief"). And they cannot allege a claim based on any future issues or circumstances either, as there is no showing of an actual case or controversy or any imminent injury "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*.

## VII.    Smith's Claims Are Time-Barred or Must Be Time-Limited.

Smith does not dispute that his UCL and CLRA claims accrued in 2019, did not oppose DraftKings' request for judicial notice of extensive coverage and litigation related to the potential illegality of DFS and Pick6, and did not dispute that he failed to allege particularized allegations of diligence. Opp. at 24. His claim is time-barred.

Smith argues that he pled the statute had been tolled based on DraftKings' affirmative misrepresentations, but "the factual basis for fraudulent concealment must be *distinct* from a cause of action." *Rushing v. Williams-Sonoma, Inc.*, No. 16-cv-01421-WHO, 2022 WL 2833980, at *7 (N.D. Cal. July 20, 2022) (emphasis added). Here, the allegation that DraftKings misrepresented the legality of DFS contests is the *basis* for Plaintiffs' claims. FAC ¶ 243 (DraftKings violated the UCL "by tricking consumers into believing operation of the Gambling Websites is lawful[,]"). Because those allegations relate to the underlying wrongdoing rather than an effort to prevent a lawsuit, they cannot support tolling. *Rushing*, 2022 WL 2833980, at *8.

Finally, Smith's suggestion that some transactions may fall within the limitations period also fails. To the extent he invokes the continuing violation doctrine, he has not pleaded that theory or its elements. *See Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 884 (N.D. Cal. 2015). To the extent Smith instead contends that each contest entry constituted a separate violation giving rise to a new limitations period, that theory is absent from the FAC and, in any event, would preserve only timely transactions; it would not revive otherwise time-barred claims. *See Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199–1201 (2013).

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

## CONCLUSION

The Court should grant DraftKings' motion to dismiss and dismiss all claims against DraftKings without leave to amend.

DATED: June 8, 2026                    COBLENTZ PATCH DUFFY & BASS LLP


By:     _/s/ Richard R. Patch_
        RICHARD R. PATCH
        Attorneys for Defendants
        DRAFTKINGS INC. JASON D. ROBINS,
        MATTHEW KALISH, PAUL LIBERMAN and
        CROWN GAMING INC.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

017373.0049 4934-9482-4616.13                15                Case No. 3:25-cv-04618-CRB

**REPLY IN SUPPORT OF DEFENDANT DRAFTKINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**